ERIC KENNEDY (SBN: 228393)
ekennedy@buchalter.com
DANIELLE M. MAYER (SBN: 298995)
dmayer@buchalter.com
**BUCHALTER**
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Tel.: 949.760.1121
Fax: 949.720.0182

Attorneys for Defendant TEDDER INDUSTRIES, LLC F/K/A
TEDDER ACQUISITION, LLC

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION,<br><br>Plaintiff,<br><br>vs.<br><br>TEDDER ACQUISITION, LLC; and DOES 1 to 10,<br><br>Defendants.<br>_____<br>TEDDER INDUSTRIES, LLC f/k/a TEDDER ACQUISITION, LLC, a Delaware limited liability company,<br><br>Counter-Complainant,<br><br>vs.<br><br>ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION, an individual; ARDEN SILVERMAN, an individual; CAPITAL ASSET PROTECTION, INC., a suspended California Corporation, GOLDMAN SACHS CAPITAL LLC, a California limited liability company; ENRICH FINANCIAL, INC., a California corporation; TAX RESOLUTION PLUS, INC.; ARIAN EGHBALI, an individual; BRANDON EGHBALI, an individual; SHERVIN ZALISHAHR, an individual; VEHA TARIUS, an individual, PAUL DRAKE, | Case No. 2:24-cv-06989-MRA-MAA<br><br>(Removed from Los Angeles County Superior Court, Case No. 24VECV01237)<br><br>Assigned to Hon. Judge Mónica Ramirez Almadani<br><br>**COUNTER-COMPLAINANT TEDDER INDUSTRIES, LLC'S FIRST AMENDED COUNTERCLAIM AGAINST PLAINTIFF AND NEW PARTIES FOR:**<br><br>**(1) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C. § 1962, ET SEC.);**<br>**(2) BREACH OF CONTRACT;**<br>**(3) FRAUD – INTENTIONAL MISREPRESENTATION;**<br>**(4) FRAUD – FALSE PROMISE;**<br>**(5) FRAUD – CONCEALMENT;**<br>**(6) NEGLIGENT MISREPRESENTATION;**<br>**(7) UNJUST ENRICHMENT;**<br>**(8) VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ("UCL") (BUS. & PROF. CODE, § 17200, *ET SEQ.*); AND** |

1  | an individual; and CHARLES STEVENS, an individual,

2  |

3  |                Counterclaim-Defendants.

**(9)  PENAL CODE, § 496**

**DEMAND FOR JURY TRIAL**

Complaint Filed: March 20, 2024
Date of Removal: August 16, 2024
Counterclaim Filed: February 18, 2025

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

## FIRST AMENDED COUNTERCLAIM

Defendant and Counter-Complainant Tedder Industries, LLC f/k/a Defendant Tedder Acquisition, LLC ("Counter-Complainant" or "Tedder"), by and through its attorneys, brings this action against:

1.  Plaintiff and Counterclaim-Defendant Arden Silverman dba Capital Asset Protection ("Plaintiff" or "Arden Silverman dba Capital Asset Protection"); and

2.  New parties Counterclaim-Defendants Arden Silverman, Capital Asset Protection, Inc. ("Capital Asset Protection"), Goldman Sachs Capital LLC ("Goldman Sachs Capital"), Enrich Financial, Inc. ("Enrich"), Tax Resolution Plus, Inc. ("Tax Resolution Plus"), Arian Eghbali, Brandon Eghbali, Shervin Zalishahr aka Shawn Zali, Veha Tarius, Paul Drake, and Charles Stevens (collectively, the "Counterclaim-Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.  According to the Treasury Department, the Employee Retention Credit ("ERC") (sometimes called the Employee Retention Tax Credit ("ERTC")) is "a broad based, refundable tax credit designed to encourage employers to keep employees on their payroll."[1] It was introduced in 2020 as part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The ERC was authorized by the CARES Act, Section 2301; the Taxpayer Certainty and Disaster Tax Relief Act of 2020 ("Relief Act"), Sections 206 and 207; and Internal Revenue Code ("IRC") Section 3134.

2.  Under the CARES Act, a taxpayer may qualify for the credit if the taxpayer experienced a "significant decline" in gross receipts. For calendar quarters in 2020, a "significant decline" is defined as 2020 gross receipts being at least 50% less than gross receipts as measured for the same calendar quarter in 2019. The period during which a taxpayer experiences a significant decline and is therefore eligible for

---

[1] https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

the ERC ends with the beginning of the calendar quarter following the first calendar quarter in which the taxpayer's gross receipts meet or exceed 80% of the gross receipts for the same calendar quarter in 2019. For calendar quarters in 2021, a "significant decline" in gross receipts is defined as 2021 gross receipts being at least 20% less than gross receipts as measured for the same calendar quarter in 2019. Taxpayers may also use an alternative quarter election to determine qualification for the ERC in 2021. For Quarter 1, the alternate comparison is Quarter 4 2020 and Quarter 4 2019. For Quarter 2, the alternate comparison is Quarter 1 2021 and Quarter 1 2019. Similarly, the alternate comparison for Quarter 3 2021 is Quarter 2, compared to the corresponding calendar quarter in 2019.

3. A taxpayer may also qualify for the ERC by having its business operations fully or partially suspended by a Governmental order. For purposes of the ERC, a "government order" is an order from the Federal, State, or Local government with jurisdiction over the employer that results in the full or partial suspension of an employer's operations. To qualify as a partial suspension of operations (e.g., a restaurant being limited to take-out only or indoor dining occupancy reductions), the affected operations must constitute a more than nominal portion of the business operations. A portion of the employer's operations is considered to be more than nominal if it represents at least 10% of the gross receipts derived from regular business operations of the employer. An employer that voluntarily suspends operations or reduces hours due to COVID-19 is not eligible for the ERC based on a full or partial suspension of operations.

4. When initially introduced, the ERC was worth 50% of qualified employee wages but was limited to $10,000 for any one employee, granting a maximum credit of $5,000 for wages paid from March 13, 2020 to December 31, 2021. It has since been updated, increasing the percentage of qualified wages to 70% for 2021. Eligible employers can still claim the credit, but the IRS has paused ERC processing in response to widespread scams.

5.      According to the IRS, following implementation of the ERC, aggressive promotors engaged in misleading marketing that oversimplified or misrepresented eligibility rules and then pressured applicants into the program claiming that there was nothing for them to lose since the promotor's fee was often a percentage of the payout.

6.      In a February 2024 press release, the IRS urged business owners to be on the lookout for such schemes. IRS Commissioner, Danny Werfel, said: "Many businesses were wildly misled about the qualifications, and the IRS is taking a special step to highlight common problems being seen about these claims."[2]

7.      In 2023, Tedder fell victim to such a scheme organized by a criminal enterprise compromised of Arian Eghbali, some of his family, friends, and business associates, and several shell corporate entities (including the farcically named Goldman Sachs Capital[3]) organized by the enterprise to facilitate its illegal activities. By this First Amended Counterclaim, Tedder seeks to recover the corresponding damages.

## THE PARTIES

8.      Tedder Industries, LLC is, and was at all relevant times within the First Amended Counterclaim, a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Post Falls, Idaho. Founded in 2013, Tedder is an industry-leading manufacturer of firearms holsters and accessories for military, tactical, and civilian use. Previously there were two Tedder entities – Tedder Acquisition, LLC and Tedder Industries,

---

[2] https://www.irs.gov/newsroom/irs-shares-7-warning-signs-employee-retention-credit-claims-may-be-incorrect-urges-businesses-to-revisit-eligibility-resolve-issues-now-before-march-22.

[3] On information and belief, it is alleged that there is absolutely no legitimate connection between Goldman Sachs Capital and the leading global investment banking, securities and investment management firm, Goldman Sachs. It appears that the members of the enterprise are using the real Goldman Sach's name in a misguided attempt to add a patina of legitimacy to their fraudulent enterprise.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

LLC. Tedder Acquisition, LLC has since been merged with Tedder Industries, LLC and is now known as Tedder Industries, LLC.

9.     Tedder is informed and believes and on that basis alleges that:

a.     Plaintiff and Counterclaim-Defendant Arden Silverman dba Capital Asset Protection is an individual residing in the State of California.

b.     Counterclaim-Defendant Arden Silverman is an individual residing in the State of California.

c.     Counterclaim-Defendant Capital Asset Protection is a suspended California corporation previously organized and existing under the laws of the State of California, with its principal place of business located in Woodland Hills, California.

d.     Counterclaim-Defendant Goldman Sachs Capital[4] is a California limited liability company organized and existing under the laws of the State of California, with its principal place of business in Tarzana, California. Counterclaim-Defendants Arian Eghbali, Brandon Eghbali, Veha Tarius, Paul Drake, and Charles Stevens are members or managers of Goldman Sachs Capital.

e.     Counterclaim-Defendant Enrich is a California corporation organized and existing under the laws of the State of California, with its principal place of business located at the same address as Goldman Sachs Capital in Tarzana, California. Arian Eghbali is Enrich's CEO, CFO, and Secretary.

f.     Counterclaim-Defendant Tax Resolution Plus is a California corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Ana, California. Defendant Shervin Zalishahr aka Shawn Zali is the CEO, CFO, and Secretary of Tax Resolution Plus. He is also a tax auditor at the California State Board of Equalization and has been since January 2013.

---

[4] On information and belief, Goldman Sachs Capital sometimes does business as AI Tax Solution.

g.      Counterclaim-Defendant Arian Eghbali is an individual residing in the State of California. He claims to be an author, entrepreneur, and to have an MBA.

h.      Counterclaim-Defendant Brandon Eghbali is an individual residing in the State of California.

i.      Counterclaim-Defendant Shervin Zalishahr aka Shawn Zali is an individual residing in the State of California.

j.      Counterclaim-Defendant Veha Tarius is an individual residing in the State of California.

k.      Counterclaim-Defendant Paul Drake is an individual residing in the State of California.

l.      Counterclaim-Defendant Charles Stevens is an individual residing in the State of California.

10.    Tedder is informed and believes and on that basis alleges that there exists, and at all times herein mentioned there has existed, a unity of interest and ownership between and among Counterclaim-Defendants such that any individuality and separateness between these Counterclaim-Defendants has ceased, and each Counterclaim-Defendant is the alter ego of the other.

11.    Tedder is further informed and believes that Counterclaim-Defendants operate as a single enterprise.

12.    At all times herein mentioned, each of the Counterclaim-Defendants named in the caption of this First Amended Counterclaim were and are the agent, servant, and employee of each of the other Counterclaim-Defendants, and all of the things alleged to have been done by said Counterclaim-Defendants were done in the capacity of and as agent of the other Counterclaim-Defendants. At the same time, Counterclaim-Defendants, and each of them, were motivated in part by self-interest, evil motive, ill-will for Tedder and have aided and abetted each other to commit the

1    wrongful conduct specified herein and should be held liable in full for the

2    consequences caused thereby.

3        13.    Adherence to the fiction of the separate existence of Counterclaim-

4    Defendants Arden Silverman, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr

5    aka Shawn Zali, Veha Tarius, Paul Drake, and Charles Stevens (jointly and severally,

6    the "Individual Counterclaim-Defendants"), and Counterclaim-Defendants Arden

7    Silverman dba Asset Capital Management, Asset Capital Management, Goldman

8    Sachs Capital, Enrich, and Tax Resolution Plus (jointly and severally, the "Entity

9    Counterclaim-Defendants") would permit an abuse of the corporate privilege and

10   would promote injustice in that the Individual Counterclaim-Defendants have used

11   the Entity Counterclaim-Defendants to work a fraud upon Counter-Complainant.

12       14.    Tedder is further informed and believes and on that basis alleges that, at

13   all material times, Counterclaim-Defendants operate as a single enterprise. The

14   Individual Counterclaim-Defendants were the members, agents, servants, or

15   employees of the Entity Counterclaim-Defendants and, in doing the things

16   hereinafter alleged, acted within the course and scope of the authority and with the

17   ratification and consent of, and in concert with, the Entity Counterclaim-Defendants.

18   The acts and/or omissions alleged herein of the Individual Counterclaim-Defendants

19   and the Entity Counterclaim-Defendants were part of a single enterprise, which

20   included the Individual Counterclaim-Defendants and the Entity Counterclaim-

21   Defendants.  Based upon the Individual Counterclaim-Defendants' relationship with

22   the Entity Counterclaim-Defendants, the Individual Counterclaim-Defendants had a

23   direct or indirect pecuniary interest in the transactions at issue in this Counterclaim.

24                              **JURISDICTION**

25       15.    This Court has subject matter jurisdiction over the First Claim for Relief

26   herein pursuant to 28 U.S.C § 1331 in that it arises under United States Statute 18

27   U.S.C. § 1962 ("RICO").

28

Buchalter
A Professional Corporation
Irvine

16.     This Court has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28 U.S.C. § 1367, in that they arise from the same nucleus of operative facts as the First Claim for Relief and form part of the same case or controversy under Article III of the United States Constitution.

17.     This Court has personal jurisdiction over each of the Counterclaim-Defendants pursuant to 18 U.S.C. § 1965(b) and also because the Entity Counterclaim-Defendants have their principal places of business located in the State of California and the Individual Counterclaim-Defendants reside in the State of California.

18.     Further, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that Counter-Complainant is a citizen of Idaho while Counterclaim-Defendants are all citizens of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## **<u>VENUE</u>**

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this jurisdictional district and three of the Entity Counterclaim-Defendants – Goldman Sachs Capital, Enrich, and Tax Resolution Plus – have their principal places of business in this district.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Counterclaim-Defendants are subject to personal jurisdiction in this district with respect to this action, the contract at issue calls for venue in this district, and there is no other district in which the action may otherwise be brought.

21.     Venue is further proper in this district on the basis of the parties' written agreement, which states: "Any action arising from or related to this agreement shall be brought in the federal or state courts in Santa Ana or Orange County in California."

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

# FACTUAL BACKGROUND

**A Well-Intended COVID-Era Tax Credit Has Been Turned Into a Scam by Bad Actors, Like Counterclaim-Defendants.**

22.    During COVID, Congress passed emergency legislation creating the ERC to offer relief to eligible businesses and tax-exempt organizations with employees adversely affected by the pandemic.

23.    Now, years later, the IRS is overwhelmed with erroneous ERC claims perpetrated by fraudulent promoters taking advantage of adversely impacted businesses.

24.    To combat these fraudsters, the IRS began reviewing the ERC program and issuing press releases disclosing some of its findings:[5]

> Employers should be wary of ERC advertisements that advise them to "apply" for money by claiming the ERC when they may not qualify. As a reminder, anyone who incorrectly claims the credit has to pay it back and may owe penalties and interest. The only way to claim the ERC is on a federal employment tax return.
>
> The ads are all over radio, TV and social media. You may even get ads that look like official government letters, or texts, emails and phone calls advertising ERC eligibility.

25.    The IRS identified the following warning signs for businesses to look out for:[6]

> The Employee Retention Credit is a complex credit that requires careful review before applying, so be wary of:
>
> - Unsolicited ads, calls, emails or texts from someone you don't know.
> - Statements that the promoter or company can determine your ERC eligibility within minutes.
> - Large upfront fees to claim the credit.
> - Pressure to accept a promoter's offer of a refund anticipation loan.

---

[5] https://www.irs.gov/coronavirus/employee-retention-credit
[6] https://www.irs.gov/coronavirus/employee-retention-credit Emphasis added.

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

- Fees based on a percentage of the refund amount of Employee Retention Credit claimed – you should always avoid a tax preparer basing their fee on the amount of the refund.

- Statements from the promoter that you qualify for the credit before any discussion about your tax situation.

- Statements from the promoter urging you submit the claim because there is nothing to lose. In reality, those incorrectly receiving the credit could have to repay the credit – along with substantial interest and penalties.

These promoters may lie about eligibility requirements. In addition, using these companies could put you at risk of someone using the credit as a ploy to steal your identity or take a cut of an incorrectly claimed credit that you'd need to pay back.

26.     On May 25, 2023, the IRS renewed an alert for businesses to watch out for tell-tale signs of misleading claims involving ERC scams:[7]

'The aggressive marketing of the Employee Retention Credit continues preying on innocent businesses and others,' said IRS Commissioner Danny Werfel. 'Aggressive promoters present wildly misleading claims about this credit. They can pocket handsome fees while leaving those claiming the credit at risk of having the claims denied or facing scenarios where they need to repay the credit.'

27.     In September 2023, IRS announced a "moratorium" on processing new ERC claims due to its concern about overly aggressive promoters:[8]

To counter the flood of claims being driven by promoters, the IRS announced last fall a moratorium on processing claims submitted after Sept. 14, 2023, to give the agency time to digitize information on the large study group of nearly 1 million ERC claims, which are made on amended paper tax returns. The subsequent analysis of the results during this period helped the IRS evaluate next steps, providing the IRS valuable information to change the way

---

[7] Attached hereto as **Exhibit 1** is a true and correct copy of the IRS News Release IR-2023-105: IRS alerts businesses, tax-exempt groups of warning signs for misleading Employee Retention scams; simple steps can avoid improperly filing claims.

[8] https://www.irs.gov/newsroom/irs-enters-next-stage-of-employee-retention-credit-work-review-indicates-vast-majority-show-risk-of-being-improper.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

1    the agency will process ERC claims going forward.

2    The findings of the IRS review confirmed concerns raised
3    by tax professionals and others that there was an extremely
     high rate of improper ERC claims.

