Law Office of John M. Kalajian
John M. Kalajian, Attorney #66366
Post Office Box 1690
Simi Valley, CA 93062-1690
johnkalajian@gmail.com
Telephone 805 526 8499

Attorney for plaintiff and counter claim defendant Arden Silverman dba Capital Asset Protection

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| ARDEN SILVERMAN dba Capital Asset Protection,<br><br>Plaintiff,<br><br>vs<br><br>TEDDER ACQUISITION, LLC<br><br>Defendant<br><br>AND RELATED COUNTER CLAIM | Case No. 2:24-cv-06989-MRA-MAA (Removed from Los Angeles County Superior Court, Case No. 24VECV01237)<br><br>Assigned to Hon. Judge Monica Ramirez Almadani<br><br>**MOTION TO DISMISS FIRST AMENDED COUNTER CLAIM [DOCUMENT #65] OR REMAND THIS CASE TO STATE COURT DUE TO LACK OF SUBJECT MATTER JURISDICTION**<br><br>Dated May 16, 2025<br>Time: 1: 30 p.m.<br>Dept. 10B<br>Complaint Filed March 20, 2024<br>Date of Removal: August 16, 2024 |

**PLEASE TAKE NOTICE** that Plaintiff/Counter Claim Defendant Arden Silverman dba Capital Asset Protection (hereafter Silverman) through the undersigned counsel, on May 16, 2025, at 1:30 p.m. in Department 10B, pursuant to Rule 12(b)(l) of the Federal Rules of Civil Procedure, will seek alternative Orders from this court either dismissing the

First Amended Counterclaim (FACC) [Document Number 65] filed by Tedder Industries, LLC (Tedder) on March 11, 2025 as to Silverman or alternatively remanding the case to state court due to lack of subject matter jurisdiction of the counter claim.

The motions to dismiss or remand are based upon the following grounds:

1. Tedder's damage claims in the FACC are ambiguous and speculative;
2. The FACC acknowledges that Tedder has received and kept a net monetary refund of over $3,500,000 and suffered no economic loss or actual damages;
3. Tedder attached an Agreement to its FACC as Exhibit 2 which contains a Limitations of Remedies clause that limits the dollar amount and types of damages that Tedder can Claim against Goldman;
4. As a result of the Limitations of Liability clause, Tedder's damages cannot meet the threshold requirement for diversity jurisdiction for a claim of over $75,000 against every counter claim defendant;
5. None of the fraud based causes of action (Causes of Action 3, 4, 5 and 6) set forth necessary facts and none meet the enhanced pleading requirements to state a fraud based claim against anyone.
6. All of the fraud based causes of action are based upon allegations that are inconsistent with the written agreement that is attached to the FACC as Exhibit 2;
7. The FACC Fails to State a Cause of Action Against Silverman for Breach of Contract because no allegations state sufficient facts to make Silverman a party to the contract
8. The FACC fails to state a cause of action against Silverman for unjust enrichment because the FACC alleges that the funds were paid to Goldman not Silverman
9. The FACC fails to state a cause of action under RICO
10. The FACC fails to state a cause of action against Silverman for unfair business practices
11. The FACC fails to state a cause of action against Silverman under Penal Code 496

The motions will be made and are based upon this notice of motion, all the pleadings contained within the court's file, the attached points and authorities, the attached declaration of

Silverman's attorney regarding meet and confer obligations, and such other and further evidence as to be presented at the hearing.

Dated: March 27, 2025

Respectfully submitted,

JOHN M. KALAJIAN, Attorney for
Plaintiff/Counterclaim Defendant
Arden Silverman dba Capital Asset Protection

POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS

**Introduction**

Silverman operates a commercial debt collection business. Goldman Sachs Capital, LLC (Goldman) is a company that prepares and submits Employee Retention Credits (ERC) applications to the IRS for companies to collect tax refunds under the Covid Relief Act enacted by Congress. Tedder hired Goldman to submit ERC claims to the IRS and agreed to pay Goldman 25% of any ERC benefits obtained. A written agreement between Goldman and Tedder memorializes the intent of the parties and the mutually agreed terms and conditions. Goldman promptly evaluated Tedder's past tax returns and documentation, prepared and submitted the applications and supporting documentation to the IRS. Tedder received ERC benefits totaling over 4.7 million dollars. Tedder paid Goldman about $67,000 instead of the agreed fee of 25%. Goldman assigned its collection claims against Tedder to Silverman. Silverman filed suit against Tedder in state court for the balance of the unpaid fee of $1,127,365.96. Tedder removed the state court case to USDC citing diversity jurisdiction. On Feb 18, 2025 Tedder filed a counter claim against Silverman and ten new individuals or entities as counter claim defendants.

