ERIC KENNEDY (SBN: 228393)
ekennedy@buchalter.com
DANIELLE M. MAYER (SBN: 298995)
dmayer@buchalter.com
**BUCHALTER**
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Tel.: 949.760.1121
Fax: 949.720.0182

Attorneys for Defendant TEDDER INDUSTRIES, LLC F/K/A TEDDER ACQUISITION, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION,<br><br>Plaintiff,<br><br>vs.<br><br>TEDDER ACQUISITION, LLC; and DOES 1 to 10,<br><br>Defendants.<br>———<br>TEDDER INDUSTRIES, LLC f/k/a TEDDER ACQUISITION, LLC, a Delaware limited liability company,<br><br>Counter-Complainant,<br><br>vs.<br><br>ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION, an individual; ARDEN SILVERMAN, an individual; CAPITAL ASSET PROTECTION, INC., a suspended California Corporation, GOLDMAN SACHS CAPITAL LLC, a California limited liability company; ENRICH FINANCIAL, INC., a California corporation; TAX RESOLUTION PLUS, INC.; ARIAN EGHBALI, an individual; BRANDON EGHBALI, an individual; SHERVIN ZALISHAHR, an individual; VEHA TARIUS, an individual, PAUL DRAKE, | Case No. 2:24-cv-06989-MRA-MAA<br><br>(Removed from Los Angeles County Superior Court Case No. 24VECV01237)<br><br>Assigned to Hon. Judge Mónica Ramírez Almadani<br><br>**DEFENDANT AND COUNTER-COMPLAINANT TEDDER INDUSTRIES, LLC'S OPPOSITION TO PLAINTIFF AND COUNTERCLAIM-DEFENDANT ARDEN SILVERMAN'S MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIM**<br><br>[*Filed Concurrently with Declaration of Danielle M. Mayer and [Proposed] Order*]<br><br>Date: May 19, 2025<br>Time: 1:30 p.m.<br>Judge: Judge Mónica Ramírez Almadani<br>Dept.: 10B<br><br>Complaint Filed: March 20, 2024<br>Date of Removal: August 16, 2024<br>Counterclaim Filed: February 18, 2025 |

an individual; and CHARLES STEVENS, an individual,

Counterclaim-Defendants.

# TABLE OF CONTENTS


PAGE

I. INTRODUCTION ........ 8

II. STATEMENT OF FACTS ........ 9

- A. Tedder Hires Goldman Sachs Capital for ERC Assistance ........ 9
- B. Tedder Discovers That Goldman Sachs Capital is Did Not Engage in a Proper Analysis of Tedder's Eligibility to Receive ERC Credits ........ 10
- C. Tedder Is a Victim of the Criminal Enterprise ........ 11

III. RELEVANT PROCEDURAL HISTORY ........ 12

IV. LEGAL STANDARD ........ 12

- A. Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1) ........ 12
- B. Failure to State a Claim – Fed. R. Civ. P. 12(b)(6) ........ 13

V. ARGUMENT ........ 14

- A. The Motion Suffers from Procedural Infirmities ........ 14
- B. The Court has Subject Matter Jurisdiction Over Tedder's Claims ........ 15
- C. The Claims Are Sufficiently Pled ........ 15
  1. Tedder's damages claims are not ambiguous or speculative ........ 15
  2. The ERC funds that Tedder received are unavailable and Tedder did in fact suffer actual economic loss. ........ 18
  3. Silverman's arguments regarding the Limitations of Remedies are not appropriate for a 12(b) Motion. ........ 19
  4. There are no fraud based causes of action alleged against Silverman. ........ 22
  5. The FACC properly pled a breach of contract against Silverman. ........ 22
  6. The FACC properly pleads a claim for unjust enrichment against Silverman. ........ 24
  7. Tedder's RICO claim is sufficiently plead. ........ 25
  8. The FACC properly pled a claim for Unfair Competition Against Silverman ........ 27
- D. Tedder Can Cure Any Deficiencies in the FACC ........ 28

VI. CONCLUSION ........ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) .......... 26

*Agreement Enf't, Inc. v. Pataro*, 2021 WL 8742105 (C.D. Cal. July 27, 2021) .......... 20

*Aron v. U–Haul Co. of Cal.*, 143 Cal.App.4th 796 (2006) .......... 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 13

*In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017) .......... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 13

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (9th Cir. 2009) .......... 13

*Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471 (9th Cir. 1997) .......... 21

*Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) .......... 26

*Catena v. Capitol Records, Inc.*, 2012 WL 12942740 (C.D. Cal. July 11, 2012) .......... 20

*Crum v. Circus Circus Enters.*, 231 F.3d 1129 (9th Cir. 2000) .......... 21

*Dinosaur Development, Inc. v. White*, 216 Cal. App. 3d 1310 (1989) .......... 24

*Dunkin v. Boskey*, 82 Cal. App. 4th 171 (2000) .......... 24

*Enterprise Leasing Corp. v. Shugart Corp.*,
231 Cal. App. 3d 737 (1991) .......... 23

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) .......... 14

*Glancy v. Carl Zeiss, Inc.*,
2015 WL 7755995 (C.D. Cal. Nov. 30, 2015) .......... 20

*Hall v. FCA US LLC*,
2022 WL 1714291 (9th Cir. May 27, 2022) .......... 20

*Intel Corp. v. Via Techs., Inc.*,
2001 WL 777085 (N.D. Cal. Mar. 20, 2001) .......... 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) .......... 25

*Kwikset Corp. v. Superior Court*,
(2011) 51 Cal.4th 310 .......... 27

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006) .......... 12

*Lee v. Gen. Nutrition Cos., Inc.*,
2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) .......... 21

