UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06989-MRA-MAA | Date | September 16, 2025 |
| Title | *Arden Silverman dba Capital Asset Protection v. Tedder Acquisition, LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIM [95]**

Before the Court is Plaintiff/Counter-Defendant's Motion to Dismiss Defendant/Counter-Plaintiff's First Amended Counterclaim. ECF 95. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** the Motion.

## I. BACKGROUND

The Court set forth the relevant factual background of Plaintiff/Counter-Defendant Arden Silverman d/b/a Capital Asset Protection's ("Silverman") claims against Defendant/Counter-Plaintiff Tedder Acquisition LLC ("Tedder") in its January 22, 2025, Order granting Tedder's Motion to Dismiss. ECF 27. Silverman filed his Second Amended Complaint against Tedder on February 4, 2025. ECF 29. Silverman alleges that Tedder breached its contractual duties by failing to pay certain fees owed to it as an assignee in connection with an agreement for preparation of IRS submissions.

On February 18, 2025, Tedder filed its Amended Answer and Counter-Complaint against Arden Silverman as an individual and d/b/a Capital Asset Protection ("CAP"), Goldman Sachs Capital, LLP Enrich Financial, Inc., Tax Resolution Plus, Inc., Arian Eghbali, Brandon Eghbali, Shervin Zalishahr, Veha Tarius, Paul Drake, and Charles Stevens (collectively, "Counter-Defendants"). ECF 30. On March 11, 2025, Tedder filed its First Amended Counterclaims against the same parties. ECF 65.

The Coronavirus Aid, Relief, and Economic Security (CARES) Act established the Employee Retention Credit ("ERC"), which is a broad based, refundable tax credit designed to encourage employers to keep employees on their payroll during the COVID-19 pandemic. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06989-MRA-MAA | Date | September 16, 2025 |
| Title | *Arden Silverman dba Capital Asset Protection v. Tedder Acquisition, LLC, et al.* | | |

¶ 1. The CARES Act sets forth various criteria and circumstances under which a taxpayer may qualify for an ERC. *Id.* ¶¶ 2–3. According to the IRS, following the implementation of the ERC, aggressive promoters engaged in misleading marketing that oversimplified or misrepresented eligibility rules and then pressured applicants into the program, claiming that the taxpayer had nothing to lose, because the promoter's fee was often a percentage of the payout. *Id.* ¶ 5.

Tedder alleges that in 2023 it fell victim to such a misleading scheme organized by the Counter-Defendants, who "are working in concert to persuade companies to hire them to handle their ERC submissions, utilizing the same aggressive tactics identified by the IRS." *Id.* ¶ 41. According to Tedder, Counter-Defendants are a "criminal enterprise comprised of Arian Eghbali, some of his family, friends, and business associates, and several shell corporate entities." *Id.* Tedder alleges that, pursuant to this enterprise, "Eghbali—as Goldman Sachs Capital, AI Tax Solution, and Enrich—is the salesman tasked with interfacing with the clients, while Shervin Zalishahr/Shawn Zali—using Tax Resolution Plus—acts as the 'CPA,' Doron Eghbali provides the legal muscle assisted by Arden Silverman dba Capital Asset Protection who acts as the collection agent, hurling repeated demands for payment on the enterprise's victim." *Id.* ¶ 40.

In spring 2023, Tedder's Chief Operating Officer and Chief Marketing Officer, Sanez "Sandi" Little, heard an advertisement for Goldman Sachs Capital LLP ("Goldman Sachs Capital"),[1] indicating it could assist in obtaining ERCs. *Id.* ¶ 43. When Little contacted Goldman Sachs Capital to learn more, Goldman Sachs Capital represented that they had significant experience handling ERC filings and had submitted thousands of ERC filings on behalf of their clients. *Id.* ¶ 45. On March 14, 2023, a customer service representative for Goldman Sachs Capital followed up on this call. *Id.* ¶ 46. On April 3, 2023, Goldman Sachs Capital conducted a client intake call with Little. *Id.*¶ 47. On April 5, 2023, based on Goldman Sachs Capital's representations, Little, on behalf of Tedder, entered into Goldman Sach's Capital's form client contract. *Id.* ¶ 48 & Ex. 2. The contract's fee provision provides that 25% of the "Gross Credit" must be wired to Goldman Sachs Capital within 14 days of receipt of the ERC funds. *Id.* ¶ 33.