4
5    28.    On June 20, 2024, the IRS released a press release indicating that the

6    September moratorium would remain in place:[9]

7    We decided to keep the post-September moratorium in
8    place because we continue to be concerned about the
     substantial number of claims coming in so long after the
     pandemic…. These claims are clogging the system for
9    legitimate taxpayers. We worry that ending the moratorium
     might trigger a gold rush by aggressive marketers that
10   could lead to a new round of improper claims, which would
     be a bad result for taxpayers or tax administration.

11   **Counterclaim-Defendants Are Running an ERC Scam.**

12   29.    "Never let a good crisis go to waste." This appears to be Counterclaim-

13   Defendants' guiding principle. Lead by Arian Eghbali, via his operating entities

14   Goldman Sachs Capital[10] and Enrich, Counterclaim-Defendants are taking advantage

15   of the destructive economic impact of COVID to line their own pockets.

16   30.    To understand the deliberately murky and deceptive network underlying

17   Counterclaim-Defendants' ERC scam, one must first read the contract Goldman

18   Sachs Capital requires its new clients to sign. At least as it pertained to Tedder, the

19   contract was introduced by Arian Eghbali, who held himself out as a representative

20   of Goldman Sachs Capital. Later, he communicated with Tedder as a representative

21   of Enrich.

22   31.    The first line of the contract identifies "Goldman Sachs Capital" as one

23   of the contracting parties. Thereafter, throughout the contract, Goldman Sachs

24   Capital is referred to only as the "FIRM." The contract is four pages, single-spaced.

25

26   ───────────────
     [9] *Ibid.*
27   [10] According to Arian Eghbali's LinkedIn account, "Goldman Sachs Capital LLC
     specializes in Maximizing the Employee Retention Credit (ERC) Program with a
28   fast, simple, and streamlined process of up to $26k per employee. No fees unless you
     qualify and are awarded the grant."

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-
MAA**

1   The client signs at the end and initials each page. Goldman Sachs Capital does not

2   initial or sign the contract at all. The client does not have any meaningful ability to

3   negotiate the terms of the contract, which is presented on a "take it or leave it" basis.

4        32.    The contract lists the legal, financial, and tax services the FIRM

5   promises to provide the client. It is worth noting that although the contract

6   specifically says that the FIRM provides "legal services," Arian Eghbali is not a

7   lawyer. It is therefore unclear exactly what "legal" services can be provided, unless

8   Arian Eghbali is practicing law without a license. Digging a little deeper, it appears

9   that someone named Doron Eghbali is a lawyer[11] and he is listed on the California

10  Secretary of State's website as the "Agent for Service of Process" for Enrich. Maybe

11  he is the one providing legal services. This is not made clear in the contract. Nor is it

12  made clear how Doron and Arian Eghbali are related, if at all, but they appear to be

13  family.

14       33.    After listing the various services the FIRM promises to provide, the

15  FIRM discloses its fee—an astounding 25% of the "Gross Credit," which must be

16  wired to Goldman Sachs Capital within 14 days of receipt of the ERC funds. The

17  contract adds, "[t]he Fee (25%) is deemed nonrefundable *for any reason* once

18  collected by the FIRM." Emphasis added.

19       34.    Later in the contract, the FIRM discloses that the client must indemnify

20  it and a previously undisclosed "affiliated, associated and authorized" third party—

21  Tax Resolution Plus. No one from Tax Resolution Plus initials or signs the contract

22  and there is no mention of Counterclaim-Defendant Shervin Zalishahr aka Shawn

23  Zali, its Chief Executive Officer, Chief Financial Officer, and Secretary. A quick

24  Google search reveals, however, that Mr. Zalishar/Zali is also a tax auditor at the

25  California State Board of Equalization, suggesting a serious conflict of interest on

26  his part.

27  ---
[11] Doron Eghbali claims to be the senior partner of the Law Advocate Group, LLP
28  located in Beverly Hills. https://lawadvocategroup.com/attorney-profiles/doron-f-eghbali/.

35.    Joining the list of bad actors is a dba used by Goldman Sachs Capital, "AI Tax Solution." In the fine print at the bottom of its website, AI Tax Solution explains the relationship between it and Goldman Sachs Capital and disclaims any connection between Goldman Sachs Capital and the *real* Goldman Sachs:

> AI Tax Solution is a trading name ("DBA") of Goldman Sachs Capital LLC. However, we wish to clarify that AI TAX Solution is in no way affiliated with Goldman Sachs & Co or The Goldman Sachs Group, Inc., which is a prominent global investment banking, securities, and investment management firm.
>
> We specialize in providing accounting and bookkeeping services, as well as assisting individuals in maximizing their tax benefits. Any references to Goldman Sachs Capital LLC are solely for the purpose of legal identification and do not imply any endorsement or affiliation with Goldman Sachs & Co or The Goldman Sachs Group, Inc.

36.    One can access the AI Tax Solution website through a link provided at the top of Enrich's website, "Employee Retention Credit (ERC)."

37.    With the numerous individuals and entities involved, it is clear that Counterclaim-Defendants have created an intentionally misleading corporate shell game, making it very difficult, if not impossible, for clients to clearly identify who is doing what and when.

38.    In the event a client becomes wise to Counterclaim-Defendants' scheme, Goldman Sachs Capital assigns any and all claims over to Arden Silverman dba Capital Asset Protection to act as an aggressive collection agent. When Arden Silverman dba Capital Asset Protection is unable to collect from the client, he files a lawsuit pro per because Arden Silverman is not licensed to practice law in California.[12]

---

[12] Mr. Silverman is a former lawyer. He resigned from the California Bar with charges pending in April 2001 and is no longer licensed to practice law, which appears to be why he sues in pro per under a DBA: https://apps.calbar.ca.gov/attorney/Licensee/Detail/106311 (last accessed September 6, 2024).

39.    Arden Silverman employs the same aggressive techniques as the other Counterclaim Defendants employ.

40.    It appears that each Counterclaim-Defendant has a role within the criminal enterprise. Arian Eghbali—as Goldman Sachs Capital, AI Tax Solution, and Enrich—is the salesman tasked with interfacing with the clients, while Shervin Zalishahr/Shawn Zali—using Tax Resolution Plus—acts as the "CPA," Doron Eghbali provides the legal muscle assisted by Arden Silverman dba Capital Asset Protection who acts as the collection agent, hurling repeated demands for payment on the enterprise's victim.

41.    The Counterclaim-Defendants are working in concert to persuade companies to hire them to handle their ERC submissions, utilizing the same aggressive tactics identified by the IRS. Indeed, Counterclaim-Defendants appear to have implemented each and every one of the tactics identified in the IRS's warnings. Once engaged, the Counterclaim-Defendants do little or no due diligence as to whether a company is properly qualified for ERC. They simply submit the paperwork. Then, if/when the credit is received, the Counterclaim-Defendants pounce on the clients demanding the almost immediate payment of their exorbitant fees.

42.    The experience Tedder had with Counterclaim-Defendants illustrates the scheme in action.

**Tedder Is Misled by Goldman Sachs Capital's Propaganda**

43.    In the early spring of 2023, Sanez "Sandi" Little, Tedder's Chief Operating Officer and Chief Marketing Officer, heard an advertisement for Goldman Sachs Capital on Persian programing while visiting her parents in Los Angeles. During the advertisement, the spokesperson indicated that Goldman Sachs Capital could assist with the process of obtaining employee retention tax credits.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

44.     Knowing that Tedder had been adversely impacted during COVID, Ms. Little was very interested in learning more and later contacted Goldman Sachs Capital to inquire about their ERC services.

45.     During this call, Goldman Sachs Capital represented to Ms. Little that they had significant expertise handling ERC filings and had submitted thousands of ERC filings on behalf of their clients.

46.     Following up on this first call, on March 14, 2023, Masha Moharrami, a customer service representative for Goldman Sachs Capital, emailed Ms. Little again representing that Goldman Sachs Capital has submitted thousands of ERC applications to the IRS since April 2020 and obtained over $185,000,000 in ERC credits for their clients. Mr. Moharrami also represented that Goldman Sachs Capital was helping over 90 other CPA firms to do the back work for the ERC credits since ERC is an "extremely sensitive and detailed tax credit" for which "many firms do not have the knowledge or tools to do the ERC program the right way."

47.     On or about April 3, 2023, Goldman Sachs Capital conducted a client intake call with Ms. Little, asking only very basic questions.

48.     Based on the representations of Goldman Sachs Capital and its principals and employees that they could help Tedder obtain ERC funds, Ms. Little entered into Goldman Sachs Capital's form client contract on April 5, 2023. Attached hereto as **Exhibit 2** is a true and correct copy of the April 5, 2023 Agreement.

49.     Pursuant to the agreement, Goldman Sachs Capital agreed to perform a myriad of "legal," "financial," and/or "tax" services. Among them, Goldman Sachs Capital agreed to assist Tedder in determining whether it was eligible for ERC. This assistance included reviewing Tedder's financial statements, including Form 941s, and detailed payroll reports. Goldman Sachs Capital promised that it would then use the information obtained during its review to "analyze and compare Client's gross receipts during the calendar quarters of 2020 and 2021 to the corresponding calendar quarter of 2019 to determine whether Client is eligible to claim the Credit based on

16

a reduction in revenue, as further described in the Act." Goldman Sachs Capital represented that after reviewing this information, and more, a CPA (presumably Mr. Zalishahr/Zali) would make the final determination concerning Tedder's eligibility.

50.    As to the cost of the ERC services, the Agreement states as follows,

> 4. Fees and Payments: The Fee for Services outlined herein shall be an amount equal to (25%) of the Gross Credit identified by FIRM and awarded by the IRS to Client ("Fee"). The pro rata portion of the Fee shall be due to FIRM when the IRS pays the Credit for each quarter. FIRM will not charge any upfront fees. The Fee is due and payable within fourteen (14) days after the Client receives the Credit from the IRS and must be remitted to Goldman Sachs Capital LLC at 18653 Ventura Blvd # 107 Tarzana Ca 91356, or by wire transfer (consult your representative for wire transfer instructions). Suppose Goldman Sachs Capital (FIRM) does not receive the Fee within 14 days. In that case, the Client agrees to pay interest charges equal to the higher amount of ten percent (10%) annually or the maximum rate permitted by law until paid in full. The Fee (25%) will be deemed non-refundable for any reason once collected by FIRM. It is hereby acknowledged and agreed that all shareholders of the company are financially responsible and personally guarantee this contract.

(**Exhibit 2** [Agreement, p. 2].)

51.    Counter-Complainant is informed and believes and on that basis alleges that on approximately April 7, 2023, Tax Resolution Plus submitted documentation related to Tedder's ERC application, including five 941-X[13] forms to the IRS all signed by Shawn Zali as the preparer.

52.    Tedder was surprised that Goldman Sachs Capital and Tax Resolution Plus were able to submit the paperwork so quickly. Following the submission, Tedder began to receive ERC checks from the IRS.

53.    Tedder received $270,398.79 from the IRS for the 4th quarter of 2020.

---

[13] Employers use Form 941 to report income taxes, Social Security tax, or Medicare tax withheld from employee's paychecks and pay the employer's portion of Social Security or Medicare tax. Per the IRS, Form 941-X is used to correct errors on a Form 941 that was previously filed.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

54.    On July 19, 2023, Tedder made a payment to Goldman Sachs Capital in the amount of $67,599.70. This amount was 25% of the $270,398.79 payment Tedder received from the IRS for the 4th quarter of 2020.

55.    Tedder received $1,232,204.04 from the IRS for the 3rd quarter of 2021.

56.    Tedder received $1,533,556.71 from the IRS for the 2nd quarter of 2021.

57.    Tedder received $1,467,049.69 from the IRS for the 1st quarter of 2021.

58.    Tedder received $276,653.41 from the IRS for the 2nd quarter of 2020.

59.    As of mid-July 2023, Tedder had received $4.4 million in IRS checks for ERC credits.

60.    In July 2023, Tedder received a notice from the IRS indicating that it would be receiving an additional $276,653.41 from the IRS for the 4th quarter of 2020.

61.    Tedder received a total of $4,779,862.64 from the IRS.

**Tedder Becomes Concerned About the Work Done, or Not Done, by Goldman Sachs Capital**

62.    After receiving close to $4.8M from the IRS with very little effort, Tedder grew concerned about the quality of the work done by Goldman Sachs Capital. Tedder reached out to its CPA firm, Moss Adams, which was working on ERC credits for other clients, to compare its process with Goldman Sachs Capital's process.

63.    During Tedder's communications with Moss Adams, Moss Adams described the analysis, support, and documentation needed for a claim to be justified. According to Moss Adams, the ERC process requires extensive documentation, including tax documentation, employee information, and company financials. Further, the process involves multiple communications between the company and the CPA firm, requiring a team effort to gather and analyze the data needed to assess and

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

1 | apply for the ERC credit. In all, according to Moss Adams, the ERC process often
2 | takes at least six months to complete.

3 |     64.    In contrast to Moss Adams, Goldman Sachs Capital submitted Tedder's
4 | information in just four days after collecting few documents and having no meetings
5 | with Tedder.

6 |     65.    Moss Adams reviewed the support provided by Enrich and determined
7 | that it was severely lacking.

8 |     66.    After speaking with Moss Adams, Tedder was shocked at how little
9 | Goldman Sachs Capital and Tax Resolution Plus had done to validate its ERC
10 | qualifications and very concerned with the integrity of their conclusions. Tedder
11 | asked Goldman Sachs Capital for copies of all documents it reviewed in determining
12 | that Tedder qualified for the ERC. Further, Tedder decided to have Moss Adams
13 | conduct an independent analysis to determine if Tedder qualified for ERC or not.

14 |     67.    On July 25, 2023, Shawn Hostetter at Tedder emailed Arian Eghbali
15 | asking to set up a meeting to review the ERC filing. Shortly thereafter, Tedder had a
16 | call with Arian Eghbali to address Tedder's concerns. Tedder expressed its concerns
17 | related to the IRS notice it received and negotiated an addendum to the April 5, 2023
18 | Agreement. Attached hereto as **Exhibit 3** is a true and correct copy of the July 26,
19 | 2023 Addendum to the Agreement.

20 |     68.    On July 28, 2023, Arian Eghbali, Tedder, and Moss Adams had a
21 | meeting regarding the ERC Credits.

22 |     69.    On July 31, 2023, Arian Eghbali followed up with Tedder and Moss
23 | Adams via email and shared a link to what Arian Eghbali claimed to be a Google
24 | Drive containing the "detailed calculation of the Employee Retention Credit (ERC)"
25 | and the "exact breakdown of the claimed amounts for each employee in the folder."
26 | Arian Eghbali also stated that the Google Drive contained "questionnaires and copies
27 | of [Tedder's] 941X forms to demonstrate how [Tedder's] eligibility was determined"

28 |

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-
MAA**

1   along with the "supporting documentation." Arian Eghbali then provided generalized

2   information about ERC Credits and linked to a number of IRS publications.

3       70.    This Google Drive only contained the 941-X forms from 2020 and 2021,

4   a three page case study, a basic questionnaire from a verbal interview with Ms. Little

5   with no supporting documentation, and Tedder's quarterly payroll documentation for

6   each quarter at issue.

7       71.    On August 1, 2023, Tedder again asked Goldman Sachs Capital for any

8   additional documents their CPA possessed related to Tedder's submission. Mr.

9   Hostetter explained Tedder's communication with other CPA firms working on the

10  ERC process. Specifically, Mr. Hostetter correctly described Goldman Sachs Capital

11  as having a "casual approach and lack of preparing all the necessary documentation

12  in a professional and workmanlike manner to determine whether [Tedder] is an

13  eligible employer that may claim ERC credits due to full or partial suspension of the

14  Company's operations due to governmental orders."

15      72.    Over the next several weeks, Tedder made significant efforts to collect

16  information from Goldman Sachs Capital with the purpose of confirming the work

17  done to qualify Tedder for the ERC money. Throughout, Arian Eghbali was the main

18  point of contact for Goldman Sachs Capital and Tax Resolution Plus, utilizing his

19  Enrich email address.

20      73.    Throughout this period, Tedder repeatedly asked Arian Eghbali and

21  others at Goldman Sachs Capital and Tax Resolution Plus for the supporting

22  documentation relied upon to apply for the ERC Credits. During these

23  communications, Arian Eghbali and others at Goldman Sachs Capital and Tax

24  Resolution Plus repeatedly promised to provide the supporting documentation.

25  Tedder never received the supporting documentation.

26      74.    It was clear that Arian Eghbali had no intention of cooperating. Instead,

27  he provided no documents, no details, or anything to justify Goldman Sachs Capital's

28

fees. The only thing that mattered to Arian Eghbali was getting paid. He demanded payment over and over, even threatening to bring a lawsuit against Tedder.

75.     All the while, Moss Adams was conducting its own investigation. It was soon discovered that Goldman Sachs Capital and Tax Resolution Plus made serious errors in its ERC process. For example, Goldman Sachs Capital and Tax Resolution Plus misrepresented Tedder as a small employer despite Tedder being a large employer. The determination between a small and large employer is based purely on headcount. This basic mistake required Tedder to send back $500,000 to the IRS for 2020 ERC credits Tedder did not qualify for.

**Tedder Is Forced to Hire Moss Adams to Correct the Work Done by Goldman Sachs**

76.     Tedder had no choice but to hire Moss Adams to conduct an independent analysis starting again from square one to correct the work done by Goldman Sachs Capital and Tax Resolution Plus. Tedder has paid Moss Adams $390,000 to date to review, analyze, correct, and resubmit Tedder's ERC applications submitted by Goldman Sachs Capital.