On March 6, 2025, plaintiff and defendants counsel had a thirty minute meet and confer regarding deficiencies of the Tedder Counter Claim. Tedder agreed to file a First Amended Counter Claim. On March 11, 2025, Tedder filed its First Amended Counterclaim (FACC) again naming Silverman and ten new individuals or entities. In the FACC Tedder characterizes itself as a "victim" of Goldman and others who allegedly worked on the Tedder ERC refund applications.

Silverman was a compete stranger to the underlying transaction between Goldman and Tedder. Silverman never assumed any liability as to Tedder and has done nothing to impose liability against Silverman as to Tedder. The FACC has not asserted that Siverman has violated any debt collection laws. The FACC against Silverman is a sham and should be dismissed. Alternatively Silverman seeks remand of the entire action to state court due to lack of subject matter jurisdiction which is where this simple business to business debt collection case belongs.

**1. Tedder's alleged damages in the FACC are ambiguous, conjectural and premature**

Absent from the nearly one hundred pages of the FACC are any allegations that the IRS determined that the ERC benefits applications prepared by Goldman were incorrectly prepared, or the applications were deficient in any way, or that the IRS sent the tax refunds to Tedder in error, or that the IRS ever claimed that Tedder was not entitled to the ERC benefits, or that the IRS demanded that Tedder return any of the ERC benefits, or that the IRS had ever asserted any penalties or interest against Tedder. There has been nothing allegedly done by the IRS in twenty months since Tedder received the tax refunds. Tedder has acknowledged it received over $4.7 million in refunds. Tedder proclaims itself a "victim" of Goldman yet has no demonstrable damages and received millions of dollars in ERC benefits.

The FACC alleges only that Tedder may ***potentially*** suffer damages as a result of the allegedly improper submission of ERC benefits application prepared by Goldman.

At paragraph 92 of the FACC Tedder alleges, "Tedder faces potential investigation and penalties and interest from the IRS." Tedder states at paragraph 83 that it withdrew its claim for ERC credits in March, 2024 and that "Tedder is still waiting on a determination by the IRS." Almost two years from the date that Tedder received the ERC refunds from the IRS and a year

after Tedder purportedly withdrew its claim to ERC benefits of $270,398.79 in March 2024, Tedder is still waiting for the IRS to "potentially" assert damages and penalties against it.

Tedder's damages claims at this time are ambiguous and premature as Tedder has not asserted that any actual damages or penalties have yet been incurred or assessed by the IRS. Tedder's assertion that damages are only potential means that Tedder's damages are speculative and conjectural.

In *Moore v. Teed* (2020) 48 Cal.App.5th 280, 292, the court said, "'Whatever its measure in a given case, it is fundamental that "damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."'"].)

**2. Tedder's FACC shows that Tedder received and kept ERC benefits of over $3,500,000 net and suffered no actual economic loss**

Tedder's answer to plaintiff's operative complaint admits that Tedder received $4.7MM dollars from the applications submitted to the IRS. At paragraph 86 of the FACC Tedder alleges it returned one of the ERC checks to the IRS for $276,653.41; at paragraphs 76 and 94 Tedder claims it paid accountants $390,000 to review the work performed by Goldman; at paragraph 75, Tedder alleges it paid the IRS $500,000 (but provides no explanation why Tedder paid the money); and finally Tedder alleges at paragraph 54 that it paid Goldman Sachs Capital $67,599.70. Subtracting all of these alleged "damages" from Tedder's $4.7MM ERC refund shows that Tedder benefitted from Goldman's work for a net refund actually in pocket of over $3,500,000.