*In re Multidistrict Vehicle Air Pollution*,
(9th Cir. 1979) 591 F.2d 68 (1979) .......... 16, 18

*OSU Student Alliance v. Ray*,
699 F.3d 1053 (9th Cir. 2012) .......... 14

*Polich v. Burlington N., Inc.*,
942 F.3d 1467 (9th Cir. 1991) .......... 28

*Purely Driven Products, LLC v. Chillovino*,
LLC, 171 F. Supp. 3d 1016 (C.D. Cal. 2016) .......... 12

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004) .......... 19

*Safe Air For Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 13

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039 (S.D. Cal. 2019) ....8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)....26

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007)....24

*Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022)....13

*Sisley v. Sprint Communs. Co., L.P.*, 284 Fed. App'x 463 (9th Cir. 2008) ....20

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc*., (9th Cir 1983) 711 F.2d 138....13

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)....28

*United States v. Lewiston Co*., 466 F.2d 1358 (9th Cir. 1972)....23

*Ward v. Taggart*, 51 Cal.2d 736 (1959) ....24

*Ward v. Taggart*, *supra*, 51 Cal.2d at pp. 741–742 ....25

*In re Yahoo! Litig.*, 251 F.R.D. 459 (C.D. Cal. 2008) ....23

**Statutes**

18 U.S.C. § 1961....27

18 U.S.C. § 2963, et seq. (2) ....12

28 U.S.C. §1331....12, 15

28 U.S.C. § 1367....15

Bus. & Prof. Code, § 17200, et seq., and (5) ....12, 27

Penal Code, § 496 .......... 12

Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. § 1962 .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .......... 13

Fed. R. Civ. P. 10(c) .......... 13

Fed. R. Civ. P. 12(b)(1) .......... 12

Fed. R. Civ. P. 12(b)(6) .......... 13, 20

Fed. R. Civ. P. 15(a)(2) .......... 28

L.R. 7-3 .......... 14

Rest.3d Restitution and Unjust Enrichment (Discussion Draft 2000) § 1 .......... 24

Rest., Restitution, § 1 .......... 24

U.S. Const. art. III .......... 12, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As properly alleged in its First Amended Counterclaim ("FACC"), Counter-Complainant Tedder Industries, LLC f/k/a Defendant Tedder Acquisition, LLC ("Tedder") is pursuing claims against Plaintiff and Counterclaim-Defendant Arden Silverman dba Capital Asset Protection ("Silverman"), and Counterclaim-Defendants Silverman, Capital Asset Protection, Inc. ("Capital Asset Protection"), Goldman Sachs Capital LLC ("Goldman Sachs Capital"), Enrich Financial, Inc. ("Enrich"), Tax Resolution Plus, Inc. ("Tax Resolution Plus"), Arian Eghbali, Brandon Eghbali, Shervin Zalishahr aka Shawn Zali, Veha Tarius, Paul Drake, and Charles Stevens (collectively, the "Counterclaim-Defendants") for knowingly participating in a fraudulent scheme organized by a criminal enterprise compromised of Arian Eghbali, some of his family, friends, and business associates, and several shell corporate entities (including the farcically named Goldman Sachs Capital[1]) organized by the enterprise to facilitate its illegal Employee Retention Credit scam. The FACC, like the original Counterclaim it replaces, details how this scheme unfolded.

Nevertheless, throughout his Motion, Silverman attempts to litigate the merits of this case rather than present a viable challenge to the sufficiency of the pleadings (i.e., he fails cite to legal authority indicating how the facts pled fail to state a cognizable legal theory under the law). At the pleading stage, such merits-based arguments are procedurally improper. *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1049 (S.D. Cal. 2019) (noting that "to the extent Defendant's argument is addressing the merits of Plaintiff's claim, they are improper on a motion to dismiss"). Rather, as set forth below, the Court

[1] As alleged in the FACC, "On information and belief, it is alleged that there is absolutely no legitimate connection between Goldman Sachs Capital and the leading global investment banking, securities and investment management firm, Goldman Sachs. It appears that the members of the enterprise are using the real Goldman Sach's name in a misguided attempt to add a patina of legitimacy to their fraudulent enterprise." FACC, ¶ 7, Fn. 3.

must draw all inferences and ambiguities in Tedder's favor because, as detailed in this brief, Tedder has pled ample facts to state all of the claims for relief in the FACC.

Further, Silverman's Motion attempts to litigate the merits of the FACC on behalf of *all of the* Counterclaim-Defendants. Silverman's counsel confirmed in writing that he only represents Silverman. Yet, the Motion does not just focus on the claims alleged against him. For example, Silverman asks this Court to dismiss the fraud based claims yet none of the fraud-based claims are alleged against him. If Silverman's counsel had adequately met and conferred as required by the Local Rules and the Court's Orders, this issue was already addressed.

Thus, the Court should deny the Motion to Dismiss, or in the alternative, grant Tedder leave to amend to allege additional facts to support its claims.

## II. STATEMENT OF FACTS

### A. Tedder Hires Goldman Sachs Capital for ERC Assistance

In the spring of 2023, Tedder's Chief Operating Officer and Chief Marketing Officer heard an advertisement for Goldman Sachs Capital regarding the process of obtaining employee retention tax credits.[2] FACC, ¶ 43, March 11 2025, ECF No. 65. Because Tedder had been adversely impacted during COVID, Tedder contacted Goldman Sachs Capital to inquire about their ERC services. *Id.* at ¶ 44. Goldman Sachs Capital represented that they had significant expertise handling ERC filings and had submitted thousands of ERC filings on behalf of their clients. *Id.* at ¶ 45.