Pursuant to the agreement, Goldman Sachs Capital agreed to assist Tedder in determining whether it was eligible for an ERC. *Id.* ¶ 49. On information and belief, Tedder alleges that on or about April 7, 2023, Tax Resolution Plus submitted documentation related to Tedder's ERC

[1] Tedder alleges that there is no legitimate connection between Goldman Sachs Capital and the banking, securities, and investment management firm Goldman Sachs, and that Counter-Defendants use that name to lend legitimacy "to their fraudulent enterprise." ECF 65 ¶ 7 n.3.

application to the IRS, all signed by preparer Shawn Zali. *Id.* ¶ 51. Shortly after, Tedder began to receive ERC checks from the IRS. *Id.* ¶¶ 52-60. It received $4,779,862.64 in total. *Id.* ¶ 61.

Tedder subsequently grew concerned about the quality of Goldman Sach's Capital's and Tax Resolution Plus's work to validate its ERC qualifications and the integrity of their conclusions. *Id.* ¶¶ 62-66. Tedder reached out to its CPA firm, Moss Adams, which confirmed that the ERC process requires "extensive documentation" and "multiple communications," often taking at least six months to complete. *Id.* ¶ 63. Tedder engaged Moss Adams to conduct an independent analysis to determine Tedder's qualification for an ERC. *Id.* ¶ 66.

Tedder then expressed these concerns to Eghbali, and on July 26, 2023, negotiated an addendum to the April 5, 2023, Agreement. *Id.* ¶ 67. Eghbali then shared a link to a Google Drive purporting to contain "supporting documentation," but it contained only basic tax forms, a short case study, a questionnaire from a verbal interview with Little, and payroll documentation. *Id.* ¶¶ 69–70. Tedder continued to attempt to collect information from Goldman Sachs Capital for the purpose of confirming the work done to qualify Tedder for the ERC funds. *Id.* ¶¶ 71–73. Despite promises from Eghbali and others at Goldman Sachs Capital and Tax Resolution Plus, Tedder never received the supporting documentation it sought. *Id.* ¶ 73. Instead, Eghbali repeatedly demanded payment from Tedder and threatened to file a lawsuit against Tedder. *Id.* ¶ 74.

Meanwhile, Moss Adams' investigation uncovered "serious errors" in Goldman Sachs Capital's ERC process. *Id.* ¶ 75. For example, Goldman Sachs Capital and Tax Resolution Plus misrepresented Tedder as a small employer despite Tedder being a large employer. *Id.* ¶ 75. As a result of this mistake, Tedder was required to return $500,000 to the IRS for 2020 ERC credits Tedder did not qualify for. *Id.* To date, Tedder has paid Moss Adamas $390,000 to review, analyze, correct, and resubmit Tedder's ERC applications submitted by Goldman Sachs Capital. *Id.* ¶ 76. Tedder alleges that it understands that, in submitting applications for ERC credits on behalf of Tedder, Goldman Sachs Capital (1) failed to do a proper analysis as to whether Tedder qualified for the tax credits, (2) misclassified Tedder as a small business, (3) did not engage in the same sort of accounting rigor as demonstrated by other CPA firms, and (4) demanded payment after an agreement had been reached through the Addendum to defer any payment until Moss Adams made its final determination. *Id.* ¶ 84.