77.     After many months of communicating with Tedder, gathering documentation, and analyzing Tedder's ERC eligibility, Moss Adams concluded its investigation and issued a formal memorandum to Tedder dated April 4, 2024 ("ERC Memorandum"). As stated in the Purpose section of the ERC Memorandum, "[t]he purpose of [the ERC Memorandum] is to determine Tedder['s] … status as an 'eligible employer' and 'qualified wages' paid for purposes of the [ERC]."

78.     The ERC Memorandum alone is 13 pages and goes into great detail as to overview of the ERC and the qualifications necessary to obtain Credits. The ERC Memorandum then discusses and analyzes Tedder's ERC eligibility, including an analysis of the government orders in effect in Idaho beginning March 26, 2020, the impact on Tedder's manufacturing operations, research and development, and finally sales and marketing.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

79.    The ERC Memorandum also attaches three exhibits: (1) IRS Notice 2021-20, Guidance on ERC; (2) the Idaho Department of Health and Welfare Orders; and (3) diagrams detailing the changes to Tedder's manufacturing floor layout to comply with social distancing.

80.    Utilizing IRS Notice 2020-21, specifically FAQ #16, the ERC Memorandum looks at four key factors and discusses them in detail. The four key factors are as follows: (1) Employer's telework capabilities; (2) Portability of employees' work; (3) Need for presence in employees' physical workspace; and (4) transition to telework operations. The ERC Memorandum analyzes the direct labor hours worked, the units of product shipped, the direct labor hours worked per unit of product shipped, total training hours, and the affected operations hours vs. total hours worked in 2019, among other metrics.

81.    Moss Adams concluded that for calendar quarters 2 through 4 of 2020, Tedder would likely be considered a "large employer" which means that Tedder would be eligible to generate ERC only for those wages paid to employees while they were not providing services, subject to the $10,000 wage limit per eligible employee for all three quarters of 2020.

82.    Moss Adams also concluded that for calendar quarters 1 through 3 of 2021 (ending September 30, 2021), Tedder is likely a "small employer" and eligible to claim ERC for all wages paid while operations were fully or partially suspended, subject to the $10,000 wage limit per employee per quarter.

83.    The distinction between a "large employer" and "small employer" is a critical distinction in determining the amount of ERC Tedder qualified for.

84.    Tedder has since come to understand that when Goldman Sachs Capital submitted the information for Tedder, Goldman Sachs Capital (1) failed to do a proper analysis as to whether Tedder qualified for the tax credits, (2) misclassified Tedder as a small business, (3) did not engage in the same sort of accounting rigor as demonstrated by other CPA firms, and then (4) demanded payment after an

22

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

1  agreement had been reached through the Addendum to defer any payment until Moss

2  Adams made its final determination.

3  **Tedder Engages in Remedial Measures**

4      85.    As a result of the failure by Goldman Sachs Capital to make the proper

5  determination, Tedder was forced to engage in remedial measures. Following the

6  analysis by Moss Adams, Tedder: (1) submitted an application to enter the Voluntary

7  Disclosure Program[14] ("VDP") as of March 21, 2024, relating to the Credit claim for

8  Calendar Quarter 4, 2020; and (2) submitted documentation to the IRS to withdraw

9  its claim for the Credit in Calendar Quarter 2, 2020. Tedder is still waiting on a

10  determination by the IRS.

11      86.    As part of these remedial measures, in 2024, Tedder returned the check

12  it received in the amount of $276,653.41 from IRS. Attached hereto as **Exhibit 4** is

13  a true and correct of Tedder's Withdrawal of the 2020 Q2 and Q4 ERC funds.

14      87.    Tedder is currently in the process of calculating and returning additional

15  ERC funds to the IRS that it is not entitled to as part of the IRS' Voluntary Disclosure

16  Program. This process is ongoing.

17  **Goldman Sachs Capital Assigns Its Claims to Arden Silverman dba Capital**

18  **Asset Protection**

19      88.    In an undated document titled assignment, Goldman Sachs Capital

20  purported to, "[f]or good and valuable consideration, the receipt of which is hereby

21  acknowledged, Assignor named on p. 1 above [Arden Silverman dba Capital Asset

22  Protection] hereby assigns to assignee herein their right title and interest to all clams

23  they hold against Defendants." This purported assignment was signed by both Arden

24

25  ――――――――――――――

26  [14] According to the IRS website, the Voluntary Disclosure Program "provides a way for taxpayers with previously undisclosed income to contact the IRS and resolve their tax matters." Specifically in the ERC context, the Voluntary Disclosure Program is a program for companies who claimed and received the Employee Retention Credit (ERC) for 2021 tax periods, but were ineligible and need to repay the ERC. https://www.irs.gov/coronavirus/employee-retention-credit-voluntary-disclosure-program (last accessed on October 8, 2024).

27

28

1  Silverman as assignee and Arian Egbali (sic) as assignor. Attached hereto as **Exhibit
2  5** is a true and correct copy of the Assignment.

3      89.    Arden Silverman is a former lawyer doing business as Capital Asset
4  Protection. According to the California Secretary of State website, Capital Asset
5  Protection, Inc. is suspended by the Secretary of State and the Franchise Tax Board
6  as of July 12, 2007 and September 4, 2007, respectively.

7      90.    Interestingly, neither the April 5, 2023 Agreement or the July 26, 2023
8  Addendum prohibited assignment.

9      91.    The Assignment is the final piece in the Counterclaim-Defendants'
10  fraudulent scheme – Goldman Sachs Capital assigns its claims to a former lawyer
11  acting pro se – Arden Silverman dba Capital Asset Protection.

12      92.    On March 20, 2024, Arden Silverman dba Capital Asset Protection filed
13  a complaint in Los Angeles Superior Court as a pro se plaintiff against Tedder.

14      93.    Arden Silverman is effectively acting as counsel without a bar license
15  in bringing lawsuits on behalf of Goldman Sachs Capital.

16  **Tedder Has Incurred Significant Damages and Faces Additional Damages as a**
17  **Result of Goldman Sachs Capital's Actions**

18      94.    Counterclaim-Defendants' intentional and categorical failure to conduct
19  a justifiable valid ERC process and subsequent legal action have caused serious harm
20  to Tedder. Not only is the ERC money Tedder has received unusable (because it will
21  likely have to be returned), Tedder faces potential investigation and penalties and
22  interest from the IRS. Moreover, Tedder was forced to hire a legitimate CPA firm to
23  do the job correctly for $390,000, which will likely increase if the IRS seeks
24  additional information or demands an audit. Tedder files this First Amended
25  Counterclaim to recover for the harm Counterclaim-Defendants' fraudulent scheme
26  has caused.

27      95.    As the IRS said, "[t]he aggressive marketing of the Employee Retention
28  Credit continues preying on innocent businesses and others…." That is precisely the

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-
MAA**

case here. Counterclaim-Defendants have preyed on Tedder and likely thousands of others. Indeed, Tedder has seen firsthand what IRS Commissioner Danny Werfel meant when he warned that "[a]ggressive promoters present wildly misleading claims about this credit. They can pocket handsome fees while leaving those claiming the credit at risk of having the claims denied or facing scenarios where they need to repay the credit." That is Tedder's reality because it fell victim to Counterclaim-Defendants' enterprise.

## FIRST CAUSE OF ACTION

### Violation of the Racketeer Influenced Corrupt Organization Act

### *(Against All Counterclaim-Defendants)*

96.     Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 95 inclusive, as though fully set forth herein.

97.     Counter-Complainant is informed and believe that Counterclaim-Defendants, and each of them, constitute an enterprise (hereinafter, the "Enterprise"), as defined by 18 U.S.C. § 1961, the activities of which affect interstate commerce.

98.     Counter-Complainant is informed and believe that the purpose, scheme and "racketeering activity," as defined by 18 U.S.C. § 1961, in which the Enterprise is engaged is fraudulent, meant to obtain the money of victims with the intent to defraud Counter-Complainant and others by retaining money received from them in violation of 18 U.S.C. §§ 1341 and 1343.

99.     Counterclaim-Defendants are persons, as defined by 18 U.S.C. § 1961, employed by or associated with the Enterprise who have participated, directly or indirectly, in the conduct of the Enterprise's affairs, and have specifically participated in the racketeering activity engaged in by the Enterprise, and are thereby liable to Counter-Complainant under 18 U.S.C. § 1962(c).

100.     Counterclaim-Defendants communicated the false pretenses of the Enterprise to Counter-Complainant over the telephone, the mail, wires transfers, and

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

1    through other forms of communication in violation of 18 U.S.C. § 1341 (mail fraud),

2    18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1344 (financial institution fraud).

3        101.   Among other things, the Agreement required Counter-Complainant to

4    send payment to Counterclaim-Defendants through the mail or via wire transfer as

5    identified in Paragraph 4 and above. (See **Exhibit 2**.)

6        102.   Counterclaim-Defendants' use of the mails and wires to further their

7    scheme constitutes a predicate act of mail fraud and wire fraud for the purpose of 18

8    U.S.C. § 1961.

9        103.   Counterclaim-Defendants have (a) employed devices, schemes, and

10   artifices to defraud; (b) made untrue statements of material facts and omitted to state

11   material facts; and (c) engaged in transactions, acts, practices, and courses of business

12   which operated and would operate as a fraud and deceit upon Counter-Complainant,

13   constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961.

14       104.   The Individual Counterclaim-Defendants participated as principals to

15   further the Enterprise through their investment or reinvestment with the income

16   derived by Counterclaim-Defendants directly or indirectly from the Enterprise's acts

17   of racketeering against Counter-Complainant and are thereby liable to Counter-

18   Complainant under 18 U.S.C. § 1962(a).

19       105.   The Individual Counterclaim-Defendants acquired or maintained,

20   directly or indirectly, their interest in, and/or control of, the Enterprise through their

21   ownership or other material interest and are thereby liable to Counter-Complainant

22   under 18 U.S.C. § 1962(b).

23       106.   The Individual Counterclaim-Defendants who were employed by or

24   associated with the Enterprise, engaged in, conducted or participated, directly or

25   indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering

26   activity and are thereby liable to Counter-Complainant under 18 U.S.C. § 1962(c).

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

107.    The Individual Counterclaim-Defendants conspired to act in furtherance of the Enterprise to the detriment of Counter-Complainant and others and are thereby liable to Counter-Complainant under 18 U.S.C. § 1962(d).

## SECOND CAUSE OF ACTION

### Breach of Written Contract

### *(Against Goldman Sachs Capital LLC and Arden Silverman dba Capital Asset Protection)*

108.    Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 107 inclusive, as though fully set forth herein.

109.    Based on the representations of Goldman Sachs Capital and its principals and employees, Ms. Little entered into an agreement on April 5, 2023 with Goldman Sachs Capital.

110.    Counter-Complainant did all, or substantially all, of the things that the Agreement required of it.

111.    Goldman Sachs Capital was not excused from performing under the terms of the Agreement for any reason.

112.    Goldman Sachs Capital breached the Agreement in numerous ways, including, but not limited to, by failing to fulfill the following obligations:

a.    Pursuant to Section 2.a.i of the Agreement, Goldman Sachs Capital agreed to "assist Client in determining whether Client is an Eligible Employer, as defined in the Act, for purposes of the Credit." Goldman Sachs Capital breached the Agreement by failing to properly determine whether Tedder was an Eligible Employer.

b.    Pursuant to Section 2.a.iii of the Agreement, Goldman Sachs Capital agreed to "determine whether Client is eligible to claim the Credit based on a reduction in revenue, as further described in the Act." Goldman Sachs Capital breached the Agreement by failing to properly determine whether Tedder was eligible to claim the Credit.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

c.    Pursuant to Section 2.a.iv of the Agreement, Goldman Sachs Capital agreed to "[a]nalyze Clients business impacts to determine whether Client is eligible for the Credit based on operations being fully or partly suspended due to government orders, as further described in the Act." Goldman Sachs Capital breached the Agreement by failing to analyze the business impacts experiment by Tedder and whether such impacts would qualify Tedder for ERC credit.

113.    Goldman Sachs Capital assigned "their right title and interest to all clams they hold against [Tedder]" to Arden Silverman dba Capital Asset Protection. See **Exhibit 5**.

114.    As a result of the Assignment, Arden Silverman dba Capital Asset Protection stepped into the shoes of Goldman Sachs. "As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies…." *Essex Ins. Co. v. Five Star Dye House, Inc*., 38 Cal. 4th 1252, 1264 (2006) quoting *Salaman v. Bolt,* 74 Cal.App.3d 907, 919 (1977).

115.    Counter-Complainant has been damaged in an amount to be determined according to proof at trial but no less than $457,599.70 plus interest at the legal rate according to proof at the time of trial or entry of judgment.

## THIRD CAUSE OF ACTION

### Fraud – Intentional Misrepresentation

*(Against Counterclaim Defendants Goldman Sachs Capital, Enrich, Tax Resolution Plus, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens)*

116.    Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 115 inclusive, as though fully set forth herein.

117.    The Goldman Sachs Capital, Enrich, Tax Resolution Plus, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens (the "Fraud Counterclaim-Defendants") knowingly made false representations of fact to the Counter-Complainant, individually and on behalf of the

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

Entity Counterclaim-Defendants, including, without limitation: (1) failing to inform Tedder that they did not to do a proper analysis as to whether Tedder qualified for the tax credits, (2) misrepresenting that Tedder qualified as a small business, and (3) failing to disclose that they did not engage in the same sort of rigorous accounting as demonstrated by other CPA firms.

118.  The Counterclaim-Defendants either knew that the representations were false when they made them, or they made the misrepresentations recklessly and without regard for their truth.

119.  The Counterclaim-Defendants intended that the Counter-Complainant and others rely on the Counterclaim-Defendants' misrepresentations, which they reasonably did.

120.  The Counter-Complainant was harmed due to the Counterclaim-Defendants' wrongful conduct.

121.  The Counter-Complainant's reliance on the Counterclaim-Defendants' misrepresentations was a substantial factor in causing them harm.

122.  The Counterclaim-Defendants' conduct was willful, oppressive, fraudulent, and/or malicious and done with a reckless indifference and conscious disregard for the rights of the Counter-Complainant. Thus, Counter-Complainant is entitled to punitive and exemplary damages.

## FOURTH CAUSE OF ACTION

### Fraud – False Promise

***(Against Counterclaim Defendants Goldman Sachs Capital, Enrich, Tax Resolution Plus, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens)***

123.  Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 122 inclusive, as though fully set forth herein.

124.  The Fraud Counterclaim-Defendants made promises to the Counter-Complainant, individually and on behalf of the Entity Counterclaim-Defendants,

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

about material matters without the intention of performing the promises. Among the promises were: (1) Goldman Sachs Capital and Tax Resolution Plus along with the Entity Counterclaim-Defendants had significant expertise handling ERC filings and had submitted thousands of ERC filings on behalf of their clients, (2) that Tedder would qualify for the ERC credits, and (3) that there was no downside to submitting the ERC application to the IRS.

125.   The Fraud Counterclaim-Defendants' false promises were made with the intent to defraud and induce the Counter-Complainant to rely and act upon them. The Fraud Counterclaim-Defendants' true intentions were to collect approximately $1.2 million in ERC credits from Tedder.

126.   At the time of the Fraud Counterclaim-Defendants' false promises, the Counter-Complainant was unaware of the Fraud Counterclaim-Defendants' true intentions not to perform the promises.

127.   The Fraud Counterclaim-Defendants intended for the Counter-Complainant to rely on their promises so that the Counter-Complainant would in some instances take action, and in other instances refrain from taking action.

128.   Counter-Complainant justifiably acted and refrained from acting in reliance upon the Counterclaim-Defendants' conduct.

129.   The Fraud Counterclaim-Defendants did not perform as promised.

130.   The Counter-Complainant's reliance on the Fraud Counterclaim-Defendants' false promises was a substantial factor in causing them harm.

131.   The Fraud Counterclaim-Defendants' conduct was willful, oppressive, fraudulent, and/or malicious and done with a reckless indifference and conscious disregard for the rights of the Counter-Complainant. Thus, Counter-Complainant is entitled to punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

### Fraud – Concealment

### *(Against Counterclaim Defendants Goldman Sachs Capital, Enrich, Tax Resolution Plus, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens)*

132.    Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 131 inclusive, as though fully set forth herein.

133.    Fraud Counterclaim-Defendants intentionally deceived the Counter-Complainant when they failed to disclose facts relating to their intentions and plans to attempt to induce the Counter-Complainant to enter into the Agreement so they could collect approximately $1.2 million from the IRS in ERC credits.

134.    Counter-Complainant did not know the concealed facts.

135.    If the Fraud Counterclaim-Defendants had fully disclosed the concealed facts, the Counter-Complainant would have behaved differently.

136.    The Fraud Counterclaim-Defendants' fraudulent concealment was a substantial factor in causing harm to the Counter-Complainant.

137.    The Fraud Counterclaim-Defendants' conduct was willful, oppressive, fraudulent, and/or malicious and done with a reckless indifference and conscious disregard for the rights of the Counter-Complainant. Thus, Counter-Complainant is entitled to punitive and exemplary damages

## SIXTH CAUSE OF ACTION

### Fraudulent Inducement

### *(Against Counterclaim Defendants Goldman Sachs Capital, Enrich, Tax Resolution Plus, Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens)*

138.    Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 137 inclusive, as though fully set forth herein.