| | |
|---|---|
| Tedder admitted recovery of ERC Benefits from the IRS | $4,779,862.64 |
| Tedder alleged payments to accountants | $ 390,000.00 |
| Tedder voluntary return to IRS of 4th quarter 2020 | $ 276,653.41 |
| Tedder alleged voluntary return to IRS of $500,000 | $ 500,000.00 |
| Tedder payment to Goldman | $ 67,599.70 |

Assuming for purposes of argument that Tedder is entitled to all offsets for claimed damages it sustained, Tedder still ended up with a net recovery of $3,545,609.53 and sustained no net damages to support a counter claim. Tedder got the benefit of the bargain with Goldman. Tedder kept all but one of the ERC benefit checks. Tedder has no actual damages and isn't a "victim" as FACC asserts.

**3. Tedder Attached an Agreement to its FACC which contained a Limitation of Remedies Clause that limits the amounts and types of damages Tedder can recover**

When businesses sign contracts, the contract is the first place to look when assessing the rights and duties of the parties. The FACC attached the agreement as Exhibit 2. Paragraph 7 of Exhibit 2 contains a "Limitations of Remedies" clause. This clause limits the dollar amount of damages that Tedder can recover. The paragraph states, "FIRM' liability under this agreement is limited to actual direct damages and to the amount that FIRM received from the Client". Tedder also agreed it would not be able to assert other types of damages against Goldman, including "incidental, consequential, special, indirect, punitive or third party damages or claims including lost profits".

The FACC states Tedder only paid Goldman $67,599.70. The FACC ignores the contractual provision that limited the dollar amount of any damage Tedder could assert and has ignored the restriction that Tedder would not be entitled to any incidental, special, indirect, punitive or third party damages. The FACC's prayer at page 36 seeks special damages of $457,599.70, general damages and exemplary damages all of which damages are precluded or limited in amount by the Limitations of Remedies clause. As noted earlier, Tedder's FACC only says it faces potential damages, which are not "actual" damages and all disbursements Tedder made from the ERC refunds were voluntarily made by Tedder.

Exhibit 2 attached to the FACC is inconsistent with Tedder's allegations contained in the body of the complaint that Tedder is entitled any damages. Tedder's allegations of damages of over $75,000 against each counter claim defendant must yield to the terms of the agreement Exhibit 2. Tedder's recovery is limited to the amount of it's actual damages not to exceed the amount it actually paid Goldman. Tedder states repeatedly in the FACC that the amount it paid Goldman was $67,599.70 and asserted only potential damages from the IRS which were not actual damages and which have not been imposed by the IRS for over twenty months.

Tedder is bound by the contract it signed with Goldman and that is attached to its FACC. Tedder cannot pursue damages in excess of the dollar amount or other types of damages that are precluded by the plain language contained in the Limitations of Remedies Clause set forth in Exhibit 2.

"Generally, 'a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability.' (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 503, pp. 552-554.) Clauses of this type 'have long been recognized as valid in California.' (Markborough California, Inc. v. Superior Court (1991) 227 Cal. App. 3d 705, 714, 277 Cal. Rptr. 919.

4. **As a result of the Limitations of Liability Clause, Tedder's damages cannot meet the threshold requirement for diversity jurisdiction against each counter claim defendant**

Tedder's FACC asserts at paragraph 18 that its damages against each of the counterclaim defendants exceeds $75,000. However, this assertion is inconsistent with Exhibit 2 and other paragraphs of the FACC. The allegations of the pleadings of the FACC must be measured against the inconsistent language of the attached Exhibit 2. Exhibit 2 contains a Limitation of Remedies clause at paragraph 7 which limits Tedder's damages. It says", "FIRM' liability

under this agreement is limited to actual direct damages and to the amount that FIRM received from the Client".

At paragraph 54 and 159 the FACC asserts that Tedder paid to Assignor [FIRM] [Goldman] $67,599.70. Accepting the language of the Limitation of Remedies clause on its face, Tedder has contractually agreed that damages were limited actual direct damages and to what it paid Goldman which the FACC has twice asserted to be $67,599.70. Tedder also agreed it would not assert other types of damages including incidental, consequential, special, indirect, punitive or third party damages or claims…" .