On or about April 3, 2023, Goldman Sachs Capital conducted a client intake call and Tedder entered into Goldman Sachs Capital's form client contract on April 5, 2023. FACC, ¶¶ 47-48, Ex. 2 [April 5, 2023 Agreement]. Pursuant to the agreement, Goldman Sachs Capital agreed to perform a myriad of "legal," "financial," and/or "tax" services. *Id.* at ¶ 49. On approximately April 7, 2023, Tax Resolution Plus

[2] The Employee Retention Credit ("ERC") (sometimes called the Employee Retention Tax Credit ("ERTC")) is "a broad based, refundable tax credit designed to encourage employers to keep employees on their payroll" as part of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. FACC, ¶ 1. *See also* https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

submitted documentation related to Tedder's ERC application to the IRS. *Id.* at ¶ 51. Tedder was surprised that Goldman Sachs Capital and Tax Resolution Plus were able to submit the paperwork so quickly. Following the submission, Tedder received a total of $4,779,862.64 from the IRS. *Id.* at ¶ 61.

**B. <u>Tedder Discovers That Goldman Sachs Capital is Did Not Engage in a Proper Analysis of Tedder's Eligibility to Receive ERC Credits</u>**

After receiving close to $4.8M from the IRS with very little effort expended by Counterclaim-Defendants, Tedder grew concerned about the quality of the work done by Goldman Sachs Capital. FACC, ¶ 62. Tedder reached out to its CPA firm, Moss Adams, which was working on ERC credits for other clients, to compare its process with Goldman Sachs Capital's process. *Id.*

Moss Adams described the analysis, support, and documentation needed for a claim to be justified. FACC, ¶ 63. According to Moss Adams, the ERC process requires extensive documentation, including tax documentation, employee information, and company financials, and often takes up to six months to complete. *Id.* In contrast, Goldman Sachs Capital submitted Tedder's information in just four days after collecting a few documents and having no meetings with Tedder. *Id.* at ¶ 64. Moss Adams reviewed the support provided by Enrich and determined that it was severely lacking. *Id.* at ¶ 65.

Tedder had no choice but to hire Moss Adams to conduct an independent analysis, starting from square one to correct the work done by Counterclaim-Defendants. FACC, ¶ 76. Tedder has paid Moss Adams $390,000 to date to review, analyze, correct, and resubmit Tedder's ERC applications submitted by Goldman Sachs Capital. *Id.*

As part of the validation process with Moss Adams, Tedder asked Goldman Sachs Capital for all documents it reviewed in determining that Tedder qualified for the ERC. FACC, ¶ 66. Tedder also negotiated an addendum to the April 5, 2023 Agreement based on its concerns related to an IRS notice it received. *Id.* at ¶ 67, Ex.

3 [July 26, 2023 Addendum]. Tedder repeatedly asked Goldman Sachs Capital for the supporting documentation relied upon to apply for the ERC Credits. *Id.* at ¶ 73. Arian Eghbali failed to provide documents, details, or anything to justify Goldman Sachs Capital's fees. *Id.* at ¶ 74. He demanded payment repeatedly, even threatening to bring a lawsuit against Tedder. *Id.*

**C. Tedder Is a Victim of the Criminal Enterprise**

As the IRS said, "[t]he aggressive marketing of the [ERC] continues preying on innocent businesses and others. Aggressive promoters present wildly misleading claims about this credit. They can pocket handsome fees while leaving those claiming the credit at risk of having the claims denied or facing scenarios where they need to repay the credit." FACC, ¶ 26.

That is exactly what happened – Tedder fell victim to such a scheme organized by a criminal enterprise compromised of Arian Eghbali, some of his family, friends, and business associates, and several shell corporate entities organized by the enterprise to facilitate its illegal activities. FACC, ¶ 7. The Counterclaim-Defendants are working in concert to persuade companies to hire them to handle their ERC submissions, utilizing the same aggressive tactics identified by the IRS. *Id.* at ¶ 41.

Indeed, Counterclaim-Defendants appear to have implemented each and every one of the tactics identified in the IRS's warnings. FACC, ¶ 41. Once engaged, the Counterclaim-Defendants do little or no due diligence as to whether a company is properly qualified for ERC. *Id.* They simply submit the paperwork. *Id.* Then, if/when the credit is received, the Counterclaim-Defendants pounce on the clients demanding the almost immediate payment of their exorbitant fees. *Id.* The Assignment is the final piece in the Counterclaim-Defendants' fraudulent scheme – Goldman Sachs Capital assigns its claims to a former lawyer acting pro se – Arden Silverman dba Capital Asset Protection. *Id.* at ¶ 92.

Each Counterclaim-Defendant has a role within the criminal enterprise. FACC, ¶ 40. Arian Eghbali—as Goldman Sachs Capital, AI Tax Solution, and Enrich—is the

salesman tasked with interfacing with the clients, while Shervin Zalishahr/Shawn Zali—using Tax Resolution Plus—acts as the "CPA," Doron Eghbali provides the legal muscle, assisted by Silverman ,who acts as the collection agent, hurling repeated demands for payment on the enterprise's victim. *Id.*

## III. RELEVANT PROCEDURAL HISTORY

On February 18, 2025, Tedder filed its Answer and a Counterclaim against Silverman and additional counterclaim-defendants. Dkt. 30. On March 3, 2025, Tedder filed the FACC. Dkt. 65. The FACC alleges the following causes of action against Silverman: (1) Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 2963, et seq., (2) breach of contract, (3) unjust enrichment, (4) violation of California Unfair Business Practices ("UCL") (Bus. & Prof. Code, § 17200, et seq., and (5) penal code, § 496.[3] *Id*. Tedder did not allege any fraud based causes of action against Silverman. *Id.*

## IV. LEGAL STANDARD

### A. Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)

The Court has subject matter jurisdiction over a case or controversy that arises under federal law. U.S. Const. art. III §2, cl. 1; 28 U.S.C. §1331. A case arises under federal law if the complaint establishes that federal law creates the cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006).