As a result of Goldman Sachs Capital's actions, Tedder has found it necessary to take remedial measures, which include returning a check it received from the IRS in the amount of $276,653.41. *Id.* ¶¶ 85-86. Tedder is also in the process of calculating and returning additional ERC funds to the IRS that it is not entitled to as part of the IRS' Voluntary Disclosure Program.

*Id.* ¶ 87.

As a result of Counter-Defendants' actions, the ERC money Tedder has received is unusable, "because it will likely have to be returned." *Id.* ¶ 94. Tedder also faces "potential investigation and penalties and interest from the IRS," and was "forced to hire a legitimate CPA firm to do the job correctly for $390,000[.]" *Id.*

Based on the foregoing, Tedder alleges causes of action for: (1) violation of the Racketeer Influenced Corrupt Organization Act ("RICO"); (2) breach of written contract; (3) fraud—intentional misrepresentation; (4) fraud—false promise; (5) fraud—concealment; (6) fraudulent inducement; (7) unjust enrichment; (8) violation of California Unfair Business and Professions Practices ("UCL"); and (9) violation of California Penal Code section 496. *Id.* ¶¶ 96-160.

On March 28, 2025, Defendant Silverman moved to dismiss Tedder's First Amended Counterclaim. ECF 95. Tedder opposes. ECF 98.

## II. LEGAL STANDARDS

### A. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). To

invoke a federal court's subject matter jurisdiction, a plaintiff must provide "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may raise a facial or factual challenge to a federal court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The court resolves a facial attack by "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. When the defendant raises a factual attack, the [p]laintiff must support her jurisdictional allegations with 'competent proof.'" *Id.* (internal citations omitted).

## III. DISCUSSION

Silverman argues that it was a "complete stranger to the underlying transaction between" Goldman Sachs Capital and Tedder. ECF 95 at 5. Therefore, the claims against Silverman should be dismissed. *Id.* Alternatively, Silverman argues that the Court should remand the entire action to state court due to lack of subject matter jurisdiction. *Id.*

### A. Motion to Dismiss Deficiencies

The Court begins by observing several procedural deficiencies in Silverman's Motion.

First, Central District of California Local Rule 11-8 requires that briefs exceeding 10 pages in length "shall be accompanied by an indexed table of contents, setting forth the headings or subheadings contained in the body thereof, and by an indexed table of the cases, statutes, rules, and other authorities cited." L.R. 11-8. Silverman included no such tables in filing its Motion. *See* ECF 95.

Second, Silverman failed to affirm that it properly met and conferred with Tedder in advance of filing its Motion to Dismiss the First Amended Counterclaim ("FACC"). Local Rule 7-3 requires that counsel contemplating filing a motion first contact opposing counsel seven days before filing the motion to "discuss the substance of the contemplated motion and any potential resolution." "When a party fails to comply with Local Rule 7-3, the court can, in its discretion, refuse to consider the motion." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (citations omitted); L.R. 7-4. Silverman only declares that it met and conferred with Tedder counsel after Tedder filed its initial Answer and Counterclaim; it does not similarly affirm that a meet and confer took place with respect to the FACC. *See* ECF 95 at

21. Tedder counsel also states that Silverman counsel failed to properly meet and confer in advance of filing this Motion. ECF 98-1 (Mayer Decl.) ¶ 3.

Finally, Silverman failed to timely file its Reply in support of its Motion to Dismiss, which was due May 5, 2025—two weeks in advance of the hearing on this Motion set for May 19, 2025. On May 8, 2025, without leave of Court, Silverman untimely filed its six-page Reply. ECF 99.

Silverman is therefore **ADMONISHED** for failing to comply with the Local Rules. The Court **ORDERS** Silverman Counsel to show cause within 10 days of the issuance of this Order why sanctions should not be imposed.