139.   Prior to entering into the purchase agreement, Counter-Complainant had multiple conversations with Fraud Counterclaim-Defendants who represented that Goldman Sachs Capital had significant expertise handling ERC filings and had submitted thousands of ERC filings on behalf of their clients.

140.   Counter-Complainant is informed and believes and on that basis alleges that the Fraud Counterclaim-Defendants represented the above referenced facts as true to Plaintiff when they knew, or should have known, they were false.

141.   Counter-Complainant is informed and believes and on that basis alleges that the representations made by the Fraud Counterclaim-Defendants were fraudulent misrepresentations designed to induce Counter-Complainant into entering into the Agreement with the Fraud Counterclaim-Defendants for their own financial benefit.

142.   Counter-Complainant reasonably, justifiably and detrimentally relied on the representations made by the Fraud Counterclaim-Defendants as enumerated above because they held themselves out as having significant expertise handling ERC filings and that Goldman Sachs Capital had submitted thousands of ERC filings on behalf of their clients.

143.   However, when the Fraud Counterclaim-Defendants submitted the information for Tedder, Goldman Sachs Capital (1) failed to do a proper analysis as to whether Tedder qualified for the tax credits, (2) misclassified Tedder as a small business, (3) did not engage in the same sort of rigorous accounting as demonstrated by other CPA firms, and then (4) demanded payment after an agreement had been reached through the Addendum to defer any payment until Moss Adams made its final determination, among other actions by the Fraud Counterclaim-Defendants.

144.   As a result of the Fraud Counterclaim-Defendants' fraudulent misrepresentations, Counter-Complainant financially suffered in an amount to be proven at trial.

145.   In deciding to enter into the Agreement with the Fraud Counterclaim-Defendants, Counter-Complainant accepted as true the totality of the representations made by Counterclaim-Defendants.

146.   Had Counter-Complainant known that the representations made by the Fraud Counterclaim-Defendants were inaccurate, false and misleading and designed to induce Counter-Complainant into entering into and maintaining business with the Fraud Counterclaim-Defendants; Counter-Complainant would not have entered into business with the Fraud Counterclaim-Defendants.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### *(Against All Counterclaim-Defendants)*

147.   Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 146 inclusive, as though fully set forth herein.

148.   Counterclaim-Defendants received money, services, and other benefits at the expense of the Counter-Complainant.

149.   Counterclaim-Defendants have been unjustly enriched and have unjustly retained said money, services and other benefits to the detriment of the Counter-Complainant and in violation of fundamental principles of equity and good conscience.

## EIGHTH CAUSE OF ACTION

### Violation of California Unfair Business and Professions Practices ("UCL")

### *(Against All Counterclaim-Defendants)*

150.   Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 149 inclusive, as though fully set forth herein.

### Unlawful Prong

151.   Counterclaim-Defendants' actions as outlined above and incorporated herein constitute "unlawful" business practices because, as alleged above, Counterclaim-Defendants engaged in an unlawful enterprise in violation of

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, *et sec.*
("RICO").

152.    As described above, the purpose, scheme and "racketeering activity," as
defined by 18 U.S.C. § 1961, in which the Enterprise is engaged is fraudulent, meant
to obtain the money of victims with the intent to defraud Counter-Complainant and
others by retaining money received from them in violation of 18 U.S.C. §§ 1341 and
1343.

**Unfair Prong**

153.    Counterclaim-Defendants' actions constitute "unfair" business practices
because, as alleged above, they engaged in a number of unfair business practices,
including, but not limited to, (1) misleading and deceptive advertising as to its
experience with ERC credits, (2) failing to do the proper analysis as to whether
Tedder qualified for the tax credits, (3) misclassified Tedder as a small business, (4)
did not engage in the same sort of rigorous accounting as demonstrated by other CPA
firms, and (5) demanded payment after an agreement had been reached to defer any
payment until Moss Adams made its final determination.

154.    Counterclaim-Defendants' acts and practices offended an established
public policy of transparency in public accounting, and engaged in immoral,
unethical, oppressive, and unscrupulous activities that are substantially injurious to
consumers.

155.    The harm to Counter-Complainant outweighs the utility of
Counterclaim-Defendants' practices. There were reasonably available alternatives to
further Counterclaim-Defendants' legitimate business interests other than the
misleading and deceptive conduct described herein.

**Fraudulent Prong**

156.    A business act or practice is "fraudulent" under the UCL if it is likely to
deceive members of the consuming public.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

157.   The Fraud Counterclaim-Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Counter-Complainant and are highly likely to deceive members of the consuming public. Counter-Complainant relied on the Fraud Counterclaim-Defendants' fraudulent and deceptive representations regarding its experience with ERC credits and regarding its due diligence in qualifying Tedder for the ERC credits. These misrepresentations played a substantial role in Counter-Complainant's decision to hire Goldman Sachs Capital, and Counter-Complainant would not have purchased those products without the Fraud Counterclaim-Defendants' misrepresentations.

## NINTH CAUSE OF ACTION

### Violation of California Penal Code, Section 496

### *(Against All Counterclaim-Defendants)*

80.   Counter-Complainant incorporates by reference the allegations in Paragraphs 1 through 157 inclusive, as though fully set forth herein.

81.   Penal Code, section 496(a) provides that, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in county jail for not more than one year." Emphasis added.

158.   Pursuant to Penal Code Section 496, subdivision (a), a party may recover treble damages where money or property has been obtained under false pretenses plus costs of suit and reasonable attorneys' fees. A criminal conviction is not a prerequisite to the recovery of treble damages. *See Bell v. Feibush,* 212 Cal.App.4th 1041 (2013).

159.   Counter-Complainant is informed and believes and based thereon alleges   that   Counterclaim-Defendants   obtained   $67,599.70   from   Counter-

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

Complainant based on the false representation that Counterclaim-Defendants had performed their due diligence regarding Counter-Complainant's qualifications to receive ERC.

160.   As a direct and proximate result of Counterclaim-Defendants' false representations, Counter-Complainant has been damaged in an amount of $457,599.70, plus interest, reasonable attorneys' fees, and court costs, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Counter-Complainant prays for judgment against Counterclaim-Defendants and each of them as follows:

1.      For compensatory damages in an amount to be determined according to proof at trial but no less than **$457,599.70** plus interest at the legal rate according to proof at the time of trial or entry of judgment;

2.      For general damages, plus interest, according to proof at trial;

3.      For punitive and exemplary damages pursuant to Civil Code, section 3294;

4.      For restitution and disgorgement of all profits in an amount sufficient to force Defendants to disgorge all ill-gotten gains;

5.      For pre-judgment interest at the legal rate from and after the date due according to proof;

6.      For post-judgment interest at the legal rate from the date of judgment until payment is collected;

7.      For reasonable attorneys' fees and costs; and

///

///

///

///

///

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

8.    For such other and further relief as this Court may deem just and proper.

DATED:  March 11, 2025

BUCHALTER
A Professional Corporation


By:  /s/ Danielle M. Mayer
ERIC KENNEDY
DANIELLE M. MAYER
Attorneys for Counter-Complainant
Tedder Industries, LLC f/k/a Tedder
Acquisition, LLC

**FIRST AMENDED COUNTERCLAIM – Case No. 2:24-cv-06989-MRA-MAA**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

EXHIBIT 1



# IRS alerts businesses, tax-exempt groups of warning signs for misleading Employee Retention scams; simple steps can avoid improperly filing claims

IR-2023-105, May 25, 2023

WASHINGTON — As aggressive marketing continues, the Internal Revenue Service today renewed an alert for businesses to watch out for tell-tale signs of misleading claims involving the Employee Retention Credit.

The IRS and tax professionals continue to see a barrage of aggressive broadcast advertising, direct mail solicitations and online promotions involving the Employee Retention Credit. While the credit is real, aggressive promoters are wildly misrepresenting and exaggerating who can qualify for the credits.

The IRS has stepped up audit and criminal investigation work involving these claims. Businesses, tax-exempt organizations and others considering applying for this credit need to carefully review the official requirements for this limited program before applying. Those who improperly claim the credit face follow-up action from the IRS.

"The aggressive marketing of the Employee Retention Credit continues preying on innocent businesses and others," said IRS Commissioner Danny Werfel. "Aggressive promoters present wildly misleading claims about this credit. They can pocket handsome fees while leaving those claiming the credit at risk of having the claims denied or facing scenarios where they need to repay the credit."

The Employee Retention Credit (ERC), also sometimes called the Employee Retention Tax Credit or ERTC, is a legitimate tax credit. Many businesses legitimately apply for the pandemic-era credit. The IRS has added staff to handle ERC claims, which are time-consuming to process because they involve amended tax returns.

"This continual barrage of marketing by advertisers means many invalid claims are coming into the IRS, which also means it takes our hard-working employees longer to get to the legitimate Employee Retention Credits," Werfel said. "The IRS understands the importance of these credits, and we appreciate the patience of businesses and tax professionals as we continue to work hard to get valid claims processed as quickly as possible while also protecting against fraud."

The IRS has been issuing warnings about aggressive ERC scams since last year, and it made the agency's list this year of the Dirty Dozen tax scams that people should watch out for.

This is an ongoing priority area in many ways, and the IRS continues to increase compliance work involving ERC. The IRS has trained auditors examining ERC claims posing the greatest risk, and the IRS Criminal Investigation division is working to identify fraud and promoters of fraudulent claims.

The IRS reminds anyone who improperly claims the ERC that they must pay it back, possibly with penalties and interest. A business or tax-exempt group could find itself in a much worse cash position if it has to pay back the credit than if the credit was never claimed in the first place. So, it's important to avoid getting scammed.

When properly claimed, the ERC is a refundable tax credit designed for businesses that continued paying employees while shut down due to the COVID-19 pandemic or that had a significant decline in gross receipts during the eligibility periods. The credit is not available to individuals.

## Warning signs of aggressive ERC marketing

There are important tips that people should be wary of involving the Employee Retention Credit. Warning signs to watch out for include:

- Unsolicited calls or advertisements mentioning an "easy application process."
- Statements that the promoter or company can determine ERC eligibility within minutes.
- Large upfront fees to claim the credit.
- Fees based on a percentage of the refund amount of Employee Retention Credit claimed. This is a similar warning sign for average taxpayers, who should always avoid a tax preparer basing their fee on the size of the refund.
- Aggressive claims from the promoter that the business receiving the solicitation qualifies before any discussion of the group's tax situation. In reality, the Employee Retention Credit is a complex credit that requires careful review before applying.
- The IRS also sees wildly aggressive suggestions from marketers urging businesses to submit the claim because there is nothing to lose. In reality, those improperly receiving the credit could have to repay the credit – along with substantial interest and penalties.

These promoters may lie about eligibility requirements. In addition, those using these companies could be at risk of someone using the credit as a ploy to steal the taxpayer's identity or take a cut of the taxpayer's improperly claimed credit.

## How the promoters lure victims

The IRS continues to see a variety of ways that promoters can lure businesses, tax-exempt groups and others into applying for the credit.

- Aggressive marketing. This can be seen in countless places, including radio, television and online as well as phone calls and text messages.
- Direct mailing. Some ERC mills are sending out fake letters to taxpayers from the non-existent groups like the "Department of Employee Retention Credit." These letters can be made to look like official IRS correspondence or an official government mailing with language urging immediate action.

- Leaving out key details. Third-party promoters of the ERC often don't accurately explain eligibility requirements or how the credit is computed. They may make broad arguments suggesting that all employers are eligible without evaluating an employer's individual circumstances.
  - For example, only recovery startup businesses are eligible for the ERC in the fourth quarter of 2021, but promoters fail to explain this limit.
  - Again, the promoters may not inform taxpayers that they need to reduce wage deductions claimed on their business' federal income tax return by the amount of the Employee Retention Credit. This causes a domino effect of tax problems for the business.
- Payroll Protection Program participation. In addition, many of these promoters don't tell employers that they can't claim the ERC on wages that were reported as payroll costs if they obtained Paycheck Protection Program loan forgiveness.

## How businesses and others can protect themselves

The IRS reminded businesses, tax-exempt groups and others being approached by these promoters that there are simple steps that can be taken to protect themselves from making an improper Employee Retention Credit.

- Work with a trusted tax professional. Eligible employers who need help claiming the credit should work with a trusted tax professional; the IRS urges people not to rely on the advice of those soliciting these credits. Promoters who are marketing this ultimately have a vested interest in making money; in many cases they are not looking out for the best interests of those applying.
- Don't apply unless you believe you are legitimately qualified for this credit. Details about the credit are available on IRS.gov, and again a trusted tax professional – not someone promoting the credit – can provide critical professional advice on the ERC.
- To report ERC abuse, submit Form 14242, Report Suspected Abusive Tax Promotions or Preparers. People should mail or fax a completed Form 14242, Report Suspected Abusive Tax Promotions or Preparers PDF, and any supporting materials to the IRS Lead Development Center in the Office of Promoter Investigations.

Mail:

Internal Revenue Service Lead Development Center

Stop MS5040

24000 Avila Road

Laguna Niguel, California 92677-3405

Fax: 877-477-9135

## Properly claiming the ERC

There are very specific eligibility requirements for claiming the ERC. These are technical areas that require review. They can claim the ERC on an original or amended employment tax return for qualified wages paid between March 13, 2020, and Dec. 31, 2021. However, to be eligible, employers must have:

- Sustained a full or partial suspension of operations due to orders from an appropriate governmental authority limiting commerce, travel or group meetings because of COVID-19 during 2020 or the first three quarters of 2021,
- Experienced a significant decline in gross receipts during 2020 or a decline in gross receipts during the first three quarters of 2021, or
- Qualified as a recovery startup business for the third or fourth quarters of 2021.

*Page Last Reviewed or Updated: 23-Apr-2024*

EXHIBIT 2

This agreement is entered into, by and between Goldman Sachs Capital ("FIRM"), and

TEDDER ACQUISITION LLC C LAYTON POW ("CLIENT").

FINANCIAL/TAX SERVICES TO BE PROVIDED. The legal services to be provided by the Firm to the Client for Employee Retention Credit service are as follows:

CONDITIONS AND RETAINER. This agreement will not take effect, and FIRM will have no obligation to provide financial and/or tax services until the CLIENT returns a signed copy of this agreement and a signed copy of the Employee Retention Credit Package:

WHEREAS, Client believes that he/she qualifies for the COVID-19 Employee Retention Credit (the "Credit") made available under the Coronavirus Aid, Relief, and Economic Security Act and modified by the Taxpayer Certainty and Disaster Tax Relief Act of 2020, the American Rescue Plan Act of 2021, and the Infrastructure Investment and Jobs Act (collectively the "Act"); Client desires to hire FIRM to assist Client in calculating and claiming the Credit; and FIRM will rely upon the information provided by the Client in providing the Services outlined herein.

NOW THEREFORE, in consideration of the foregoing and the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Engagement: Upon the terms and subject to the conditions hereof, Client hereby agrees to engage FIRM to provide Client with the Services as defined in Section 2 of this Agreement and to compensate FIRM as outlined herein and FIRM will provide Client with the Services as outlined herein.

2. Services:

a. The scope of services to be provided by FIRM under this agreement are as follows ("Services"):

i. FIRM will assist Client in determining whether Client is an Eligible Employer, as defined in the Act, for purposes of the Credit;

ii. FIRM will review Client's financial statements provided to FIRM by Client, including Form 941s filed by Client for 2020 and 2021 and detailed payroll reports for 2020 and 2021;

iii. Using the information provided by Client, FIRM will analyze and compare Client's gross receipts during the calendar quarters of 2020 and 2021 to the corresponding calendar quarter of 2019 to determine whether Client is eligible to claim the Credit based on a reduction in revenue, as further described in the Act;

iv. Analyze Client's business impacts to determine whether Client is eligible for the Credit based on operations being fully or partially suspended due to government orders, as further described in the Act; and

v. FIRM may utilize the affiliated certified public accountant(s) (the "CPA") to file the appropriate Form(s) 941-X for purposes of claiming the Credit.

b. FIRM reserves the right to refuse to calculate or assist a Client in claiming a Credit that FIRM believes in good faith lacks merit.

c. FIRM shall rely upon all representations made by the Client, including, but not limited to, financial statements, Forms 941, payroll reports, gross receipts, business impacts, previous credits, and other relief or benefits obtained by Client in assessing Client's eligibility for the Credit. FIRM ultimately will rely upon the CPA to make a final determination for eligibility based on these representations by the Client. Client shall notify FIRM of any Paycheck Protection Program ("PPP") loans received. An Eligible Employer may claim the Credit if it received a PPP loan authorized under the CARES Act; however, FIRM will rely on the information provided to ensure that employee wages that are covered costs for PPP loan forgiveness are not also used towards the Credit.