Tedder's FACC has not set forth any basis to ignore the plain language of the limitations of remedies clause or how or why the limitations of remedies clause in Exhibit 2 attached to the FACC should not apply to the claims asserted in the FACC.

Exhibit 2 of the FACC demonstrates that an element necessary for diversity jurisdiction is missing, because Exhibit 2 limits Tedder's damages against Goldman to $67,599.70, an amount less than the jurisdictional minimum required in diversity jurisdiction cases.

5. **<u>None of the fraud based causes of action (Causes of Action 3, 4, 5 and 6) meet the enhanced pleading requirements to state a fraud based claim against anyone</u>**

Fraud-based claims are subject to a stricter pleading standard …: to advance a cognizable cause of action for fraud, "every element of the cause of action ... must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a fraud claim deficient in any material respect." (<u>Wilhelm v. Pray, Price, Williams & Russell</u> (1986) 186 Cal.App.3d 1324, 1331.) The heightened particularity requirement mandates pleading facts to show "how, when, where, to

whom, and by what means the representations were tendered." (Lazar v. Superior Court (1996) 12 Cal.4th 631, 645.)

The fraud based causes of action in the FACC fail to identify who, how, when, where, to whom and by what means the representations were tendered. Tedder's fraud based claims fail to assert sufficient facts to support fraud based cause of action against anyone.

**6. The fraud based causes of action (Causes of Action 3, 4, 5 and 6) are based upon alleged misrepresentations that are inconsistent with and refuted by the written agreement that Tedder attached to the FACC as Exhibit 2**

Paragraph 6 of Exhibit 2 states:

"6. Representations and Warranties:

a. FIRM represents and warrants that FIRM shall perform the Services in a professional and workmanlike manner".

In Paragraph 6c of Exhibit 2, Tedder acknowledges that no guarantees were made to Tedder:

" c. Client [Tedder] represents and acknowledges that FIRM makes no guarantees concerning the Credit and that FIRM cannot control or determine whether the IRS will allow or disburse any Credit."

The agreement states in unambiguous language that no other representation has been made and no prior representations are binding.

"d. except for the express representations and warranties contained in this section, **neither FIRM nor any other person on FIRM' behalf, has made or makes any express or implied representation or warranty, either oral or written, whether arising by law, course of dealing, course of performance, usage, trade or otherwise, all of which are expressly disclaimed and Client acknowledges that it has not relied upon any representation or**

**warranty made by FIRM or any other person on FIRM' behalf, except as specifically provided in this section.**" [added emphasis]

Exhibit 2 contains an integration clause that says, "14. Entire Agreement. **This agreement constitutes the agreement and understanding between the Parties concerning the subject matter. It supersedes any prior Agreement or understanding relating to this agreement, whether express or implied.**" [added emphasis]

The FACC liberally quotes from the Exhibit 2, yet Paragraph 6 escaped mention by Tedder. Tedder's FACC fails to assert any basis to disregard Tedder's agreement to the written contractual terms and conditions. Goldman disclaimed any representations other than those in writing. The attached contract terms and conditions must be given precedence over the FACC's inconsistent allegations as to what misrepresentations were allegedly made.

In the case of Brakke v. Economic Concepts, Inc. (2013) 213 Cal.App.4th 761 , the court said, "While the "allegations [of a complaint] must be accepted as true for purposes of demurrer," the "facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence. [Citation.]" (Dodd v. Citizens Bank of {Page 213 Cal.App.4th 768} Costa Mesa (1990) 222 Cal.App.3d 1624, 1626-1627; see also Alphonzo E. Bell Corp. v. Bell View Oil Syndicate (1941) 46 Cal.App.2d 684, 691 ["All these conclusions of the pleader are contrary to the express terms of the instrument . . . which is pleaded in full and made a part of the complaint" and "[u]nder these circumstances the court will, in hearing on the demurrer, examine the exhibits and treat the pleader's conclusions as surplusage"].)