A Rule 12(b)(1) jurisdictional attack "may be facial or factual." (*Purely Driven Products, LLC v. Chillovino*, LLC, 171 F. Supp. 3d 1016, 1018 (C.D. Cal. 2016). Disputing whether a Court has subject matter jurisdiction can be based on a facial or factual attack on the pleading. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

[3] Tedder hereby withdraws its ninth cause of action for violation of California Penal Code, section 496.

jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

In the Ninth Circuit, "[j]urisdictional dismissals in cases premised on federal question jurisdiction are exceptional." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc*. (9th Cir 1983) 711 F.2d 138, 140. The court may dismiss a federal question claim for lack of subject matter jurisdiction only if the claim appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction, or if the claim is wholly insubstantial and frivolous. *Id*. at 140.

**B. <u>Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)</u>**

A Rule 12(b)(6) motion to dismiss seeks to test the legal sufficiency of the factual allegations made in the Complaint. Under the Federal Rules of Civil Procedure, Rule 8(a)(2), a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim, the plaintiff must simply allege facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This pleading standard governs "all civil actions and proceedings in the United States district courts." *Ashcroft* at p. 685.

The court must construe the factual allegations in the light most favorable to Tedder. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017). The court must draw all reasonable inferences from the facts in Tedder's favor. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022); *Iqbal*, 556 U.S. at 678. The FAC must be read as a whole and not piece by piece. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (9th Cir. 2009); *see* Fed. R. Civ. P. 10(c). Courts generally

agree that the plaintiff need not "make its case" against a defendant by pleading specific evidentiary facts supporting each element of a cause of action. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (finding that "the plaintiff's failure to prove the case on the pleadings does not warrant dismissal."). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim entitling the plaintiff to relief. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)

## V. <u>ARGUMENT</u>

### A. <u>The Motion Suffers from Procedural Infirmities</u>

After Tedder filed its FACC, Silverman failed to adequately meet and confer and instead filed his Motion, making unnecessary and inadequate arguments. Local Rules for the United States District Court for the Central District of California require that, prior to filing a motion, the filing party "shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L.R. 7-3.

With regard to the entire Motion, counsel for Silverman failed to sufficiently meet and confer. Declaration of Danielle M. Mayer ("Mayer Decl."), ¶ 3. Silverman initially contacted Tedder to meet and confer as to the original Counterclaim. *Id.* at ¶ 4, Ex. 1. Tedder agreed to remove Silverman from the fraud based causes of action but added Silverman to the breach of contract claim as the assignee. *Id.* Accordingly, Tedder filed its FACC on March 11, 2025. *Id.*

After Tedder filed its FACC, Silverman requested a meet and confer as to the FACC. Mayer Decl., ¶ 5, Ex. 2. Silverman initially engaged in a meet and confer effort on March 18, 2025. *Id.* During the call, Silverman's counsel alleged that Tedder had not made any material changes to the original Counterclaim, but in fact Tedder had made multiple material changes, including removing Silverman from the fraud based claims. *Id.* It became clear during the call that Silverman's counsel had not actually reviewed the operative FACC but rather was analyzing the prior Counterclaim. *Id.*

After the call, Tedder's counsel emailed the FACC to Silverman's counsel and requested that he review it and follow up if he still planned to file a motion to dismiss. Mayer Decl., ¶ 5, Ex. 2. Silverman's counsel never followed up or attempted to meet and confer. *Id.* at ¶ 6. Silverman filed his Motion on March 28, 2025. *Id.*

Accordingly, Silverman did not make a good faith attempt to comply with the Local Rules and the Court's Orders, and Silverman's Motion to Dismiss should not be considered by this Court. *Id.* at ¶ 7.

**B. <u>The Court has Subject Matter Jurisdiction Over Tedder's Claims</u>**

Silverman's Motion seeks to have the FACC dismissed or in the alternative, to have the entire action remanded to state court "due to lack of subject matter jurisdiction…." Motion to Dismiss, 5, March 28, 2025, ECF No. 95. Yet, Silverman fails to address the fact that Tedder's FACC is predicated on Counterclaim-Defendants' unlawful enterprise in violation of RICO. Whether the Counterclaim-Defendants violated RICO is a federal question. Therefore, the Court has subject matter jurisdiction over the First Claim for Relief herein pursuant to 28 U.S.C § 1331 in that it arises under the federal law.

Further, the Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, in that they arise from the same nucleus of operative facts as the First Claim for Relief and form part of the same case or controversy under Article III of the United States Constitution. All of the causes of action alleged by Tedder concern the ERC credit process with the Counterclaim-Defendants.

Silverman's Motion completely fails to address the fact that the Court has subject matter jurisdiction, rather it focuses on the amount in controversy for diversity jurisdiction. The Court's subject matter jurisdiction pursuant to RICO dispenses with the need to even address the amount in controversy issue.