### B. CLAIMS 3-6

As an initial matter, Silverman moves to dismiss several claims that are not asserted against him: specifically, Tedder's three fraud claims and its fraudulent inducement claim (claims 3-6). As a general principal, parties may not move to dismiss claims not brought against them. *See Martin v. Broad. Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) ("[T]he moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants."); *Qwest Corp. v. Arizona Corp. Comm'n*, No. CV 08-2374-PHX-JAT, 2009 WL 3059127, at *5 (D. Ariz. Sept. 23, 2009) ("The Court simply does not believe that a non-party to a claim can move to dismiss that claim on behalf of the actual, non-moving party to the claim."). Therefore, the Court declines to consider Silverman's arguments to dismiss these claims. Silverman's Motion to Dismiss claims 3-6 is **DENIED**.

### C. RICO Claim

Silverman argues that Tedder fails to allege a RICO action because the FACC shows that Tedder was not actually injured by anything done by Counter-Defendants (including Silverman) and that Counter-Defendants did not orchestrate any illegal scheme. ECF 95 at 14. Silverman contends that Tedder's RICO claim fails because Tedder paid no money to Goldman Sachs Capital to prepare its ERC application; Goldman Sachs Capital prepared and submitted a claim on Tedder's behalf, and Tedder received payment from the IRS more than a year ago. *Id.* Additionally, the "Covid Relief Act" was enacted by Congress, not orchestrated by Goldman Sachs Capital. *Id.* Rather than devise an operate an illegal scheme, Goldman Sachs Capital simply submitted an application for benefits on behalf of Tedder, which was approved and paid. *Id.*

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The statute also makes it "unlawful for any person to conspire to violate any of the provisions of [the RICO statute]." *Id.* § 1962(d). To be liable for RICO, "a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (internal citation omitted).

First, the Court disagrees with Silverman's argument that Tedder's RICO claim fails because it does not allege that it has sustained more-than-speculative damages. ECF 95 at 6. A plaintiff may satisfy RICO's statutory standing requirement by alleging a cognizable injury to its "business or property." 18 U.S.C. sect. 1984(c). "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citations omitted). Here, Tedder alleges that, as a result of Counter-Defendants' Enterprise, Tedder was required to hire a separate accounting firm to check its submissions to the IRS and to help Tedder engage in remedial measures with the IRS, to correct Goldman Sachs' errors—a service for which they have paid at least $390,000. ECF 65 ¶¶ 76, 85-87. Tedder's payment for to the remedial accounting firm is a concrete financial loss rather than a speculative or intangible injury. Accordingly, it is sufficient to allege concrete financial loss under RICO.

Second, Silverman's argument that the FACC does not demonstrate that "Goldman et al. perpetrated any unlawful scheme" because the "Covid Relief Act was enacted by Congress, not orchestrated by Goldman," is unavailing. ECF 95 at 14. Contrary to Silverman's argument, Tedder alleges that Counter-Defendants engaged in a scheme wherein they made untrue statements or omitted material facts in seeking Tedder's business and then submitted deficient or fraudulent documents to the IRS on behalf of Tedder to reap the benefits of any ERC tax credits that such submissions generated. ECF 65 ¶¶ 7, 14, 40–41. This is sufficient to support a violation of RICO. *See Cedric Kushner Promotions, Ltd. v. King* 533 U.S. 158, 164–165 (2001) ("RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, . . . and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful . . . activity is committed[.]'") (citations omitted); *see also Hammerschmidt et al. v. United States*, 265 U.S. 182, 188 (1924) (explaining that, in the context of fraud more generally, "to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its *lawful* governmental functions by deceit, craft or trickery, or at least by means that are dishonest.") (emphasis added). Under RICO, the proper inquiry is not whether

the underlying enterprise was legitimate, but rather, whether defendants' conduct with respect to that enterprise was unlawful. *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 164-65.