Initial _____

d. Client agrees that the CPA will monitor the status of the Credit. The Client will not be charged an additional fee for such services. Client agrees to complete and execute Form 8821 – Tax Information Authorization (attached as Exhibit A and incorporated herein by reference). Client agrees that the CPA will file the completed Form 8821 on behalf of the Client with the Internal Revenue Service ("IRS"), which will entitle the CPA and FIRM to obtain information related to the status, transcripts, any problems that may arise, and the processing of the Credit (the "Credit Submission"). Client authorizes the CPA and FIRM to share information about the Credit Submission freely with Client's representatives so that FIRM can best advise Client of the collectability and expected timelines of the Credit processing.

e. The authorized Tax Return Information includes, but is not limited to, employee payroll, healthcare costs, tax returns, profit and loss statements, Forms 941, and other financial documents used for tax preparation. FIRM will keep all provided Tax Return Information confidential and safeguarded in compliance with IRS revenue procedures and federal law.

f. FIRM or its affiliate's will represent the Client for any audit solely related to the Employee Retention Credit.  The Services shall include representation by the FIRM before the IRS or any other governmental entity regarding audit, investigation, status, and any other problem that may arise in processing the credit.  The FIRM is not responsible for any prior relationship/dealing between the client and the IRS before entering into this contract. FIRM will not audit of Client's drawings or documentation provided, which is expected to be accurate and truthful; verification of Client's information for accuracy or completeness, or to detect errors, fraud, or theft; identification or communication of deficiencies in Client's internal controls; and legal advice to Client.

3. Client Obligations: The Client shall: (1) provide accurate and complete information to FIRM, including in the Client Questionnaire (attached as Exhibit B and incorporated herein by reference or which will be made available electronically by FIRM) or similar document provided by FIRM to Client; (2) provide any supplemental information reasonably required by the IRS to process the Credit; (3) inform FIRM in writing whether Client was closed down due to a federal, state, or local government order; (4) file the original Forms 941 for each quarter in calendar years 2020 and 2021; (5) notify FIRM in writing if Client has previously filed for a Credit in any quarter in calendar years 2020 and 2021; (6) notify FIRM of any PPP loans received and whether employee wages were covered costs for any PPP loan forgiveness; (7) indemnify and hold harmless FIRM from any claim arising from Client's production of false or misleading information, as further described below; (8) properly report all Credits; and (9) notify FIRM in writing of any disagreement with or objection to the Credit delivered to Client and give FIRM the opportunity to amend the Credit, as necessary.

4. Fees and Payments: The Fee for Services outlined herein shall be an amount equal to (25%) of the Gross Credit identified by FIRM and awarded by the IRS to Client ("Fee"). The pro rata portion of the Fee shall be due to FIRM when the IRS pays the Credit for each quarter. FIRM will not charge any upfront fees. The Fee is due and payable within fourteen (14) days after the Client receives the Credit from the IRS and must be remitted to Goldman Sachs Capital LLC at 18653 Ventura Blvd # 107 Tarzana Ca 91356, or by wire transfer (consult your representative for wire transfer instructions). Suppose Goldman Sachs Capital (FIRM) does not receive the Fee within 14 days. In that case, the Client agrees to pay interest charges equal to the higher amount of ten percent (10%) annually or the maximum rate permitted by law until paid in full. The Fee (25%) will be deemed non-refundable for any reason once collected by FIRM. It is hereby acknowledged and agreed that all shareholders of the company are financially responsible and personally guarantee this contract.

In the event that a refund check for the Employee Retention Tax Credit is different from the amount claimed in the amended Form 941, then Client will need to initially call the Internal Revenue Service to "Request a Transcript of Explanation." If there is an error of miscalculation, then FIRM will charge the service fee based upon the actual amount of the refund check. However, if Client owes the IRS any outstanding tax liabilities that will reduce the actual check refund amount, then the Service Fee is still applicable, and is based on the actual amount claimed in the amended Form 941.

5. Confidentiality: The Client grants FIRM the right to access

Initial _____

Client's confidential information ("Confidential Information"), including business documents, records, processes, intellectual property, financial information, financial statements, and all other forms of proprietary client information, to provide the Services. Client agrees to provide all Confidential Information to FIRM necessary to provide the Services promptly. FIRM will hold all Confidential Information in such a manner as to protect the Confidential Information from being accessed by third parties as required by law. FIRM is under no obligation to store or otherwise retain Client's Confidential Information or other Client files, and the Client is advised to retain its paper and electronic version of all Client's files, including, without limitation, relevant source data, for at least six (6) years. FIRM reserves the right to destroy, or otherwise dispose of, Client's Confidential Information or other Client files at any time.

6. Representations and Warranties:

a. FIRM represents and warrants that FIRM shall perform the Services in a professional and workmanlike manner.

b. Client represents and acknowledges that FIRM' Services to Client hereunder are not exclusive. FIRM shall be free to furnish similar services to others, including other third parties who may be Client's competitors.

c. Client represents and acknowledges that FIRM makes no guarantees concerning the Credit and that FIRM cannot control or determine whether the IRS will allow or disburse any Credit.

d. except for the express representations and warranties contained in this section, neither FIRM nor any other person on FIRM' behalf, has made or makes any express or implied representation or warranty, either oral or written, whether arising by law, course of dealing, course of performance, usage, trade or otherwise, all of which are expressly disclaimed and Client acknowledges that it has not relied upon any representation or warranty made by FIRM or any other person on FIRM' behalf, except as specifically provided in this section.

7. Limitation of Remedies: FIRM' liability under this agreement is limited to actual direct damages and the amount that FIRM received from the Client. In no event shall FIRM be liable for any incidental, consequential, special, indirect, punitive, or third-party damages or claims, including lost profits, lost savings, lost productivity, loss of data, or loss from interruption of business under this agreement.

8. Indemnification: Client shall defend, indemnify, and hold harmless FIRM and its attorneys, directors, officers, agents, representatives, members, managers, employees, successors, and assigns (collectively "Indemnitees"), to the maximum extent permitted by law for any action, suit, or proceeding, whether civil, criminal, investigative, or administrative, arising from or related to this agreement. Client shall indemnify, defend, and hold FIRM and its Indemnitees harmless from and against any costs, damages, claims, suits, actions, liabilities, losses, and judgments, including attorney fees, arising out of or relating to Client's (a) access to or use of the Services, (b) breach of any representation and warranty or any covenant under this agreement, (c) providing false, misleading, or incorrect information (d) failure to claim the tax credit on business tax returns properly, and (e) negligence, fraud, or willful misconduct, including the negligence, fraud, or willful misconduct of the Client's affiliates and representatives. Goldman Sachs Capital LLC (FIRM) is an affiliated, associated, authorized entity of Tax Resolution Plus located at 1231 E Dyer Rd ste170 Santa Ana, CA and all processing will be done by Tax Resolution Plus.

9. Severability: If a court of competent jurisdiction holds that any provision of this agreement is invalid, illegal, or unenforceable, that holding shall not affect the validity of the other provisions of this agreement, which shall remain in full force and effect, and this agreement shall be construed as if the offending provision(s) had not been contained herein.

10. Modification: No part of this agreement may be amended, modified, or waived unless such amendment, modification, or waiver is outlined in a later writing signed by both Parties. A modification, amendment, or waiver of any one provision of this agreement shall not be deemed a modification, amendment, or waiver of any other provision.

Initial _____

11. Waiver. The Parties agree that any waiver of any part of this agreement shall not be a waiver of any other part of the agreement, nor shall any waiver of a breach of any part of this agreement constitute a waiver of any breach of any other part of this agreement or any other breach.

12. Mediation and Jurisdiction. If a dispute arises from or related to this agreement or the breach thereof, and if the dispute cannot be settled through direct discussions, then the Parties agree to engage in mediation through a mutually agreed-upon mediator. This agreement will be governed and construed in all respects according to the laws of California. Goldman Sachs Capital LLC (FIRM) is an affiliated and authorized entity of Tax Resolution Plus. Any action arising from or related to this agreement shall be brought in the federal or state courts in Santa Ana or Orange County in California.

13. Attorney's Fees: In any action to interpret or enforce the terms of this agreement, the prevailing Party shall be entitled to recover its reasonable attorney fees and out-of-pocket costs incurred in connection with such action in addition to any other relief which may be awarded.

14. Entire Agreement. This agreement constitutes the agreement and understanding between the Parties concerning the subject matter. It supersedes any prior Agreement or understanding relating to this agreement, whether express or implied.

زبان اولیه اینجانب انگلیسی نمی باشد، زمان کافی و توضیحات لازمه در جهت خواندن ، درک و امضای این قرارداد را دریافت کرده ام .

Английский не мой основной язык.Мне дали достаточно времени, чтобы прочитать и понять этот договор.

Անգլերենն իմ առաջնային լեզուն չէ: Ինձ հատկացվել է բավականաչափ ժամանակ տվյալ պայմանագիրը կարդալու և հասկանալու համար:

English is not my primary language, I have been given enough time to read and understand this agreement.

Inglés no es mi idioma principal. Se me ha dado suficiente tiempo para leerlo y entender este acuerdo.

**IN WITNESS WHEREOF, the undersigned Client has signed this agreement as of the date set forth above.**

Signature: _____    Owner/Authorized name: Sanaz Little _____

Date: 04/05/2023 _____    Companies Name: **TEDDER ACQUISITION LLC C LAYTON POW**

Initial _____

Form **8821**

(Rev. January 2021)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you. See instructions.

OMB No. 1545-1165

| For IRS Use Only |
|---|
| Received by: |
| Name |
| Telephone |
| Function |
| Date |

**1   Taxpayer information.** Taxpayer must sign and date this form on line 6.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| TEDDER ACQUISITION LLC C LAYTON POW | 83-1687652 |
| Address   4411 West riverbend ave post falls ID | Daytime telephone number   Plan number (if applicable)<br>3237087788 |

**2   Designee(s).** If you wish to name more than two designees, attach a list to this form. **Check here if a list of additional designees is attached ▶** ☐

| Name and address | CAF No. |
|---|---|
| | PTIN |
| | Telephone No. |
| | Fax No. |
| **Check if to be sent copies of notices and communications** ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |
| Name and address | CAF No. |
| | PTIN |
| | Telephone No. |
| | Fax No. |
| **Check if to be sent copies of notices and communications** ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3   Tax information.** Each designee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☐   By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number (1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**4   Specific use not recorded on the Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip line 5   .   .   .   .   .   .   ▶ ☐

**5   Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior tax information authorizations on file unless you check the line 5 box and **attach a copy** of the tax information authorization(s) that you want to retain   .   .   .   .   .   .   ▶ ☐
To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 5 instructions.

**6   Taxpayer signature.** If signed by a corporate officer, partner, guardian, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify that I have the legal authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

**▶ IF NOT COMPLETED, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

**▶ DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *Sanaz Little* | 04/05/2023 |
|---|---|
| Signature | Date |
| Sanaz Little | COO |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**          Cat. No. 11596P          Form **8821** (Rev. 01-2021)




# ERC
# PROCESS



➢ **STEP 1: Eligibility**

➢ **STEP 2: Pre-Approval**

➢ **STEP 3: Processing**

➢ **STEP 4: Payment**

# Step 1 : Eligibility

First, we have to determine whether your first quarter qualifies for the ERC. Please provide the following documents to run a free analysis.

**1. IRS form 941 for 2020,**
**2. 2021EDD form De9c for 2020, 2021**
**3. PPP Loan amount and terms**
**4. Name is the shareholders**



# Eligibility

You will receive the ERTC final recovery amount on the invoice, broken out quarter-by quarter in the form of refund checks made out to the business generating the benefit. In the wake of COVID-19, IRS processing times have increased to reflect ongoing staffing shortages. If any of your 941Xs (or equivalent industry-specific payroll tax amendments) have been at the IRS for longer than 16 weeks, American Incentive Advisors is happy to provide monthly status updates. These requests can be sent through your advisor.

# Step 2:
# Pre - Approval

We will present you with IRS Pre-approval along with the contract along with form 8821.





## Step 3: Processing

We will amend your from 941s for each quarter that they are eligible to get the ERC. For each amended return, we get an ERTC worksheet, and in that worksheet, we have to include the calculation and ERC publication with the actual sub and FAQ from the IRS website.

After that, one of our CPAs or EAs will sign the 941x with their CAF and PTIN, and license number and will send out the package to the IRS for review, and usually takes about 90 to 120 days for the IRS to go through  the calculation and approve and send out the ERC check to the client.   Wewill do A to Z and walk you guys through the entire process.

# Step 4: Payment

- Once you receive the overpayment letter from the IRS and check from the US Dept. of Treasury. Scan and email to info@goldmansc.com

- Make check payable to and mail it to Goldman Sachs Capital LLC 18653 Ventura Blvd #107 Tarzana CA 91356.





**Processing Time**

After submitting the amended 941 to the IRS, usually takes about 90 to 120 days to process the amended returns and approve the refund. After the approval, IRS will mail out the overpayment letters to the client for each amended quarter, and it takes about 30 to 60 days for the client to receive the ERC Checks for each quarter after receiving the IRS overpayment letters.

EXHIBIT 3

## ADDENDUM TO AGREEMENT

This Addendum to that certain Agreement between Goldman Sachs Capital and its owners and affiliates ("FIRM") and TEDDER ACQUISITION LLC C LAYTON POW ("CLIENT"), dated April 5, 2023 ("Agreement") relating to the services provided by FIRM regarding the potential for CLIENT to claim a refund relating to the Employee Retention Tax Credit ("Credit") under the Act.

WHEREAS, the Agreement provides in Section 10 that the Agreement may not be amended, modified or waived unless such amendment. modification or waiver is in writing signed by both parties;

WHEREAS, the FIRM and the CLIENT desire to amend and modify the Agreement as provided in this Addendum.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledge, the Parties agree as follows:

1.    Refund of Fees and Payments. Paragraph 4 of the Agreement is replaced in its entirety with the following:

> 4.   Fees and Payments. The Fee for Services outlined herein shall be an amount equal to 25% of the amount of the Credit shown on any of the CLIENT's Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund (i.e., Form 941-X) for which FIRM has identified that CLIENT is eligible to receive and that the IRS refunds to the CLIENT ("Fee") regardless of whether such refund is reduced due to the CLIENT's other outstanding tax liabilities. The Fee is due and payable within fourteen (14) days after the CLIENT receives any refund from the Department of Treasury resulting from claiming the Credit. All payments shall be remitted to Goldman Sachs Capital LLC at 18653 Ventura Blvd #107, Tarzana, CA 91356. At the expiration of the 14-day period, the CLIENT will owe FIRM interest equal to the lesser of ten percent (10%) per annum or the maximum rate permitted by law.
>
> In the event of any adjustment to the amount of the Credit so that the CLIENT is required to return any portion of the Credit received by CLIENT, FIRM shall refund to CLIENT any portion the Fee attributable to the amount payable by CLIENT.  By way of example, if the CLIENT's Credit is adjusted so that the CLIENT must repay $100,000 of the Credit received by CLIENT, then FIRM will refund $25,000 to Client ($100,000 times 25% fee). Upon the issuance of any adjustment to the amount of the Credit so that the CLIENT is required to return any portion of the Credit it received, the FIRM will pay CLIENT the refund of the Fee within 14 days of the final determination that the CLIENT's Credit amount is adjusted. At the

expiration of the 14-day period, the FIRM will owe CLIENT interest equal to the lesser of ten percent (10%) per annum or the maximum rate permitted by law.

The shareholder and owners of CLIENT and FIRM hereby agree and acknowledge they personally guarantee all payments under this Section 4 of the Agreement.

2.    Definitions. Except as defined herein, all capitalized terms used in this Addendum shall have the same definitions and meaning as provided in the Agreement.

3.    Successors and Assigns. The Agreement and this Addendum shall be binding on all successors, assigns and affiliates of the FIRM and the CLIENT.

4.    Ratification. Except as amended and modified in Paragraph 1, above, all provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Addendum on the date set forth below.

| FIRM | CLIENT |
|---|---|
| GOLDMAN SACHS CAPITAL | TEDDER ACQUISITION LLC C LAYTON POW |
| By: | By: |
| Name: Arian Eghbali | Name: Sanaz Little |
| Title:  Manager | Title:  COO |
| Date:  7-26-2023 | Date:  7-26-23 |

\\fs1\dms\wdocs\clntfls\23578\21910050\00855530.docx

ADDENDUM TO AGREEMENT - 2

# EXHIBIT 4

Form **941-X:**    **Adjusted Employer's QUARTERLY Federal Tax Return or Claim for Refund**
(Rev. October 2020)                Department of the Treasury — Internal Revenue Service

OMB No. 1545-0029

| Employer identification number (EIN) | | | **Return You're Correcting...** |
|---|---|---|---|

**Return You're Correcting...**

Check the type of return you're correcting.

| | |
|---|---|
| Name (not your trade name) | **Tedder Acquisitions LLC C Layton Pow** |

[X] 941

Trade name (if any)

[ ] 941-SS

Check the ONE quarter you're correcting.

**Address**

4411 W Riverbend Ave

[ ] 1: January, February, March

| Number | Street | | Suite or room number |
|---|---|---|---|

[X] 2: April, May, June

| Post Falls | | ID | 83854 |
|---|---|---|---|
| City | | State | ZIP code |

[ ] 3: July, August, September

[ ] 4: October, November, December

| | | |
|---|---|---|
| Foreign country name | Foreign province/county | Foreign postal code |

Enter the calendar year of the quarter you're correcting.

**2020** (YYYY)

Read the separate instructions before completing this form. Use this form to correct errors you made on Form 941 or 941-SS. Use a separate Form 941-X for each quarter that needs correction. Type or print within the boxes. You MUST complete all four pages. Don't attach this form to Form 941 or 941-SS unless you're reclassifying workers; see the instructions for line 36.

Enter the date you discovered errors.