### 7 The Second Cause of Action in the FACC Fails to State a Cause of Action Against Silverman for Breach of Contract

Silverman's collection agency was the assignee of Goldman's collection rights against Tedder. The assignment related to an executory contract which had been fully performed by Goldman.

In general, the assignee of a thing in action stands in the shoes of the assignor, taking the assignor's rights and remedies subject to any right of offset or other claims or defenses of the other party against the assignor before the other party receives actual notice of the assignment. Brienza v Tepper (1995) 35CA4th1839,1848. Unless the assignee expressly assumes the assignor's obligations under the contract, however, the assignor remains liable to perform its contractual obligations. The general rule is "that the mere assignment of rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor: ( *Armstrong Co.* v. *Shell Co. of Calif.*, 98 Cal.App. 769, 775 [277 P. 887]; *Weidner* v. *Zieglar*, 218 Cal. 345, 349 [23 P.2d 515]; Melchiorv New Line Prods., Inc. (2003) 106 CA4th 779, 789. See also Hepplerv J.M. Peters Co. (1999) 73 CA4th 1265, 1289.

At paragraph 88, the FACC asserts that Goldman assigned "their right title and interest to all clams they hold against Defendants" .

At paragraphs 113 and 114 the FACC again alleges:

"113. Goldman Sachs Capital assigned "their right title and interest to all claims they hold against [Tedder]" to Arden Silverman dba Capital Asset Protection. See Exhibit 5.

114. As a result of the Assignment, Arden Silverman dba Capital Asset Protection stepped into the shoes of Goldman Sachs. "As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies .... " *Essex Ins. Co. v. Five Star Dye House, Inc.,* 38 Cal. 4th 1252, 1264 (2006) *quoting Salaman v. Bolt,* 74 Cal.App.3d 907, 919 (1977)."

None of the aforesaid allegations state any facts that make Silverman a party to Exhibit 2. Silverman is clearly not a signatory to the agreement attached as Exhibit 2 to the FACC which refutes any claim that he was. Silverman is not mentioned at all in Exhibit 2. The assignment document attached as Exhibit 5 to the FACC says nothing about Silverman assuming any of Goldman's obligations to Tedder. The FACC does not assert that Silverman received any benefits from Tedder by the assignment. Goldman's assignment of the collection rights against Tedder did not obligate Silverman to be responsible for any burdens under Exhibit 2. No basis is set forth in the FACC that supports the inclusion of Silverman as a party to Exhibit 2 and Tedder's breach of contract claim must fail.

**8. <u>The 7th Cause of Action for unjust enrichment of the FACC fails to state a cause of action against Silverman</u>**

The FACC states at paragraph 54 that " On July 19, 2023, Tedder made a payment to Goldman Sachs Capital in the amount of $67 ,599. 70. This amount was 25% of the $270,398. 79 payment Tedder received from the IRS for the 4th quarter of 2020."

"The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another. The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." <u>Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1111</u>

Tedders FACC states that it paid the $67,599.70 to Goldman. There is no allegation in the FACC that Tedder paid Silverman anything or that Silverman was unjustly enriched.

**9. <u>The FACC fails to state a cause of action under RICO</u>**

To state a civil RICO action, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. )18 USC § 1962(c); Sedima v. Imrex Co., 473 U.S. 479 at 491, 493, 496.) In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. (18 USC § 1964(c); Sedima, supra, 473 U.S. at 496-497.)

The FACC shows that Tedder was not actually injured by anything done by counter claim defendants or by Silverman. Tedder has sustained no damage. Without damages, Tedder has no RICO claim. Tedder contracted with Goldman to submit an ERC claim to the IRS. Tedder paid no money to Goldman to submit the claim-payment to Goldman was contingent upon Goldman successfully preparing the applications and submitting the claim and the IRS refunding benefits to Tedder. Goldman prepared and submitted the claim and necessary documentation to the IRS, the IRS processed and approved the claim and Tedder got paid more than a year ago. Tedder's FACC shows that Tedder suffered no damages upon which the RICO claim could be based. Tedder received the benefit of the bargain and had no damages.