**C. <u>The Claims Are Sufficiently Pled</u>**

1. <u>Tedder's damages claims are not ambiguous or speculative.</u>

Silverman argues that Tedder's "alleged damages in the FACC are ambiguous,

conjectural, and premature." Motion at 5. Silverman's main argument is that Tedder "has no demonstrable damages and received millions of dollars in ERC benefits." *Id.* Silverman focuses on the pending determination by the IRS, arguing that Tedder "has not asserted any actual damages or penalties have yet been *incurred or assessed by the IRS*." *Id.* at 6 (emphasis added). What Silverman fails to address is the other damages Tedder alleges– "Counter-Complainant has been damaged in an amount of $457,599.70, plus interest, reasonable attorneys' fees, and court costs, all in an amount to be proven at trial." FACC, ¶ 160. This amount includes the amounts paid to Moss Adams and Goldman Sachs Capital. In *In re Multidistrict Vehicle Air Pollution* (9th Cir. 1979) 591 F.2d 68 (1979), the Ninth Circuit stated:

> The principal cases explaining the criteria for ascertaining whether damages are speculative remain *Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251, 264 … (1946) and *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555 … (1931). These cases teach that when the defendant's wrong has been proven, 'the jury may make a just and reasonable estimate of the damage.... "[J]uries are allowed to act upon probable and inferential, as well as direct and positive proof" '. 327 U.S. at 264, 66 S.Ct. [574] at 580.

*Id*. at 73 (quoting *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp*., 546 F.2d 570, 573 (4th Cir.1976)). Thus, uncertain damages, which prevent recovery, are distinguishable from uncertain extent of damage, which does not prevent recovery. *Id*. The former denotes failure to establish an injury, while the latter denotes imprecision with regard to the scope or extent of the injury. The question of whether there is a right to recovery is not to be confused with the difficulty in ascertaining the scope or extent of the injury. *Id*.

It is certain that Tedder has suffered damages. What is uncertain is the extent of the damages. Tedder has paid Moss Adams $390,000 to date to review, analyze, correct, and resubmit Tedder's ERC applications originally submitted by Goldman Sachs Capital. FACC, ¶ 76. It is possible that this amount will go up if the IRS seeks additional information or demands an audit. *Id.* at ¶ 94. Not only is the ERC money Tedder has received unusable (because it will likely have to be returned), Tedder faces

potential investigation and penalties and interest from the IRS. *Id.* As the IRS has warned, "Employers should be wary of ERC advertisements that advise them to 'apply' for money by claiming the ERC when they may not qualify. As a reminder, anyone who incorrectly claims the credit has to pay it back and may owe penalties and interest."[4]

Tedder went so far as to engage in remedial measures. *See* FACC. Following the analysis by Moss Adams, Tedder: (1) submitted an application to enter the Voluntary Disclosure Program ("VDP") as of March 21, 2024 relating to the Credit claim for Calendar Quarter 4, 2020; and (2) submitted documentation to the IRS to withdraw its claim for the Credit in Calendar Quarter 2, 2020. Tedder is still waiting on a determination by the IRS. FACC, ¶ 85. As part of these remedial measures, in 2024, Tedder returned the check it received in the amount of $276,653.41 from the IRS. *Id.* at ¶ 96. Tedder is currently in the process of calculating and returning additional ERC funds to the IRS to which it is not entitled as part of the IRS's Voluntary Disclosure Program. This process is ongoing. *Id.* at ¶ 97.

Silverman calculates that it has been "[a]lmost two years from the date that Tedder received the ERC refunds from the IRS and a year after Tedder purportedly withdrew its claim to ERC benefits of $270,398.79 in March 2024…." Motion at 6. Based on the breadth of the program, this is not as long as Silverman would have the Court believe. For example, the ERC-VDP for the tax year 2020 closed in March 2024 while the ERC-VDP for tax year 2021 just closed November 22, 2024.[5]

Tedder's FACC clearly pleads the facts surrounding the situation it is currently in – one in which Tedder is waiting for the IRS to make a determination. Tedder is at the mercy of the IRS and their timeframe. But such a situation does not mean that Tedder has not been damaged and certainly does not meant that Tedder's damages are ambiguous or speculative. Further, Silverman is seeking $1,127,365.96, plus 10%

---

[4] https://www.irs.gov/coronavirus/employee-retention-credit
[5] https://www.irs.gov/coronavirus/employee-retention-credit-voluntary-disclosure-program

interest in the amount of not less than $169,260.76, plus additional damages such as attorneys' fees from Tedder. See Second Amended Complaint, January 31, 2025, ECF No. 29.

Accordingly, it is not a question of whether Tedder has suffered damages, it is a matter of the scope and extent of the injury. *Air Pollution*, 591 F.2d at 73.

2. The ERC funds that Tedder received are unavailable and Tedder did in fact suffer actual economic loss.

Silverman's Motion argues that Tedder "received and kept ERC benefits of over $3,500,000 net and suffered no economic loss." Motion at 6. As discussed *supra*, Tedder suffered actual economic loss as a result of the Counterclaim-Defendants' actions. Tedder's economic loss has already occurred and may increase depending on the IRS's determination. Counterclaim-Defendants' intentional and categorical failure to conduct a justifiable valid ERC process and subsequent legal action have caused serious harm to Tedder. FACC, ¶ 94. Again, not only is the ERC money Tedder has received unusable (because it will likely have to be returned), Tedder faces potential investigation and penalties and interest from the IRS. *Id.*

Silverman argues that "Tedder benefited from Goldman[ Sachs Capital's] work for a net refund actually in pocket of over $3,500,000." Motion at 6. This statement evidences Silverman's fundamental indifference to the consequences of the enterprise he participated in. Tedder did not benefit from being a victim of the Counterclaim-Defendants' enterprise. Tedder has incurred significant damages, and been put at risk of an IRS audit, not to mention the risk of significant penalties and interest related to the ERC credits. Tedder has also lost valuable resources dealing with the fallout.

Further, Silverman argues that "Tedder got the benefit of the bargain with Goldman [Sachs Capital]." Motion at 7. Such a statement is in absolute disregard for the situation Tedder is in. Not only is Tedder waiting for the IRS to make a determination as to the funds it is currently holding, Tedder is waiting to see if the IRS will issue penalties and interest.