Here, Tedder's allegations focus on the conduct of the Counter-Defendants, and they explain how each of the Counter-Defendants misused the CARES Act tax credit system for personal gain. *Id.* ¶ 40. Tedder alleges that Silverman's role was that of the collection agent, "hurling repeated demands for payment on the enterprise's victims." *Id.* Tedder further alleges that the Counter-Defendants work "in concert to persuade companies to hire them to handle their ERC submissions," utilizing aggressive tactics. *Id.* ¶ 41. Tedder further argues that the Counter-Defendants "do little or no due diligence as to whether a company is properly qualified for ERC," but instead "simply submit the paperwork. Then, if/when the credit is received," the Counter-Defendants "pound[] on the clients demanding the almost immediate payment of their exorbitant fees." *Id.* Such allegations are sufficient to plausibly allege unlawful conduct under RICO.

Therefore, both of Silverman's arguments for dismissal of Tedder's RICO claim fail. Silverman's Motion to Dismiss Plaintiff's RICO claim is **DENIED**.

**D. Breach of Written Contract**

Silverman argues that Tedder's allegations do not show that Silverman was made a party to Tedder's contract with Goldman Sachs Capital, and there is therefore no basis for a breach of contract claim against Silverman. *Id.* at 13.

The parties dispute whether Egbali's assignment of rights to Silverman under the contract with Tedder included an accompanying assignment of obligations. "An assignment of rights under an executory contract does not impose upon the assignee the obligations of the assignor under the contract unless the assignee assumes these obligations." *Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1289 (1999). "[W]hether there has been an assumption of the obligations is to be determined by the intent of the parties as indicated by their acts, the subject matter of the contract or their words." *Gregers v. Peterson Ice Cream Co., Inc.*, 158 Cal. App. 2d 746, 751 (1958). But even assuming that Silverman was assigned the obligations of Tedder's contract with Goldman Sachs Capital, Tedder fails to allege what obligations of that contract Silverman itself has breached. Therefore, Silverman's motion to dismiss Tedder's breach of contract claim against Silverman is **GRANTED**.

**E. Unjust Enrichment**

Silverman argues that Tedder fails to adequately allege a claim for unjust enrichment

because, while it alleges that it paid $67,599.70 to Goldman Sachs Capital, it makes no allegations that it paid Silverman anything, or that Silverman was unjustly enriched. ECF 95 at 13.

Under California law, unjust enrichment and quantum meruit are both quasi-contract claims. *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). The "general rule" is that "a party to an enforceable contract may not seek recovery for a contract breach by resort to extra-contractual theories" such as quantum meruit or unjust enrichment. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1405 (9th Cir. 1996); *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015) ("[A] party may not pursue a quasi-contract claim for unjust enrichment or restitution when an express contract governs the same subject matter."). However, Federal Rule of Civil Procedure 8(d) expressly permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). As such, although a plaintiff must ultimately seek only one recovery, it is entitled to pursue both contract claims and quasi-contract claims arising out of the same transaction. *De Laurentiis*, 963 F.2d at 1272 n.3; *Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012). The elements of a quasi-contract unjust enrichment claim are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000) (citing *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-62 (1992)). To survive a motion to dismiss such claim, a plaintiff must allege facts that allow the court to reasonably infer that the defendant unjustly retained a benefit at the plaintiff's expense. *Barry v. Washington Mut. Bank, FA*, No. CV15-00147 TJH (SSx), 2015 WL 13649456, at *2 (C.D. Cal. Mar. 11, 2015) (citing *Twombly*, 550 U.S. at 556).

Tedder argues that Silverman has been unjustly enriched because it "has been assigned the 'right title and interest to all claims [Goldman Sachs Capital] hold[s] against' Tedder." ECF 98 at 25 (quoting ECF 65 ¶ 88). According to Silverman's First Amended Complaint, that assignment "is worth more than $1.3 million." *Id.* Tedder argues that this is sufficient to state a claim for unjust enrichment because "[t]he emphasis is on the wrongdoer's enrichment, not the victim's loss." *Id.* at 24-25.