04 / 07 / 2023
(MM / DD / YYYY)

**Part 1:**    **Select ONLY one process. See page 5 for additional guidance.**

[ ]    **1.** **Adjusted employment tax return.** Check this box if you underreported amounts. Also check this box if you overreported amounts and you would like to use the adjustment process to correct the errors. You must check this box if you're correcting both underreported and overreported amounts on this form. The amount shown on line 27, if less than zero, may only be applied as a credit to your Form 941, Form 941-SS, or Form 944 for the tax period in which you're filing this form.

[X]    **2.** **Claim.** Check this box if you overreported amounts only and you would like to use the claim process to ask for a refund or abatement of the amount shown on line 27. Don't check this box if you're correcting ANY underreported amounts on this form.

**Part 2:**    **Complete the certifications.**

[X]    **3.** I certify that I've filed or will file Forms W-2, Wage and Tax Statement, or Forms W-2c, Corrected Wage and Tax Statement, as required.

**Note:** If you're correcting underreported amounts only, go to Part 3 on page 2 and skip lines 4 and 5. If you're correcting overreported amounts, for purposes of the certifications on lines 4 and 5, Medicare tax doesn't include Additional Medicare Tax. Form 941-X can't be used to correct overreported amounts of Additional Medicare Tax unless the amounts weren't withheld from employee wages or an adjustment is being made for the current year.

**4.** If you checked line 1 because you're adjusting overreported federal income tax, social security tax, Medicare tax, or Additional Medicare Tax, check all that apply. You must check at least one box.
I certify that:

[ ]    **a.** I repaid or reimbursed each affected employee for the overcollected federal income tax or Additional Medicare Tax for the current year and the overcollected social security tax and Medicare tax for current and prior years. For adjustments of employee social security tax and Medicare tax overcollected in prior years, I have a written statement from each affected employee stating that he or she hasn't claimed (or the claim was rejected) and won't claim a refund or credit for the overcollection.

[ ]    **b.** The adjustments of social security tax and Medicare tax are for the employer's share only. I couldn't find the affected employees or each affected employee didn't give me a written statement that he or she hasn't claimed (or the claim was rejected) and won't claim a refund or credit for the overcollection.

[ ]    **c.** The adjustment is for federal income tax, social security tax, Medicare tax, or Additional Medicare Tax that I didn't withhold from employee wages.

**5.** If you checked line 2 because you're claiming a refund or abatement of overreported federal income tax, social security tax, Medicare tax, or Additional Medicare Tax, check all that apply. You must check at least one box.
I certify that:

[ ]    **a.** I repaid or reimbursed each affected employee for the overcollected social security tax and Medicare tax. For claims of employee social security tax and Medicare tax overcollected in prior years, I have a written statement from each affected employee stating that he or she hasn't claimed (or the claim was rejected) and won't claim a refund or credit for the overcollection.

[ ]    **b.** I have a written consent from each affected employee stating that I may file this claim for the employee's share of social security tax and Medicare tax. For refunds of employee social security tax and Medicare tax overcollected in prior years, I also have a written statement from each affected employee stating that he or she hasn't claimed (or the claim was rejected) and won't claim a refund or credit for the overcollection.

[ ]    **c.** The claim for social security tax and Medicare tax is for the employer's share only. I couldn't find the affected employees, or each affected employee didn't give me a written consent to file a claim for the employee's share of social security tax and Medicare tax, or each affected employee didn't give me a written statement that he or she hasn't claimed (or the claim was rejected) and won't claim a refund or credit for the overcollection.

[ ]    **d.** The claim is for federal income tax, social security tax, Medicare tax, or Additional Medicare Tax that I didn't withhold from employee wages.

Next ▶

| Name *(not your trade name)* | Employer identification number (EIN) | Correcting quarter  2  (1, 2, 3, 4) |
|---|---|---|
| Tedder Acquisitions LLC C Layton Pow | | Correcting calendar year (YYYY) 2020 |

## Part 3: Enter the corrections for this quarter. If any line doesn't apply, leave it blank.

| | | Column 1 | | Column 2 | | Column 3 | | Column 4 |
|---|---|---|---|---|---|---|---|---|
| | | Total corrected amount (for ALL employees) | − | Amount originally reported or as previously corrected (for ALL employees) | = | Difference (If this amount is a negative number, use a minus sign.) | | Tax correction |
| 6. | Wages, tips, and other compensation (Form 941, line 2) | . | − | . | = | . | | Use the amount in Column 1 when you prepare your Forms W-2 or Forms W-2c. |
| 7. | Federal income tax withheld from wages, tips, and other compensation (Form 941, line 3) | . | − | . | = | . | Copy Column 3 here ▶ | . |
| 8. | Taxable social security wages (Form 941 or 941-SS, line 5a, Column 1) | . | − | . | = | . | × 0.124* = | . |
| | | | | | | | * If you're correcting your employer share only, use 0.062. See instructions. | |
| 9. | Qualified sick leave wages (Form 941 or 941-SS, line 5a(i), Column 1) | . | − | . | = | . | × 0.062 = | . |
| 10. | Qualified family leave wages (Form 941 or 941-SS, line 5a(ii), Column 1) | . | − | . | = | . | × 0.062 = | . |
| 11. | Taxable social security tips (Form 941 or 941-SS, line 5b, Column 1) | . | − | . | = | . | × 0.124* = | . |
| | | | | | | | * If you're correcting your employer share only, use 0.062. See instructions. | |
| 12. | Taxable Medicare wages & tips (Form 941 or 941-SS, line 5c, Column 1) | . | − | . | = | . | × 0.029* = | . |
| | | | | | | | * If you're correcting your employer share only, use 0.0145. See instructions. | |
| 13. | Taxable wages & tips subject to Additional Medicare Tax withholding (Form 941 or 941-SS, line 5d) | . | − | . | = | . | × 0.009* = | . |
| | | | | | | | * Certain wages and tips reported in Column 3 shouldn't be multiplied by 0.009. See instructions. | |
| 14. | Section 3121(q) Notice and Demand—Tax due on unreported tips (Form 941 or 941-SS, line 5f) | . | − | . | = | . | Copy Column 3 here ▶ | . |
| 15. | Tax adjustments (Form 941 or 941-SS, lines 7 through 9) | . | − | . | = | . | Copy Column 3 here ▶ | . |
| 16. | Qualified small business payroll tax credit for increasing research activities (Form 941 or 941-SS, line 11a; you must attach Form 8974) | . | − | . | = | . | See instructions | . |
| 17. | Nonrefundable portion of credit for qualified sick and family leave wages (Form 941 or 941-SS, line 11b) | . | − | . | = | . | See instructions | . |
| 18. | Nonrefundable portion of employee retention credit (Form 941 or 941-SS, line 11c) | 125220  38 | − | 0  00 | = | -125220  38 | See instructions | -125220  38 |
| 19. | Special addition to wages for federal income tax | . | − | . | = | . | See instructions | . |
| 20. | Special addition to wages for social security taxes | . | − | . | = | . | See instructions | . |
| 21. | Special addition to wages for Medicare taxes | . | − | . | = | . | See instructions | . |
| 22. | Special addition to wages for Additional Medicare Tax | . | − | . | = | . | See instructions | . |
| 23. | Combine the amounts on lines 7 through 22 of Column 4 . . . . . . . . . . . . . . . . . . . . . . | | | | | | | -125220  38 |
| 24. | Deferred amount of social security tax* (Form 941 or 941-SS, line 13b) | . | − | . | = | . | See instructions | . |
| | | * Use this line to correct the employer deferral for the second quarter of 2020 and the employer and employee deferral for the third and fourth quarters of 2020. | | | | | | |
| 25. | Refundable portion of credit for qualified sick and family leave wages (Form 941 or 941-SS, line 13c) | . | − | . | = | . | See instructions | . |

Next ▶

Form **941-X** (Rev. 10-2020)

| Name *(not your trade name)* | Employer identification number (EIN) | Correcting quarter | 2 | (1, 2, 3, 4) |
|---|---|---|---|---|
| **Tedder Acquisitions LLC C Layton Pow** | | Correcting calendar year (YYYY) **2020** | | |

**Part 3:** Enter the corrections for this quarter. If any line doesn't apply, leave it blank. *(continued)*

| | | Column 1 | | Column 2 | | Column 3 | | Column 4 |
|---|---|---|---|---|---|---|---|---|
| | | *Total corrected amount (for ALL employees)* | − | *Amount originally reported or as previously corrected (for ALL employees)* | = | *Difference (If this amount is a negative number, use a minus sign.)* | | *Tax correction* |
| 26. | Refundable portion of employee retention credit (Form 941 or 941-SS, line 13d) | 124779 . 62 | − | 0 . 00 | = | -124779 . 62 | See instructions | -124779 . 62 |

27. **Total.** Combine the amounts on lines 23 through 26 of Column 4 . . . . . . . . . . . . . . . . . . . | **-250000 . 00**

**If line 27 is less than zero:**

- If you checked line 1, this is the amount you want applied as a credit to your Form 941 or 941-SS for the tax period in which you're filing this form. (If you're currently filing a Form 944, Employer's ANNUAL Federal Tax Return, see the instructions.)
- If you checked line 2, this is the amount you want refunded or abated.

**If line 27 is more than zero, this is the amount you owe.** Pay this amount by the time you file this return. For information on how to pay, see *Amount you owe* in the instructions.

| 28. | Qualified health plan expenses allocable to qualified sick leave wages (Form 941 or 941-SS, line 19) | . | − | . | = | . | |
|---|---|---|---|---|---|---|---|
| 29. | Qualified health plan expenses allocable to qualified family leave wages (Form 941 or 941-SS, line 20) | . | − | . | = | . | |
| 30. | Qualified wages for the employee retention credit (Form 941 or 941-SS, line 21) | 500000 . 00 | − | 0 . 00 | = | -500000 . 00 | |
| 31. | Qualified health plan expenses allocable to wages reported on Form 941 or 941-SS, line 21 (Form 941 or 941-SS, line 22) | . | − | . | = | . | |
| 32. | Credit from Form 5884-C, line 11, for this quarter (Form 941 or 941-SS, line 23) | . | − | . | = | . | |
| 33a. | Qualified wages paid March 13 through March 31, 2020, for the employee retention credit (use this line to correct only the second quarter of 2020) (Form 941 or 941-SS, line 24) | . | − | . | = | . | |
| 33b. | Deferred amount of the employee share of social security tax included on Form 941 or 941-SS, line 13b (use this line to correct only the third and fourth quarters of 2020) (Form 941 or 941-SS, line 24) | . | − | . | = | . | |
| 34. | Qualified health plan expenses allocable to wages reported on Form 941 or 941-SS, line 24 (use this line to correct only the second quarter of 2020) (Form 941 or 941-SS, line 25) | . | − | . | = | . | |

Next ▶

Form **941-X** (Rev. 10-2020)

| Name (not your trade name) | Employer identification number (EIN) | Correcting quarter  2  (1, 2, 3, 4) |
|---|---|---|
| Tedder Acquisitions LLC C Layton Pow | | Correcting calendar year (YYYY) 2020 |

**Part 4:** Explain your corrections for this quarter.

☐ **35.** Check here if any corrections you entered on a line include both underreported and overreported amounts. Explain both your underreported and overreported amounts on line 37.

☐ **36.** Check here if any corrections involve reclassified workers. Explain on line 37.

**37.** You must give us a detailed explanation of how you determined your corrections. See the instructions.

Due to new legislation that was passed we are now eleigible to apply for the Employee retention Credit. The wages that wer used for the Paycheck Protetion Program were not used for this Employee Retention Credit. Our business was affected by forced closures from local and state governments.

**Part 5:** Sign here. You must complete all four pages of this form and sign it.

Under penalties of perjury, I declare that I have filed an original Form 941 or Form 941-SS and that I have examined this adjusted return or claim, including accompanying schedules and statements; and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Sign your name here | | Print your name here | Shawn Zall |
|---|---|---|---|
| | | Print your title here | Preparer |
| Date | 04/07/2023 | Best daytime phone | 714-668-9973 |

**Paid Preparer Use Only**                      Check if you're self-employed . . . ☐

| Preparer's name | Financial Solutions Plus | PTIN | P00186605 |
|---|---|---|---|
| Preparer's signature | | Date | /  / |
| Firm's name (or yours if self-employed) | Financial Solutions Plus | EIN | 0315-18034R |
| Address | 1231 E Dyer Rd, Suite 165 | Phone | 714-668-9973 |
| City | Santa Ana | State | CA | ZIP code | 92705 |

Form **941-X** (Rev. 10-2020)

B 455 939 594

Check No.

08 01 23 20091700    KANSAS CITY, MO    4045 31609446

Pay to
the order of    TEDDER INDUSTRIES LLC
CLAYTON POWELL MBR
4411 W RIVERBEND AVE
POST FALLS ID 83854 8150

$**276653*41

VOID AFTER ONE YEAR

PROGRAM DISBURSING OFFICER

008

TEDD    CINCIN    06/2020    F-941 REF    01
26,653.41 INT 355 DAYS

045750

VOID



March 20, 2024

Cincinnati Refund Inquiry Unit
PO Box 145500
Mail Stop 536G
Cincinnati, OH 45250

Dear Cincinnati Refund Inquiry Unit:

This claim of the ERC is being withdrawn following additional detailed review of the company's qualification for the Credit during this quarterly period. Following this review, the company believes the claim for this period was filed in error and wishes to withdraw its claim.

Sincerely,

Shawn Hostetter

CEO

**CERTIFIED MAIL® RECEIPT**

*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Cincinnati, OH 45250

| Certified Mail Fee | $4.40 | 0854 |
|---|---|---|
| $ | | 07 |

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage $9.85

Total Postage and Fees $17.90

03/21/2024

Sent To Cincinnati Refund Inquiry Unit
Street and Apt. No., or PO Box No. PO Box 145500 Mail Stop 536 G
City, State, ZIP+4® Cincinnati OH 45250

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

---

**UNITED STATES POSTAL SERVICE®**

POST FALLS
405 N GREENSFERRY RD
POST FALLS, ID 83854-9998
(800) 275-8777

03/21/2024                            10:05 AM
-------------------------------------------
Product              Qty    Unit      Price
                            Price
-------------------------------------------
Priority Mail®        1               $9.85
Flat Rate Env
    Cincinnati, OH 45250
    Flat Rate
    Expected Delivery Date
      Sat 03/23/2024
    Insurance                         $0.00
      Up to $100.00 included
    Certified Mail®                   $4.40
      Tracking #:
        9589 0710 5270 0967 3435 06
    Return Receipt                    $3.65
      Tracking #:
        9590 9402 8083 2349 2593 68
Total                                $17.90

-------------------------------------------
Grand Total:                         $17.90
-------------------------------------------
Credit Card Remit                    $17.90
    Card Name:
    Account #:
    Approval #:
    Transaction #:
    AID:                         Chip
    AL:
    PIN: Not Required
-------------------------------------------

    In a hurry? Self-service kiosks offer
    quick and easy check-out. Any Retail
      Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
 and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
            1-800-222-1811.

    Save this receipt as evidence of
insurance. For information on filing an
         insurance claim go to
 https://www.usps.com/help/claims.htm
      or call 1-800-222-1811

         Preview your Mail
        Track your Packages
         Sign up for FREE @
 https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.

   Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



| Form **2848** | **Power of Attorney** | OMB No. 1545-0150 |
|---|---|---|
| (Rev. January 2021) | **and Declaration of Representative** | **For IRS Use Only** |
| Department of the Treasury<br>Internal Revenue Service | ▶ Go to *www.irs.gov/Form2848* for instructions and the latest information. | Received by: |

| | | Name _____ |
|---|---|---|
| | | Telephone _____ |
| | | Function _____ |
| | | Date ___ / ___ / ___ |

**Part I   Power of Attorney**

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1   Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) | |
|---|---|---|
| Tedder Industires, LLC Clayton Powell MBR | | |
| | Daytime telephone number | Plan number (if applicable) |
| 4411 W Riverbend Ave, Post Falls, ID 83854 | (208)215-2046 | |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Craig Lammlin, J.D., Moss Adams LLP | CAF No. _____ |
| | PTIN _____ P01316122 |
| | Telephone No. _____ (469) 453-7120 |
| 14555 Dallas Parkway, STE 300, Dallas, TX 75254 | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| Evan Krueger, CPA, Moss Adams LLP | CAF No. _____ |
| | PTIN _____ P02357245 |
| | Telephone No. _____ (206) 302-6554 |
| 999 Third Ave, STE 2800, Seattle, WA 98104 | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| Ryan W. Summers, J.D., Moss Adams LLP | CAF No. _____ 0310-61158R |
| | PTIN _____ P03156854 |
| | Telephone No. _____ (713) 335-5086 |
| 500 Dallas St, STE 2500, Houston, TX 77002 | Fax No. _____ (713) 850-0725 |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3   Acts authorized (you are required to complete line 3).** Except for the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number<br>(1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable)<br>(see instructions) |
|---|---|---|
| Payroll | 941/941-X | 2020 |
| | | |
| | | |

**4   Specific use not recorded on the Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See *Line 4. Specific Use Not Recorded on CAF* in the instructions . . . . . . . . . . . . . . . . . ▶ ☐

**5a   Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☐ Access my IRS records via an Intermediate Service Provider;
☐ Authorize disclosure to third parties;   ☑ Substitute or add representative(s);   ☐ Sign a return; _____

_____

_____

☐ Other acts authorized: _____

_____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.       Cat. No. 11980J       Form **2848** (Rev. 1-2021)

Form 2848 (Rev. 1-2021) Page **2**

**b** **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): ------------------------------

----------------------------------------------------------------------------------------------------

**6** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this form. If you **do not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7** **Taxpayer declaration and signature.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| *Shawn Hostetter* | | |
|---|---|---|
| 7BA37BA7E0EC464... | 3/21/2024 | Chief Executive Officer |
| Signature | Date | Title (if applicable) |

| | Tedder Industries, LLC Clayton Powell MBR |
|---|---|
| Print name | Print name of taxpayer from line 1 if other than individual |

## Part II    Declaration of Representative

Under penalties of perjury, by my signature below I declare that:

• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;

• I am subject to regulations in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;

• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and

• I am one of the following:

**a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

**b** Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

**c** Enrolled Agent—enrolled as an agent by the IRS per the requirements of Circular 230.

**d** Officer—a bona fide officer of the taxpayer organization.

**e** Full-Time Employee—a full-time employee of the taxpayer.

**f** Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).

**g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the IRS is limited by section 10.3(d) of Circular 230).

**h** Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See* **Special Rules and Requirements for Unenrolled Return Preparers** *in the instructions for additional information.*

**k** Qualifying Student or Law Graduate—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student, or law graduate working in a LITC or STCP. See instructions for Part II for additional information and requirements.

**r** Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation—Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable) | Bar, license, certification, registration, or enrollment number (if applicable) | Signature | Date |
|---|---|---|---|---|
| a | CT | 416298 | | 3/20/2024 |
| b | WA | 41705 | Evan D Krueger | 3/20/2024 |
| a | TX | 24067892 | Ryan W Gm | 3/20/2024 |
| | | | | |

Form **2848** (Rev. 1-2021)

DocuSign Envelope ID: A0041243-LA 11-42CC-AAAA-AE3J0C920AE0

**Form SS-10**
(Rev. June 2011)

Department of the Treasury - Internal Revenue Service

## Consent to Extend the Time to Assess Employment Taxes

ERC Voluntary Disclosure

Taxpayer Identification Number

Tedder Industries, LLC Clayton Powell MBR
*(Name(s))* , taxpayer(s)

of 4411 W Riverbend Ave, Post Falls, ID 83854 and the
*(Number, Street, City or Town, State, ZIP Code)*

Commissioner of Internal Revenue consent and agree to the following:

(1) The amount of taxes due from the taxpayer under:

(a) The Federal Unemployment Tax Act, for calendar years

(b) The Federal Insurance Contributions Act, for tax periods

from April 1, 2020 through December 31, 2020

(c) The income tax withholding provisions of existing or prior revenue laws, for tax periods

from _____ through _____

(d) The Railroad Retirement Tax Act, for tax periods

from _____ through _____

plus any applicable additions to the tax, may be assessed at any time on or before April 15, 2025
*(Expiration date)*

(2) The collection provisions and limitations now in effect will also apply to any tax assessed within the extended period.

(3) The taxpayer(s) may file a claim for credit or refund and the Service may credit or refund the tax within 6 months after this agreement ends.

This consent is limited to the amount of any employment tax (including applicable statutory interest) for the taxable periods included in the 2020 taxable year and shall be limited to the assessment of any underpayment of tax in connection with credits claimed pursuant to section 2301 of the Coronavirus Aid, Relief, and Economic Security Act (including applicable statutory interest).

### Your Rights as a Taxpayer

You have the right to refuse to extend the period of limitations or limit this extension to a mutually agreed-upon issue(s) or mutually agreed-upon period of time. **Publication 1035, *Extending the Tax Assessment Period*,** provides a more detailed explanation of your rights and the consequences of the choices you may make. If you have not already received a Publication 1035, the publication can be obtained, free of charge, from the IRS official who requested that you sign this consent or from the IRS' web site at www.irs.gov or by calling toll free at 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled.

**YOUR SIGNATURE HERE** →

I am aware that I have the right to refuse to sign this consent or to limit the extension to mutually agreed-upon issues and/or period of time as set forth in I.R.C. § 6501(c)(4)(B).     *(Date signed)*

**TAXPAYER'S REPRESENTATIVE**
**SIGN HERE** →

I am aware that I have the right to refuse to sign this consent or to limit the extension to mutually agreed-upon issues and/or period of time as set forth in I.R.C. § 6501(c)(4)(B). In addition, the taxpayer(s) has been made aware of these rights.     *(Date signed)*

| CORPORATE NAME | ► Tedder Industries, LLC Clayton Powell MBR | |
|---|---|---|
| **CORPORATE OFFICER(S) SIGN HERE** | ► Shawn Hostetter | CEO | 3/21/2024 |
| | 76A378A7E0EC464 | *(Title)* | *(Date signed)* |
| | ► | *(Title)* | *(Date signed)* |

I (we) am aware that I (we) have the right to refuse to sign this consent or to limit the extension to mutually agreed-upon issues and/or period of time as set forth in I.R.C. § 6501(c)(4)(B).

**INTERNAL REVENUE SERVICE SIGNATURE AND TITLE**

BY _____
*(Authorized Official Signature and Title - See instructions.)*     *(Date signed)*

*(Signature instructions are on the back of this form)*     www.irs.gov     Catalog No. 20030G     Form **SS-10** (Rev. 6-2011)

## Instructions

If this consent is for a partnership return, only one authorized partner need sign.

If you are an attorney or agent of the taxpayer(s), you may sign this consent provided the action is specifically authorized by a power of attorney. If the power of attorney was not previously filed, you must include it with this form.

If you are acting as a fiduciary *(such as executor, administrator, trustee, etc.)* and you sign this consent, attach Form 56, Notice Concerning Fiduciary Relationship, unless it was previously filed.

If the taxpayer is a corporation, sign this consent with the corporate name followed by the signature and title of the officer(s) authorized to sign.

**Signature Instructions for the taxpayer:**

## Instructions for Internal Revenue Service Employees

The signature and title line will be signed and dated by the appropriate authorized official within your division.

Form **SS-10** (Rev. 6-2011)

Department of the Treasury - Internal Revenue Service

Form **15434**
(December 2023)

# Application for Employee Retention Credit (ERC)
## Voluntary Disclosure Program

OMB Number
1545-2316

This form is used by employers to apply for the Employee Retention Credit (ERC) Voluntary Disclosure Program. Use the Document Upload Tool to submit completed and signed application packages at irs.gov/DUT. Submit a payment for each period listed in Part IV via Electronic Federal Tax Payment System (EFTPS). See Form 15434 instructions "When and How to Pay" for payment guidance.

## Part I – Taxpayer Information

| 1. Taxpayer's name | | 2. Employer identification number (EIN) | |
|---|---|---|---|
| Tedder Industries, LLC Clayton Powell MBR | | | |

| 3. Number and street *(or P.O. box number if mail is not delivered to a street address)* | | | 4. Room/Suite |
|---|---|---|---|
| 4411 W Riverbend Ave | | | |

| 5. City, town or post office | | 6. State | 7. ZIP code |
|---|---|---|---|
| Post Falls | | ID | 83854 |

| 8. Telephone number | 9. Fax number *(optional)* | 10. Email address *(optional)* |
|---|---|---|
| (208) 215-2046 | | |

## Part II – Third-Party Payer Client Information *(Third-party payers only. See Instructions)*

11a. Are you a third-party payer filing this form on behalf of a client? *(See instructions)*

☐ Yes *(complete 11b-11d)*     ☒ No *(skip to Part III)*

| 11b. Third-party payer client's name | 11c. Third-party payer client's EIN |
|---|---|
| | |

11d. Tax period(s) for which you filed an employment tax return claiming ERC on your client's behalf

## Part III – Are you authorizing another individual to represent you before the IRS?

12. Attach a properly completed Form 2848, Power of Attorney and Declaration of Representative, if applicable. Check this box if you have a 2848 on file or are attaching a 2848  ☒

## Part IV – General Information

Provide information regarding the filing and receipt of ERC for the applicable tax period ending date(s) below.

| | June 30, 2020 | September 30, 2020 | December 31, 2020 | March 31, 2021 | June 30, 2021 | September 30, 2021 | December 31, 2021 | Total All Periods |
|---|---|---|---|---|---|---|---|---|
| 13a. Form | | | 941-X | | | | | |
| 13b. Reported Non-Refundable ERC | | | $154,418.29 | | | | | $154,418.29 |
| 13c. Reported Refundable ERC | | | $95,581.71 | | | | | $95,581.71 |
| 13d. Total Reported ERC *(sum 13b+13c)* | | | $250,000.00 | | | | | $250,000.00 |
| 14. Reduction for ERC-VDP *(20% of Line 13d)* | $0.00 | $0.00 | $50,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $50,000.00 |
| 15. Estimate due in ERC-VDP *(Line 13d minus Line 14)*. Make a separate payment for each tax period via EFTPS. *(See Form 15434 instructions "When and How to Pay" for payment guidance)* | $0.00 | $0.00 | $200,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200,000.00 |

| Taxpayer's name | Employer identification number (EIN) |
|---|---|
| Tedder Industries, LLC Clayton Powell MBR | |

## Part V – Preparers/Advisors

16. Did an individual, business, and/or organization(s) advise you (or your client) to claim the ERC

☒ Yes *(compete lines 17-24 for each preparer/advisor)*        ☐ No *(move to next section)*

Identify each preparer/advisor who assisted you in filing your ERC claim(s) for refund.

### Preparers/Advisors 1.

| 17. Name | 18. Company/Firm name |
|---|---|
| | Goldman Sachs Capital LLC/Enirch Financial |

| 19. Telephone number | 20. Number and street | | |
|---|---|---|---|
| (818) 237-2100 | 18653 Ventura Blvd #107 | | |

| 21. City | | 22. State | 23. ZIP code |
|---|---|---|---|
| Tarzana | | CA | 91356 |

24. Describe the services provided by the preparer/advisor
Assistance in calculating credit, preparing 941-X forms.

## Sign Here - Taxpayer

Under penalties of perjury, I declare that I have examined this submission, including any accompanying documents, and to the best of my knowledge and belief, all of the facts contained herein are true, correct, and complete.

| Your signature DocuSigned by: Shawn Hostetter | | Date 3/21/2024 |
|---|---|---|
| Your name *(print/type)* 7FA378A7E0EC484... | Your title *(print/type)* | Best daytime telephone number |
| Shawn Hostetter | Chief Executive Officer | |

## Sign Here - Representative

Under penalties of perjury, I declare that I have examined this submission, including any accompanying documents, and to the best of my knowledge and belief, all of the facts contained herein are true, correct, and complete. Declaration of representative is based on all information of which representative has any knowledge.

| Representative's signature | | Date |
|---|---|---|
| Representative's name *(print/type)* | Representative's title *(print/type)* | Representative's telephone number |

DocuSign Envelope ID: A004 1243-EA1F-42CC-AAA4-AE336C926AE0

# Instructions for Form 15434, Application for Employee Retention Credit (ERC) Voluntary Disclosure Program

## General Instructions

### Purpose of Form
Use Form 15434 to apply for the ERC Voluntary Disclosure Program (ERC-VDP). Use the Document Upload Tool to submit completed and signed application packages at irs.gov/DUT. See Assembling the Application for additional information.

### ERC Voluntary Disclosure Program
The ERC is a tax credit for businesses and tax-exempt organizations that had employees and were affected during the COVID-19 pandemic. ERC-VDP will provide employers with an opportunity to correct their employment tax noncompliance resulting from improperly claimed ERC. For more information on the ERC, visit www.irs.gov/ERC.

For more information on the ERC-VDP, go to www.irs.gov/ERC and click on the Voluntary Disclosure Program.

### Eligibility Requirements
The ERC-VDP will be open to all employers if their ERC claim has been processed and paid as of the ERC-VDP announcement date, and:

1. They are not under criminal investigation nor have they been notified that the IRS intends to commence such an investigation, the IRS has not received information from a third party alerting the IRS to the noncompliance, nor has the IRS acquired information directly related to the noncompliance from an enforcement action;

2. They are not under examination by the IRS for an employment tax audit for periods they are applying for ERC-VDP listed in Form 15434 *Part IV*,

3. They have not previously received notice and demand for repayment of claimed ERC.

If you used a third-party payer to file your Employee Retention Credit, (STOP) you are not eligible to file this form. You must contact your third-party payer to apply for this program on your behalf. Hint, an indicator of a third-party payer may be if the name and EIN on the employment tax return that reported the wages and credits related to the ERC was different than your name and EIN reported on lines 1 and 2 above.

### When and Where to File
By 11:59pm local time on March 22, 2024, upload your reply using your computer or mobile device via the Document Upload Tool at irs.gov/DUT. You may also go to irs.gov and search DUT. See Assembling the Application for additional information.

After arriving at the DUT website, you'll acknowledge the authorized use and privacy statement. Next, indicate "No" for access code. After that, type 15434 to pull up Form 15434 submission portal and answer the questions to upload your documents. For additional information, go to www.irs.gov/ERC and click on the Voluntary Disclosure Program link to locate the VDP Frequently Asked Questions.

### When and How to Pay
Form 15434 will help you estimate how much you'll pay under the terms of ERC-VDP. After completing *Part IV, General Information*, use Electronic Federal Tax Payment System (EFTPS) to submit an online payment for each tax period.

Form 15434, Part IV, Line 15 calculates the estimate due for each tax period you wish to resolve in ERC-VDP.

Payment should be made separately for each tax period via EFTPS upon submission of Form 15434. For each EFTPS payment, select the category "Advanced Payment". **Note:** Do not use Line 15, "Total All Periods" column to make a single, lump-sum payment. See Publication 4990, Payment Instruction Booklet For Business & Individual Taxpayers, for additional information on EFTPS.

If you are not already enrolled in EFTPS, be aware that new enrollments can take up to five business days to process. Go to IRS.gov/EFTPS for more information.

### How To Get Help
If you have questions about a tax issue, or want to download free publications, forms, or instructions, go to IRS.gov to find resources that can help you right away.

**Getting tax forms and publications.** Go to IRS.gov/Forms to view, download, or print all the forms, instructions, and publications you may need.

**Getting answers to your ERC questions.** On IRS.gov, you can get up-to-date information on the law, eligibility, recordkeeping, scams, events, and other ERC resources. Go to the ERC landing page at IRS.gov/ERC.

**ERC-VDP FAQs.** See the list of ERC-VDP Frequently Asked Questions which can be accessed by going to www.irs.gov/ERC and clicking on the Voluntary Disclosure Program link to locate the VDP Frequently Asked Questions.

**ERC-VDP hotline.** If you need help completing Form 15434, have questions on the status of your ERC-VDP application, or have other ERC-VDP related questions, contact the ERC-VDP hotline at 414-231-2222 and leave a voicemail for a return call. Calls will generally be returned within 3 business days.

### Assembling the Application
To ensure the application is timely and correctly processed, submit all required documents in the following order:

1. Form 15434 Application for Employee Retention Credit Voluntary Disclosure Program.

2. ERC-VDP Form SS-10, Consent to Extend the Time to Assess Employment Taxes, if *Part IV, General Information*, includes tax period(s) ending in 2020. See *Part IV* below for more information.

3. Form 8822-B, Change of Address or Responsible Party – Business, if applicable. See Part I, *Taxpayer Address*, later.

4. Form 2848, Power of Attorney and Declaration of Representative, if applicable. See *Part III, Authorizing another individual to represent you before the IRS*.

Complete every applicable line item on Form 15434. Ensure Taxpayer's Name and EIN fields at the top of page 2 and any additional pages of Form 15434 are completed, and match Line 1 and Line 2 on page 1. Only complete submissions that include all pages of Form 15434 and any required attachments can be processed. Typing the information on Form 15434 can help ensure timely processing. (**Note:** The form instructions don't need to be submitted.)

### Amending the Application
If you need to correct a previously submitted Form 15454 application package and have not received a letter notifying you of an error with your application, submit a new, complete, corrected, Form 15434 with "amended" written at the top of Form 15434 so it is understood to process the new form and disregard prior submission(s). Submit the amended Form 15434 following *When and Where to File*, above.

Exception: If an IRS employee assigned to process your previously submitted Form 15434 has contacted you, submit the amended Form 15434 to that employee.

## Specific Instructions

### Part I. Taxpayer Information
#### Line 1. Taxpayer Name
Enter your complete business name, not your trade name. Make sure the Taxpayer Name on Line 1 is assigned to the EIN provided in Line 2. You can view your name and EIN on file with IRS online with a Business Tax Account. See https://www.irs.gov/businesses/business-tax-account.

## Line 2. Employer Identification Number (EIN)

Enter your EIN. Make sure the EIN on Line 2 is assigned to the Taxpayer Name provided on Line 1. Form 15434 cannot be processed if the name and EIN don't match IRS records. You can view your name and EIN on file with IRS online with a Business Tax Account. See https://www.irs.gov/businesses/business-tax-account.

Form 15434 cannot be filed using a social security number.

## Line 3 – 7. Taxpayer Address

Enter your full address. If the address on Form 15434, Lines 3 through 7, doesn't match our records, your application cannot be processed. If you've already submitted Form 8822-B, Change of Address or Responsible Party – Business, include a copy with your Form 15434 to ensure your application can be processed.

## Line 8 - 10. Taxpayer Contact

Enter your contact information.

## Part II. Third-Party Payer Client Information

Part II is for third-party payers. Many employers out-source their payroll and related tax requirements to a Third-Party Payer who may report, collect, deposit, or pay employment taxes with federal, state, and local authorities on behalf of the employer clients. Specifically this is for third-party payers who reported wages related to the ERC under their own EIN rather than the EIN of their client.

## Line 11a. Filing on behalf of a third-party payer client

Check the appropriate box (Yes/No) to indicate if you are filing Form 15434 on behalf of a third-party payer client. If "Yes", complete lines 11b-11d. If not enough space to do so, enter instead "See attached Schedule R". If "No," skip to part III.

## Line 11b. Third-party payer client's name

If 11a is marked "Yes", you must provide your client's name on Line 11b or your Form 15434 cannot be processed.

## Line 11c. Third-party payer client's EIN

If 11a is marked "Yes", you must provide on Line 11c your client's EIN or your Form 15434 cannot be processed.

## Line 11d. Tax period(s) for third-party payer client

If 11a is marked "Yes", you must provide on Line 11d all tax periods for which you filed and employment tax return claiming ERC on your client's behalf, or your Form 15434 cannot be processed.

## Part III. Authorizing another individual to represent you before the IRS

### Line 12. Form 2848 on file or attached

Check the box if you have a Form 2848, Power of Attorney and Declaration of Representative, on file for the employment tax return(s) listed in Part IV, or if you are including with your Form 15434 a properly completed Form 2848 authorizing someone to represent you in ERC-VDP.

**Special instructions for completing Form 2848 for ERC-VDP.** On Form 2848, line 3, enter "Employment Taxes" as the Description of Matter. Complete the fields for Employment Tax Form Number and for Year(s) or Period(s). Do not put Form 15434 as the Tax Number. For additional information, see Form 2848 instructions.

Form 2848, its instructions, and Publication 4245, Power of Attorney Preparation Guide, are available on IRS.gov/Forms.

## Part IV. General Information

Provide information regarding the filing and receipt of ERC for each tax period you request to be resolved in the ERC-VDP. Each tax period requires a separate column in Part IV. If completing Form 15434 electronically, you only need to fill in lines 13a, 13b, and 13c. Lines 13d -16 have formulas in them that will automatically calculate. Please be aware that you do have the ability to type over the formulas in lines 13d-16 but it is not recommended.

**Note:** If completing Lines 13a through 16 for any Tax Period ending in 2020, a completed, signed ERC-VDP Form SS-10, Consent to Extend the Time to Assess Employment Taxes, for the 2020 Tax Period(s) is required to be submitted with Form 15434. The ERC-VDP Form SS-10 is available at www.irs.gov/ERC and click on the Voluntary Disclosure Program.

If you are a third-party payer, you must attach a copy of the Schedule R for the tax return(s) claiming ERC for each tax period. Redact or blackout any clients that are not participating.

## Line 13a. Form

For each Tax Period you request to be resolved in ERC-VDP, identify the form on which the ERC was improperly claimed, processed and paid. Applicable forms are 941, 941-X, 941-PR, 941-PR-X, 941-SS-X, 943, 943-X, 944, 944-X, CT-1, and CT-1-X. If completing Form 15434 electronically, click the arrow to open a drop-down list from which to select the form.

## Line 13b. Reported Non-Refundable ERC

Enter the non-refundable ERC reported on the form identified on Line 13a. If no non-refundable ERC was reported, enter $0. If you're not sure, check your copy of the filed employment tax return.

## Line 13c. Reported Refundable ERC

Enter the refundable ERC reported on the form identified on Line 13a. If no refundable ERC was reported, enter $0. If you're not sure, check your copy of the filed employment tax return.

## Line 13d. Total Reported ERC

This is the sum of reported non-refundable ERC on Line 13b and reported refundable ERC on Line 13c. If completing Form 15434 electronically, it is not recommended to type in Line 13d because a formula will automatically calculate this entry. If you do not know the amounts of non-refundable and refundable ERC for lines 13b and 13c, but you do know the total amount of ERC for the tax period, you may type that in Line 13d.

## Line 14. Reduction for ERC-VDP

Under the terms of ERC-VDP, you are required to pay back the Total Reported ERC in Line 13d minus 20%. Line 14 multiplies Line 13d by 20% to calculate the reduction. If completing Form 15434 electronically, do not type in Line 14 because a formula will automatically calculate this entry.

## Line 15. Estimate due in ERC-VDP

This is the total estimated amount you will need to repay as part of your participation in ERC-VDP. Employers must return the full amount of the ERC on Line 13d, including both the refundable and non-refundable portions, less a 20% reduction calculated on Line 14. If completing Form 15434 electronically, do not type in Line 15 because a formula will automatically calculate this entry.

Employers wishing to reduce only a portion of the credit (i.e., they are entitled to some of the credit they claimed but not all) are not eligible for ERC-VDP and should instead use traditional amended return process.

## Part V Preparers/Advisors

### Line 16. Did an individual, business, and/or organization(s) advise you to claim the ERC

Check the appropriate box (Yes/No) to indicate if an individual, business, and/or organization(s) advised you to claim the ERC. If "No", move to the next section.

If "Yes", compete lines 17-24 for the preparer/advisor. If more than one individual, business or organization advised you to claim ERC, click the "Add Additional Preparer/Advisor" button below Line 24 to add another set of Lines 17-24; repeat if necessary. Complete Lines 17-24 for each preparer/advisor who advised you to claim ERC.

### Line 17. Name

If Line 16 is marked "Yes", enter the name of preparer/advisor who advised you to claim ERC.

### Line 18. Company/Firm name

If Line 16 is marked "Yes", enter the business or organization which advised you to claim ERC.

### Line 19. Telephone Number

If Line 16 is marked "Yes", enter the preparer/advisor telephone number.

Page 5 of 5

### Line 20-23. Preparer/Advisor Address
If Line 16 is marked "Yes", enter the full mailing address of preparer/advisor.

### Line 24. Services provided by the preparer/advisor
If Line 16 is marked "Yes", describe the services provided by the preparer/advisor.

### Sign Here - Taxpayer
Form 15434 must be signed with the date, the signor's printed name, title, and best daytime telephone number. Digital signatures are acceptable. See FAQs for additional information.

Your ERC-VDP application must be signed by an authorized person. The person who can sign depends on the type of employer you are.

| Type of employer | Who can sign |
|---|---|
| Sole proprietorship | The individual who owns the business |
| Corporation, including a limited liability company (LLC) treated as a corporation | The president, vice president, or other principal officer duly authorized to sign |
| Partnership (including an LLC treated as a partnership) or unincorporated organization | A responsible and duly authorized member, partner, or officer having knowledge of its affairs |
| Single-member LLC treated as a disregarded entity for federal income tax purposes | The owner of the LLC or a principal officer duly authorized to sign |
| Trust or estate | The fiduciary |

### Sign Here - Representative
Your ERC-VDP application may instead be signed by a duly authorized agent (i.e., an individual with valid power of attorney via Form 2848, Power of Attorney and Declaration of Representative, or a reporting agent with Form 8655, Reporting Agent Authorization).

If Form 15434 is not signed, is missing the signor's printed name and/or title, or the signature is invalid, we may not be able to process your application for ERC-VDP.

### Privacy Act and Paperwork Reduction Act Notice
We ask for the information on this form to carry out the Internal Revenue laws of the United States. We need this information to determine your eligibility to participate in this program and to calculate the appropriate payment under the ERC-VDP . Our authority to ask for the information on this form is Subtitle C, Employment Taxes, of the Internal Revenue Code. Section 6109 requires you to provide your identifying number. You aren't required to apply for the ERC-VDP; however, if you apply, you must provide the information requested.

Failure to provide all the requested information may prevent the processing of your application; providing false or fraudulent information may subject you to penalties. We may disclose this information to the Department of Justice for civil or criminal litigation, and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal non-tax criminal laws, and to intelligence agencies to combat terrorism.

You aren't required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated burden for those who file this form is shown below.

| | |
|---|---|
| **Recordkeeping** . . . . . . . . . . . . . . | 13 min. |
| **Learning about the law or the form** . . . . . . . . . | 18 min. |
| **Preparing and sending the form to the IRS** . . . . | 1 hr, 49 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can send us comments from IRS.gov/FormComments. Or you can send your comments to:

Internal Revenue Service Tax Forms and Publications
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Don't send this form to this office. Instead, see *When and Where to File*, earlier.

Although we can't respond individually to each comment received, we do appreciate your feedback and will consider your comments as we revise our tax forms, instructions, and publications.

**DocuSign**

## Certificate Of Completion

Envelope Id: A0041245EA1F42CCAAA4AE336C926AE0                                      Status: Completed
Subject: Tedder Industries ERC VDP Documents
Deltek Client Engagement Code (123456.XXXX): 659345.0000
Office Location:
Seattle
Document Type: Tax - Other
Source Envelope:
Document Pages: 9                       Signatures: 3                             Envelope Originator:
Certificate Pages: 3                    Initials: 0                              Alanna Brown
AutoNav: Enabled                                                                 999 Third Avenue
EnvelopeId Stamping: Enabled                                                     Suite 2800
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                                Seattle, WA 98104
                                                                                Alanna.Brown@mossadams.com
                                                                                IP Address: 163.116.251.119

## Record Tracking

Status: Original                        Holder: Alanna Brown                     Location: DocuSign
       3/21/2024 7:52:01 AM                    Alanna.Brown@mossadams.com
Security Appliance Status: Connected    Pool: Security Pool

| Signer Events | Signature | Timestamp |
|---|---|---|
| Shawn Hostetter | DocuSigned by: | Sent: 3/21/2024 7:59:46 AM |
| shawn.hostetter@tedderindustries.com | *Shawn Hostetter* | Viewed: 3/21/2024 8:41:11 AM |
| CEO | 76A378A7E0EC464... | Signed: 3/21/2024 8:41:36 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 148.59.194.154 | |

**Electronic Record and Signature Disclosure:**
Accepted: 3/21/2024 8:41:11 AM
ID: 38e4929a-d8f9-4b60-bd13-ec2b86ff9635

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| craig Lammlin | **COPIED** | Sent: 3/21/2024 7:59:48 AM |
| Craig.Lammlin@mossadams.com | | Viewed: 3/21/2024 8:28:56 AM |
| Security Level: Email, Account Authentication (None) | | |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| | | |
|---|---|---|
| Daniel Duce | **COPIED** | Sent: 3/21/2024 7:59:47 AM |
| daniel.duce@tedderindustries.com | | Viewed: 3/21/2024 11:03:02 AM |
| Security Level: Email, Account Authentication (None) | | |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Evan Krueger<br>Evan.Krueger@mossadams.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 3/21/2024 7:59:47 AM<br>Viewed: 3/21/2024 8:19:55 AM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/21/2024 7:59:48 AM |
| Certified Delivered | Security Checked | 3/21/2024 8:41:11 AM |
| Signing Complete | Security Checked | 3/21/2024 8:41:36 AM |
| Completed | Security Checked | 3/21/2024 8:41:36 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## CONSENT FOR USE OF ELECTRONIC SIGNATURES AND DOCUMENTS

By selecting the "I Accept" button, you are signing this document electronically. You agree your electronic signature is the legal equivalent of your handwritten signature on this document. By selecting "I Accept" using any device, means or action, you consent to the legally binding terms and conditions of this document. You further agree that your signature on this document (your "E-Signature") is as valid as if you signed the document in writing. You also agree that no certification authority or other third party verification is necessary to validate your E-Signature, and that the lack of such certification or third party verification will not in any way affect the enforceability of your E-Signature or any resulting agreement between you and Moss Adams LLP. You are also confirming that you are authorized to sign this document. Finally, you understand and agree that your E-Signature will be legally binding and such transaction will be considered authorized by you.

# Documentation Upload Tool

## To submit your documents, follow these steps:

1. If required, complete your documentation, sign and date it.
2. Scan or take a photo of the front and back of your completed documentation to support your response.

   - Maximum number of files is 40 files.
   - File types allowed are .pdf, .jpg, .jpeg and .png.
   - Maximum file size is 15MB for each file.
   - PDF files must be 120 pages or less.
   - If your upload fails more than once, try re-scanning or taking a clearer photo of the documents.
   - File name cannot contain the following special characters: ` !@$%^&*{}[]:;'"|, <>/?~

3. Submit your response after all files have been uploaded.

   Only .jpg, .png, and .jpeg files can be previewed after upload is completed. REVIEW AND ENSURE ALL DOCUMENTS ARE UPLOADED BEFORE PRESSING THE SUBMIT BUTTON.



Please click submit below when all files are uploaded.

SELECT FILES TO UPLOAD

(1 file selected)

Total: 1.86 MB

 Tedder_Industries_ERC_VDP_Documents.pdf
1.86 MB
This file successfully passed the security check.

Remove

** NOTE: Back button will be disabled while files are being uploaded

BACK

SUBMIT

# Documentation Upload Tool

Your documents have been successfully uploaded. You may be contacted at a future date regarding your response. You should allow at least 30 days for a reply from the IRS.

EXIT

SUBMIT ANOTHER RESPONSE

Congratulations.

Within seven days, you will receive in the mail:

- Your PIN
- Instructions on how to create an EFTPS Internet password

Please note: We will mail your PIN to the IRS address of record for your employer identification number or social security number enrollment. That address may be different from the contact information you entered.

**Your enrollment number is** ████████████

This is important. Print for your records.

If your business payment must reach the IRS today to be timely, check with your financial institution about the availability of same-day tax wire payments. Fees may apply. The Same-Day Payment Worksheet shows the information your financial institution will need.

┌─ Business information ──────────────────────────────────────────

EIN:████████

**Business name:**TEDDER INDUSTRIES LLC CLAYTON POWEL

**Business U.S. phone:**(208) 215-2066

┌─ Contact information ──────────────────────────────────────────

**Name:**DANIEL DUCE

**Country:**UNITED STATES OF AMERICA

**Address:**4411 W RIVERBEND AVE

**City:**POST FALLS

**State:**IDAHO

**ZIP:**83854-8150

**U.S. phone:**(208) 457-7323

┌─ Financial information ──────────────────────────────────────────

**Routing number:** ████████████████

**Account number:** ████████

**Account type:** CHECKING

┌─ Authorization agreements ──────────────────────────────────────

**You agreed to this:**

**Debit Authorization Agreement**

Please read the following Authorization Agreement:

By completing the Financial Institution information above, and electronically signing by selecting "Accept" below, I authorize designated Financial Agents of the U.S. Treasury to initiate EFTPS debit entries to the financial institution account indicated above, for payment of federal taxes owed to the IRS upon request by Taxpayer or his/her representative, using the Electronic Federal Tax Payment System (EFTPS). I further authorize the financial institution named above to debit such entries to the financial institution account indicated above. All debits initiated by the U.S. Treasury designated Financial Agents pursuant to this authorization shall be made under U.S. Treasury regulations. This authorization is to remain in full force and effect until the designated Financial Agents of the U.S. Treasury have received written notification of termination in such time and in such manner as to afford a reasonable opportunity to act on it.

**Disclosure Authorization Agreement**

Please read the following Authorization Agreement:

I hereby authorize the contact person listed on this form and financial institutions involved in the processing of my Electronic Federal Tax Payment System (EFTPS) payments to receive confidential information necessary to effect enrollment in EFTPS, electronic payment of taxes, answer inquiries and resolve issues related to enrollment and payments. This information includes, but is not limited to, passwords, payment instructions, taxpayer name and identifying number, and payment transaction details. This authorization is to remain in full force and effect until the designated Financial Agents of the U.S. Treasury have received written notification from me of termination in such time and in such manner to afford a reasonable opportunity to act on it.

**Authority to Execute an Authorization**

If signed by a corporate officer, partner, or fiduciary on behalf of the taxpayer, I certify that I have the authority to have payments made from the taxpayer's account. If signed by a representative of the taxpayer, I certify that I have the authority to execute this authorization on behalf of the taxpayer (i.e. authority provided by Form 2848, Power of Attorney and Declaration of Representative, or Form 8655, Reporting Agent Authorization for Magnetic Tape/Electronic Filers).

---

Electronic signature

**Name:**DANIEL DUCE

**Date:**March 21, 2024

**EIN**

# EXHIBIT 5

Arden B. Silverman dba Capital Asset Protection Pro Per (Assignee)
23679 Calabasas Rd. #677
Calabasas, CA. 91302
818 404 9800

|                                          |     |            |
|------------------------------------------|-----|------------|
|                                          | :   |            |
|                                          | :   |            |
|                                          | :   |            |
|                                          | :   |            |
|                                          | :   |            |
| Arden Silverman dba Capital Asset        | :   | Assignment |
|                                          | :   |            |
| Protection; Plaintiff/Assignee           | :   |            |
|                                          | :   |            |
| vs.                                      | :   |            |

Tedder Industries, LLC; Tedder

Acquisitions, LLC; Inc. Tedder

Acquistion LLC C Layton POW; Sanaz

Little; Main Street Equity Interests,

Inc, MSC Equity Holding, LLC; Tetiri

Tedder, Thomas Tedder; TI Holdings LLC

etc. et. al

Defendant(s)
_____

Goldman Sachs Capital LLC

Assignor

_____

For good and valuable consideration, the receipt of which is hereby

acknowledged, Assignor named on p.1 above hereby assigns to assignee herein

-1-

1   their right title and interest to all claims they hold against all

2   Defendants.

3

4   Dated:                                          Capital Asset Protection

5                                          By: _____

6                                               Arden Silverman, assignee

7   Dated:

8                                               Goldman Sachs Capital

9                                          By: _____

10                                              Arian Egbali, assignor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                    -2-