The FACC does not demonstrate that Goldman et al perpetrated any unlawful scheme. The Covid Relief Act was enacted by Congress, not orchestrated by Goldman. Goldman successfully submitted an application for benefits for Tedder which was approved and paid. There was no unlawful scheme.

**10. The FACC fails to state a cause of action against Silverman for unfair business practices**

Unfair business practices requires the violation of some law or some unfair or unethical business practices. The charging allegations against Silverman in the FACC are few. None of

the charging allegations set forth in the FACC constitute unlawful or unethical conduct that would be considered an unfair business practice as to Silverman.

The totality of the material charging allegations against Silverman are:

"38. … Goldman Sachs Capital assigns any and all claims over to Arden Silverman dba Capital Asset Protection to act as an aggressive collection agent. When Arden Silverman dba Capital Asset Protection is unable to collect from the client, he files a lawsuit pro per because Arden Silverman is not licensed to practice law in California. Footnote 12

Footnote 12 Mr. Silverman is a former lawyer. He resigned from the California Bar with charges pending in April 2001 and is no longer licensed to practice law, which appears to be why he sues in pro per under a DBA:"

"39. Arden Silverman employs the same aggressive techniques as the other Counterclaim Defendants"

"40. …Arden Silverman dba Capital Asset Protection who acts as the collection agent, hurling repeated demands for payment on the enterprise's victim."

"92. On March 20, 2024, Arden Silverman dba Capital Asset Protection filed a complaint in Los Angeles Superior Court as a pro se plaintiff against Tedder.

93. Arden Silverman is effectively acting as counsel without a bar license in bringing lawsuits on behalf of Goldman Sachs Capital."

The FACC assertion that Silverman is "acting as counsel without a bar license in bringing lawsuits on behalf of Goldman Sachs Capital" is refuted by Exhibit 5 attached to the FACC, which shows that Silverman is the assignee of "any and all claims" and thus owns the claim against Tedder. The caption of Silverman's operative complaint also refutes the allegations of the FACC because Silverman filed suit in his own name and is not representing Goldman.

Silverman is the assignee and owner of Goldman's claim against Tedder. In the case of California Bank & Trust v. Piedmont Operating Partnership (2013) 218 Cal.App.4th 1322 , the court said "'assignment merely transfers the interest of the assignor. The assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment." [Citation.] Once a claim has been assigned, the assignee is the owner and has the right to sue on it. In fact, once the transfer has been made, the assignor lacks standing to sue on the claim. (Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co. (2011) 191 Cal.App.4th 1394, 1402, italics omitted.) Put another way, unless a contrary intention is shown, an assignment "'vests in the assignee the assigned contract or chose and all rights and remedies incidental thereto."

Silverman isn't practicing law without a license. The "practice of law" means practicing law for others. In the case of Gray v. Justice's Court (1937) 18 Cal.App.2d 420, the court distinguished the practice of law for others as a privilege but the right to act as your own attorney a "right". The court stated, "It will be observed that the privilege of practicing law is confined to appearing on behalf of others. The right of one to appear and conduct his own case is not affected. One is a privilege and the other is a right". In the case of Harding v. Collazo (1986) 177 Cal.App.3d 1044, the court stated, ""A litigant has a right to act as his own attorney".

Silverman has the right to act as a pro per plaintiff of any claims that he owns.

**11. The allegations supporting the Penal Code 496 are inconsistent with Tedder's judicial admissions filed in response to the Answer**

The allegations of the Penal Code Section 496 cause of action are inconsistent with the judicial admissions that Tedder made in Tedder's Feb. 18, 2025 Answer to Silverman's complaint.

The charging allegations in support of the PC 459 claim against Silverman states at paragraph " 159. Counter-Complainant is informed and believes and based thereon alleges that Counterclaim-Defendants obtained $67,599.70 from Counter- Complainant based on the false representation that Counterclaim-Defendants had performed their due diligence regarding Counter-Complainant's qualifications to receive ERC."

Tedder's answer contains the following admissions which are inconsistent with any claim that Tedder was a victim of any crime:

"4. Answering paragraph 4 of the SAC, Tedder admits that it did not pay any fees in advance to Assignor [Goldman]"

5. Tedder admits that Exhibit "A" is the original written agreement and the addendum to the original agreement with Tedder's obligations contingent on Assignor's [Goldman's] satisfactory performance. Tedder admits that "the intent of the parties was that Assignor would evaluate Tedder's data, complete any necessary documentation required, and submit applications for Covid Relief Benefits using Tedder's federal tax identification number and prior tax returns". .... Tedder admits that it authorized Assignor to obtain Tedder's past tax returns."

6 "Tedder admits that Assignor filed applications for the 2nd and 4th quarters of tax year 2020 and the 1st, 2nd, and 3rd quarters of tax year 2021"

Paragraph 7 "Tedder admits that it received the following payments from the IRS: (1) $270,398.79 for the 4th quarter of 2020, (2)$1,232,204.04 for the 3rd quarter of 2021, (3) $1,533,556.71 for the 2nd quarter of 2021, (4) $1,467,049.69 for the 1st quarter of 2021, and (5) $276,653.41 for a total of $4,779,862.64."

17. "Tedder admits that on April 5, 2023, Tedder executed a written agreement with Assignor with Tedder's obligations contingent on Assignor's satisfactory performance. Tedder

admits that the services to be provided by Assignor included assessing whether Tedder was eligible under the recently enacted Coronavirus Aid, Relief, and Economic Security Act offered through the IRS and if so, gathering, reviewing, assembling, calculating the potential basis for the refund, organizing and submitting the required documents to the IRS for review"

18. "Tedder admits that on July 26, 2023, Tedder entered into a written Addendum to the Agreement with Tedder's obligations contingent on Assignor's satisfactory performance. Tedder admits that the Addendum addressed the issue of the IRS requesting reimbursement of credited and paid funds. Tedder admits that the Addendum replaced paragraph 4 of the initial Agreement."

21. "Answering paragraph 21 of the SAC, Tedder admits that it received $4,779,862.64 from the IRS."

"24. Tedder admits that the Agreement and Addendum require payment to be made within 14 days of receipt of the payment from the IRS with Tedder's obligations contingent on Assignor's satisfactory performance. Tedder admits that the Addendum provides for interest equal to the lesser of ten percent (10%) or the maximum permitted by law."

These judicial admissions made on Feb.18, 2025 are inconsistent with the allegations of the FACC filed on March 11, 2025 in the following particulars:

These allegations of the FACC's Ninth Cause of Action are inconsistent with the admissions in the Answer where Tedder acknowledges there was a written agreement, that Goldman submitted the ERC claim, the ERC claim was approved, that Tedder received over $4.7 million and that Tedder was contractually obligated to pay Goldman 25% of that recovery. The Answer essentially admits that Tedder hired Goldman pursuant to a written agreement and was obligated by that agreement to pay Goldman

The judicial admissions in the Answer to the plaintiff's Second Amended Complaint are binding on Tedder and refute the allegations of the FACC claiming Goldman stole the funds from Tedder because they didn't use due diligence in submitting the application.

In federal court, when a defendant admits to allegations in a paragraph of the plaintiff's complaint, those facts are considered established and no further evidence is needed to prove them, effectively removing them as a point of contention in the case. A defendant's admission to a specific factual allegation in the plaintiff's complaint is a judicial admission, meaning it is a binding statement of fact that cannot be disputed later in the case. Once a defendant admits to an allegation, the court will treat that fact as true for the purposes of the case, and the plaintiff does not need to present further evidence to prove that fact. The defendant's admission removes the need for the plaintiff to prove that specific fact, simplifying the case and potentially leading to a quicker resolution

In this case Tedder has already admitted many of the factual assertions set out in plaintiff's operative complaint which are judicial admissions that cannot be refuted by the inconsistent allegations of the FACC filed three weeks later.

Tedder got the benefit of the bargain it made with Goldman. Tedder then failed to pay Goldman the agreed price for the services. This isn't embezzlement and isn't a crime. Penal Code Section 459 has absolutely no application in these circumstances.

**<u>Argument</u>**

Tedder willingly agreed to participate in the ERC program and willingly signed Goldman's contract agreeing to pay Goldman 25% of any recovery. Tedder has acknowledged that it signed the agreement, Tedder attached the agreement to its FACC, Tedder admitted that Goldman submitted the applications, that the applications were approved. Tedder has admitted

that the agreement required Tedder to pay Goldman 25%. Tedder received $4,779,862.64 and 25% or $1,194,965.66 was owed to Goldman. Tedder only paid Goldman $67,000.

Tedder's FACC is a desperate attempt to avoid paying the agreed fee by **adding ten additional individual or defendant entities** and asserting claims that are disavowed by the contract terms between Tedder and Goldman. The FACC will result in a legal circus, with Tedder making material admissions of fact in the answer that are inconsistent with the allegations asserted in the FACC. The inclusion of ten additional cross claim defendants with spurious claims will cause the waste of valuable federal judicial resources and valuable attorney resource. This simple collection case has literally been made into a "federal case" by the removal to Federal court and the filing of a 100 page FACC which not only is inconsistent ent with the engagement agreement between Goldman and Tedder, but also Tedder's judicial admissions. Tedder has no damages and has not asserted that anything done by anybody was unlawful or illegal.

Silverman respectfully submits that the court should dismiss the sham FACC against Silverman without leave to amend, or alternatively remand the matter to the state court because the FACC cannot meet the minimum jurisdictional requirements for diversity jurisdiction as to all cross claim defendants.

Dated: March 27, 2025

Respectfully submitted

JOHN M. KALAJIAN, Attorney for
Plaintiff/counterclaim defendant
Arden Silverman dba Capital Asset Protection

DECLARATION OF JOHN M. KALAJIAN

1. I John M. Kalajian declare and state:
2. I am the attorney of record for plaintiff and counterclaim defendant Arden Silverman dba Capital Asset Protection.
3. On March 16, 2025, I sent a meet and confer email to Danielle Mayer the attorney of record for Tedder Industries, LLC regarding the Answer and Cross complaint filed on Feb. 18, 2025. A few days later, I had a 30 minute telephone conversation with Ms. Mayer wherein we discussed the Counterclaim. Ms. Mayer indicated that Tedder would be filing an Amended Counterclaim to address some of the issues raised in the meet and confer. On other issues, was no agreement other than we agreed to disagree.
4. On or about March 11, 2025, Tedder filed a First Amended Counterclaim. Many of the same issues that were raised to the original counterclaim remained unchanged from the initial counterclaim.
5. I declare under penalty of perjury under the laws of the state of California that the foregoing facts are within my personal knowledge and are true and correct. Executed at Simi Valley, California on March 25, 2025.

JOHN M. KALAJIAN

Law Office of John M. Kalajian
John M. Kalajian, Attorney #66366
Post Office Box 1690
Simi Valley, CA 93062-1690
johnkalajian@gmail.com
Telephone 805 526 8499

Attorney for plaintiff Arden Silverman dba Capital Asset Protection

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| ARDEN SILVERMAN dba Capital Asset Protection,<br><br>Plaintiff,<br><br>vs<br><br>TEDDER ACQUISITIONS, LLC<br><br>Defendant | Case No. 2:24-cv-06989-MRA-MAA (Removed from Los Angeles County Superior Court, Case No. 24VECV01237)<br><br>Assigned to Hon. Judge Monica Ramirez Almadani<br><br>**CERTIFICATE OF SERVICE** |

I am employed in the County of Ventura, State of California. I am over the age of 18 and not a party to the within action. My business address is Post Office Box 1690, Simi Valley, CA 93062-1690.

On the date set forth below, I served the following documents described as Plaintiff/Counter defendant Arden Silverman's Motion to Dismiss First Amended

Counter Claim and Proposed Order on the following parties:

Danielle M. Mayer (SBN 298995) Buchalter, APC
18400 Von Karman Avenue, Suite 800
Irvine, CA 92312-0514
dmayer@buchalter.com
Attorney for defendant Tedder Industries Inc.

BY EMAIL On March 28, 2025, I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on March 28, 2025, at Simi Valley, California.

/s/
John M. Kalajian