3. Silverman's arguments regarding the Limitations of Remedies are not appropriate for a 12(b) Motion.

Silverman argues that the Limitations of Remedies clause in the Agreement defeats diversity and limits the amounts of types of damages Tedder can recover. Motion at 7.

a. The Limitations of Remedies is a contractual clause and does not apply to the RICO enterprise.

Contrary to Silverman's arguments, the Limitation of Remedies provision in the Agreement is not germane to the Motion for at least two reasons. First, the Limitations of Remedies does not apply to the damages proximately caused by the RICO violations. *Accord Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 992–93 (2004). As the California Supreme Court stated in *Robinson*,

> A breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach. [W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law. [citations and quotations omitted] … No rational party would enter into a contract anticipating that they are or will be lied to.

*Id.* at 992–93. Silverman argues that "Tedder agreed that it would not be able to assert other types of damages against Goldman [Sachs Capital], including 'incidental, consequential, special, indirect, punitive or third party damages or claims including lost profits.'" Motion at 7. What Silverman fails to appreciate is that, if this clause is valid, it only applies to damages flowing from the contract. Here, Tedder's damages are a result of the criminal enterprise and resulting RICO violations by the Counterclaim-Defendants, including Silverman.

b. Silverman seeks a contract interpretation that is not appropriate for a motion to dismiss.

Second, in a breach of contract action, the non-moving party's interpretation of the contract need only be plausible to withstand a Rule 12(b)(6) motion. *Sisley v. Sprint Communs. Co., L.P.*, 284 Fed. App'x 463, 467 (9th Cir. 2008); *Glancy v. Carl Zeiss, Inc.*, 2015 WL 7755995, at *4 (C.D. Cal. Nov. 30, 2015) ("For plaintiff to survive a 12(b)(6) motion to dismiss, plaintiff's complaint must set forth a 'reasonable interpretation' of the contract at issue.").

Here, Tedder's FACC plausibly alleges: (1) it entered into a valid and binding contract with Goldman Sachs Capital, which was assigned to Silverman; (2) Tedder met its contractual obligations; (3) Goldman Sachs Capital breached its contract by failing to fulfill the obligations as outlined in the contract; and (4) Tedder was damaged as a result of the breach. Thus, as Tedder's interpretation is not the only reasonable construction of the contract, the Court must deny its motion to dismiss. *See, e.g., Catena v. Capitol Records, Inc.*, 2012 WL 12942740, at *7 (C.D. Cal. July 11, 2012) (denying motion to dismiss, reasoning that although the court did "not definitively decide ... the proper interpretation of the contract," it could not "conclude at this stage of the litigation that Capitol's interpretation is the only reasonable construction of the contract"); *Agreement Enf't, Inc. v. Pataro*, 2021 WL 8742105, at *6 (C.D. Cal. July 27, 2021) (denying motion to dismiss where contract was "reasonably susceptible" to plaintiff's interpretation).

As such, the Court should decline to resolve the parties' differing views on interpretation of the contract by this motion to dismiss. *See Hall v. FCA US LLC*, 2022 WL 1714291, at *1 (9th Cir. May 27, 2022) (stating district court erred in adopting party's proposed interpretation at the motion to dismiss stage where the contract was ambiguous and interpretation involved a question of fact); 2007 WL 9811030, at *2 (N.D. Cal. Nov. 6, 2007) ("question of contract interpretation and resolving ambiguity ... would be prematurely decided on a Motion to Dismiss"); *Intel Corp. v. Via Techs.*,

*Inc.*, 2001 WL 777085, at *6 (N.D. Cal. Mar. 20, 2001) ("Such contract-interpretation questions should not be resolved on a motion to dismiss." ); *Lee v. Gen. Nutrition Cos., Inc.*, 2001 WL 34032651, at *12 (C.D. Cal. Nov. 26, 2001) (denying motion to dismiss where defendants raised "issues of contract interpretation and other highly factual issues that are inappropriate for resolution in a motion to dismiss.").

c. <u>The Limitations of Remedies clause does not defeat diversity jurisdiction.</u>

Silverman argues that "[a]s a result of the Limitation of Liability Clause, Tedder's damages cannot meet the threshold requirement for diversity jurisdiction against each counter claim defendant."[6] Motion at 8. First, as discussed *supra*, the Court has subject matter jurisdiction over the case and therefore diversity jurisdiction is not necessary. But even if the case does not satisfy subject matter jurisdiction, the controversy satisfies the requirements for diversity jurisdiction.

Silverman's claim that the amount in controversy does not exceed $75,000 is dubious at best. As discussed *supra*, if this is an attempt at a facial attack, it fails to overcome the specific allegations in the FACC, including:

> As a direct and proximate result of Counterclaim-Defendants' false representations, Counter-Complainant has been damaged in an amount of $457,599.70, plus interest, reasonable attorneys' fees, and court costs, all in an amount to be proven at trial.

(FACC, ¶ 160.) "Generally, the amount in controversy is determined from the face of the pleadings. The sum claimed by the plaintiff controls so long as the claim is made in good faith." *Crum v. Circus Circus Enters*., 231 F.3d 1129, 1131 (9th Cir. 2000) (citations omitted). "To justify dismissal, 'it must appear to a <u>legal certainty</u> that the claim is really for less than the jurisdictional amount.'" *Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (emphasis added).

[6] Throughout the Motion to Dismiss, Silverman makes arguments on behalf of all of the Counterclaim-Defendants, yet the docket and Silverman's own counsel confirmed that Silverman's counsel does not represent any of the other Counterclaim-Defendants.

The only "evidence" submitted to contradict these allegations is the fact that the Agreement contains a "Limitations of Remedies" clause. But as discussed *supra*, this clause does not apply to Tedder's damages as a result of the RICO violations. The FACC alleges damages well over the $75,000 threshold and this allegation should be taken in the light most favorable to Tedder as the non-moving party.

4. <u>There are no fraud based causes of action alleged against Silverman.</u>

Silverman's arguments related to fraud based causes of action (the third, fourth, fifth, and sixth causes of action) are twofold: (1) none of the fraud based causes meet the enhanced pleading requirements to state a fraud claim against anyone, and (2) the fraud based causes of action are based upon alleged misrepresentations that are inconsistent with and refuted by the written agreement. Motion at 9-10.[7] Yet, *none* of the fraud-based causes of action are alleged against Silverman. *See* FACC. These causes of action include fraud – intentional misrepresentation, fraud – false promise, fraud – concealment, and negligent misrepresentation. *Id.* Tedder specifically amended its Counterclaim to remove Silverman from the fraud based claims. Mayer Decl., ¶ 4. Further, Tedder's counsel specifically advised Silverman's counsel of this amendment. *Id.*

Silverman fails to appreciate this change and seeks to dismiss the fraud-based cause of action when he is not in fact a party to any of those causes of action. Motion at 10. Silverman admits in his Motion that he "is not representing Goldman [Sachs Capital]." Dkt. 95 at 15. Therefore, Silverman has no standing to seek to dismiss the fraud causes of action on behalf of the other unrepresented Counterclaim-Defendants.

5. <u>The FACC properly pled a breach of contract against Silverman.</u>

Silverman argues that the "second cause of action in the FACC fails to state a cause of action against Silverman for breach of contract." Motion at 11. Specifically, Silverman argues that the Assignment "says nothing about Silverman assuming any

[7] Again, Silverman is making arguments regarding issues that do not apply to him.

of Goldman[ Sachs Capital]'s obligations to Tedder." Motion at 13. Silverman goes further and argues that "Goldman[ Sachs Capital]'s assignment of the collection rights against Tedder did not obligate Silverman to be responsible for any burdens [under the Assignment]." *Id.*

Here, in an undated document titled "Assignment", Goldman Sachs Capital purported, "[f]or good and valuable consideration, the receipt of which is hereby acknowledged, Assignor named on p. 1 above [Arden Silverman dba Capital Asset Protection] hereby assigns to assignee herein their right title and interest to all clams they hold against Defendants." This purported assignment was signed by both Arden Silverman as assignee and Arian Egbali (sic) as assignor. FACC, ¶ 88. Silverman claims that he "was a complete stranger to the underlying transaction between Goldman and Tedder," Motion at 5, but as alleged in the FACC, the Assignment is the final piece in the Counterclaim-Defendants' fraudulent scheme – Goldman Sachs Capital assigns its claims to a former lawyer acting pro se – Arden Silverman dba Capital Asset Protection. *Id.* at ¶ 91.

"The general rule is that the mere assignment of rights under an executory contract does not cast upon the assignee the obligations imposed by the contract upon the assignor.... [However, a]ssumption of obligations may be implied from acceptance of benefits under the contract." *Enterprise Leasing Corp. v. Shugart Corp*. 231 Cal. App. 3d 737, 745 (1991), citation omitted.

Here, there is a question as to whether Silverman assumed the obligations when he accepted the benefits of the contract. To the extent that the Motion suggests that the Assignment was ambiguous regarding whether Silverman did or did not assume the liabilities under the Assignment, that would not be an issue properly subject to a motion to dismiss. *See, e.g., United States v. Lewiston Co*., 466 F.2d 1358, 1359 & n. 1 (9th Cir. 1972) (interpretation of ambiguous contracts include resolution of questions of fact); *see also*, *In re Yahoo! Litig.*, 251 F.R.D. 459, 473 & n. 10 (C.D. Cal. 2008) (questions of fact are ill-suited for resolution in a motion to dismiss).

6. The FACC properly pleads a claim for unjust enrichment against Silverman.

Silverman argues that "[t]here is no allegation in the FACC that Tedder paid Silverman anything or that Silverman was unjustly enriched." Motion at 13.

Unjust enrichment is based on the idea that "one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *Dinosaur Development, Inc. v. White*, 216 Cal. App. 3d 1310 (1989); *see also* Rest., Restitution, § 1, p. 12.

Typically, the defendant's benefit and the plaintiff's loss are the same, and restitution requires the defendant to restore plaintiff to his or her original position. *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000). The principle of unjust enrichment, however, is broader than mere "restoration" of what the plaintiff lost. Many instances of "liability based on unjust enrichment ... do not involve the restoration of anything the claimant previously possessed ... includ[ing] cases involving the disgorgement of profits ... wrongfully obtained ...." Rest.3d Restitution and Unjust Enrichment (Discussion Draft 2000) § 1, com. c. "[T]he public policy of this state does not permit one to 'take advantage of his own wrong' " regardless of whether the other party suffers actual damage. *Ward v. Taggart*, 51 Cal.2d 736, 741–742 (1959). Where "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust ... [t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." Rest., Restitution, § 1, com. e.

" '[I]t is not essential that money be paid directly to the recipient by the party seeking restitution....' " *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1500

(2007). The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. *Ward v. Taggart, supra*, 51 Cal.2d at pp. 741–742. Disgorgement may include a restitutionary element, but it " 'may compel a defendant to surrender all money obtained through an unfair business practice ... regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.' " *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1144–1145 (2003). Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct.

On its face, the FACC pleads facts sufficient to state a claim that Silverman was unjustly enriched. Here, Silverman has been assigned the "right title and interest to all claims [Goldman Sachs Capital] hold[s] against" Tedder. FACC, ¶ 88. According to Silverman's First Amended Complaint, this Assignment is worth more than $1.3 million. Thus, Plaintiff has pled facts sufficient to state a claim for unjust enrichment, and, thus Silverman's Motion to Dismiss the seventh cause of action must be denied.

7. <u>Tedder's RICO claim is sufficiently plead.</u>

Silverman argues that the FACC fails to state a cause of action for RICO – Tedder's First Cause of Action. Motion at 13. Further, Silverman again argues that "[t]he FACC shows that Tedder was not actually injured by anything done by counter claim defendants or by Silverman. Tedder has sustained no damage. Without damages, Tedder has no RICO claim." Motion at 14. First, as discussed *supra* in detail, Tedder did in fact sustain damages and the total amount of damages may increase. *See* FACC, ¶ ¶ 76, 94

Second, the predicate for Tedder's claims, as alleged in the FACC, is the scheme organized by a criminal enterprise compromised of the Counterclaim-

Defendants organized by the enterprise to facilitate its illegal activities.[8] *See* FACC, ¶ 7. Tedder was damaged as a direct proximate result of the criminal enterprise's accounts surrounding ERC credits. As a result, Tedder now seeks monetary damages pursuant to RICO based on alleged financial injuries to its business. An award of monetary damages is the quintessential remedy for a civil RICO violation. See *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987) ("[RICO is] designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees."); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481–82, 498 (1985) ("The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.")

RICO provides that it is "unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce" and proscribes conspiracy to do the same. 18 U.S.C. § 1962(b), (d). Under RICO's standing provision, "[a]ny person injured in his business or property by reason of a violation" of the statute's substantive provisions may bring a RICO claim in federal court to recover treble damages and costs. *Id*. § 1964(c) (emphasis added). We have recognized that to establish statutory standing pursuant to RICO, a plaintiff "must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (cleaned up).

Here, Tedder alleges that Counterclaim-Defendants devised a racketeering scheme and "have (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts; and (c) engaged in transactions, acts, practices, and courses of business which operated and would

[8] Silverman again argues on behalf of all Counterclaim-Defendants, arguing "[t]hat the FACC does not demonstrate that Goldman [Sachs Capital] *et al* perpetrated any unlawful scheme." Motion at 14 (emphasis added).

operate as a fraud and deceit upon Counter-Complainant, constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961." FACC, ¶ 103. It is clear from the face of the complaint that Tedder's injury arises pursuant to Section 1964(c).

8. The FACC properly pled a claim for Unfair Competition Against Silverman

Silverman argues that the FACC "fails to state a cause of action against Silverman for unfair business practices." Motion at 14. To bring a claim under California Business and Professions Code section 17200, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322. Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' [citations]." *Id.* at 322-23; *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992. "Particularized" in this context means simply that "the injury must affect the plaintiff in a personal and individual way." *Id.* at p. 560, fn. 1. Importantly, a claim may proceed where "the allegations set forth a basis for a claim of actual economic injury." *Aron v. U–Haul Co. of Cal.*, 143 Cal.App.4th 796, 803 (2006).

The FACC provides sufficient facts to put Silverman on notice of the allegations against him. Here, Tedder has pleaded all necessary facts as required in the pleadings phase. First, Tedder has quite clearly pleaded economic injury-in-fact. The FACC alleges that "Tedder had no choice but to hire Moss Adams to conduct an independent analysis starting again from square one to correct the work done by Goldman Sachs Capital and Tax Resolution Plus. Tedder has paid Moss Adams $390,000 to date to review, analyze, correct, and resubmit Tedder's ERC applications initially submitted by Goldman Sachs Capital." FACC, ¶ 76.

Second, Tedder alleges RICO violations against all of the Counterclaim-

Defendants including Silverman. Silverman argues that, "[n]one of the charging allegations set forth in the FACC constitute unlawful or unethical conduct that would be considered an unfair business practice as to Silverman." Motion, 14-15. Again, Silverman fails to address the fact that the FACC alleges RICO violations against him. The RICO allegations satisfy the unlawful prong. FACC, ¶¶ 151-152. Further, as alleged in the FACC, Silverman is a critical piece of the criminal enterprise and has been engaged in the premature demand for payment through this lawsuit. The FACC alleges that Silverman's "demand[ for] payment after an agreement had been reached to defer any payment until Moss Adams made its final determination" satisfies the unfair prong of the UCL. *Id.* at ¶¶ 153-155.

Accordingly, if Tedder's RICO claim survives survive, so should its claims for unfair competition against Silverman.

**D. <u>Tedder Can Cure Any Deficiencies in the FACC</u>**

If a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy of permitting amendment is applied with "extreme liberality," and "[t]he standard for granting leave to amend is generous." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Tedder should be given leave to amend unless it is clear the FAC cannot be saved by amendment. *Polich v. Burlington N., Inc.*, 942 F.3d 1467, 1472 (9th Cir. 1991). A denial of leave to amend is reviewed for an abuse of discretion. *Corinthian Colleges*, 655 F.3d at 995. Amendment would not be futile, as Tedder can, if needed, allege additional facts to bolster its claims against the Counterclaim-Defendants.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Silverman's Motion should be denied because there is subject matter jurisdiction over the FACC and Tedder has adequately pled facts supporting each of its claims against Silverman. In the alternative, the Court should grant Tedder leave to amend its FACC.

DATED: April 26, 2025

BUCHALTER
A Professional Corporation

By: */s/ Danielle M. Mayer*
ERIC KENNEDY
DANIELLE M. MAYER
Attorneys for Counter-Complainant
Tedder Industries, LLC f/k/a Tedder
Acquisition, LLC