To date, Silverman has not recovered any of that alleged $1.3 million, nor does Tedder allege as much. Indeed, whether Silverman can recover at all relies on the outcome of this case. *See* ECF 65. Therefore, because Silverman has not yet been enriched, any claim for unjust

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-06989-MRA-MAA | Date | September 16, 2025 |
|---|---|---|---|
| Title | *Arden Silverman dba Capital Asset Protection v. Tedder Acquisition, LLC, et al.* | | |

enrichment that Tedder may have against Silverman is not yet ripe. *Lan Fang Cui v. Nat'l Default Servicing Corp.*, No. 2:15-cv-00387-GMN-GWF, 2015 WL 6436312, at *5 (D. Nev. Oct. 21, 2015) (finding plaintiff's claim for unjust enrichment unripe; on a claim for unjust enrichment based on a foreclosure and sale of property, "[u]nless and until" defendants foreclose on and sell plaintiff's property, defendants "ha[ve] not retained a benefit which in equity and good conscience belongs to another") (quotations omitted); *see also Finato v. Keith Fink & Assocs.*, No. 2:16-cv-06713-RGK-AJW, 2017 WL 7202104, at *5 (C.D. Cal. Jan. 19, 2017) ("Plaintiff asserts that the fees which Defendants seek to recover from Plaintiff are unjust enrichment . . . However, the Complaint does not allege that Defendants have obtained their fees from Plaintiff. Thus, unjust enrichment has not yet occurred[.]").

Accordingly, Silverman's Motion to Dismiss the unjust enrichment claim is **GRANTED**.

### F. Unfair Competition

Silverman argues that the FACC fails to state a claim against Silverman for unfair business practices under California's Unfair Competition Law ("UCL"), because the allegations against Silverman do not show unlawful or unethical conduct "that would be considered an unfair business practice as to Silverman." ECF 95 at 14-15.

To bring a claim for unfair competition under the UCL, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 322-23 (quotation marks omitted) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Tedder fails to allege that *Silverman* economically injured Tedder, such that Tedder may seek restitution from Silverman. "[T]he scope of conduct covered by the UCL is broad, [but] its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered . . . We have stated that under the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (cleaned up). "[W]hile restitution [is] an available remedy under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *Id.*

Therefore, Silverman's Motion to Dismiss the unfair competition claim against it is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06989-MRA-MAA | Date | September 16, 2025 |
| Title | *Arden Silverman dba Capital Asset Protection v. Tedder Acquisition, LLC, et al.* | | |

**G. Lack of Subject Matter Jurisdiction**

Silverman argues that this Court lacks subject matter jurisdiction over the FACC because the Limitation of Remedies clause included in Tedder's Contract with Goldman Sachs Capital limits Tedder's claims to "actual damages" and not more than the amount Tedder paid to Goldman Sachs. ECF 95 at 7. As the FACC alleges, Tedder only paid Goldman $67,599.70. *Id.* Therefore, Silverman argues that, because the damages Tedder may seek are below $75,000, and because its RICO claim fails, this Court lacks both diversity and federal question subject matter jurisdiction over Tedder's claims. *Id.* at 8.

As set forth above, Tedder's RICO claim survives the instant Motion to Dismiss. Therefore, federal question jurisdiction exists and Silverman's arguments as to lack of diversity jurisdiction are moot. Based on Tedder's RICO claim, this Court has federal question subject matter jurisdiction over Tedder's Counterclaims. *Caterpillar Inc. v. Williams*, 519 U.S. 386, 392 (1987) (recognizing federal courts have federal question jurisdiction "when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Klayman v. Deluca*, No. 5:14-CV-03190-EJD, 2015 WL 427907, at *3 (N.D. Cal. Jan. 30, 2015) ("Since the complaint raises an issue of federal law, there is federal question jurisdiction so long as the federal claims are valid.").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss the FACC is **GRANTED IN PART** as to Tedder's claims for breach of contract, unjust enrichment, and violation of California's UCL, and **DENIED IN PART** as to Tedder's fraud and RICO claims [95]**.**

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku